UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATE OF AMERICA,   . Case No. 5:18-cr-00181-JFL-1

       Plaintiff,     .
                      504 West Hamilton Street
    v.           . Allentown, PA 18101

ANGEL LUIS CONCEPCION-    .
ROSARIO,               November 28, 2018
               . 3:42 p.m.
       Defendant.
               .
. . . . . . . . . . . . .


FINAL PRETRIAL CONFERENCE
BEFORE HONORABLE JOSEPH F. LEESON, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff          KISHAN NAIR, ESQ.
UNITED STATES OF       US ATTORNEY'S OFFICE
AMERICA:             615 Chestnut Street, Suite 1250
                  Philadelphia, PA 19106


For Defendant          GLENNIS L. CLARK, ESQ.
ANGEL-LUIS CONCEPCION-  LAW OFFICE OF GLENNIS L. CLARK
ROSARIO:             1101 Hamilton Street, Suite 351
                  Allentown, PA 18101



Audio Operator:        Justin Wood

TRANSCRIBED BY:         Eileen Dhondt, CET-807
                  Aequum Legal Transcription Services
                  6934 East Almeria Road
                  Scottsdale, AZ 85257

Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

**INDEX**
**November 28, 2018**

**THE COURT** **PAGE:**
Request for New Counsel Denied                                    13

**WITNESSES:**

**FOR THE PLAINTIFF:**
None

**FOR THE DEFENDANT:**
None

**EXHIBITS:**
**FOR THE PLAINTIFF:**          **MARKED**          **ENTERED**
None

**FOR THE DEFENDANT:**
None

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | (Call to the Order of the Court) |
| 3 | (Proceedings commence at 3:42 p.m.) |
| 4 | DEPUTY CLERK: All rise. United States District Court |
| 5 | for the Eastern District of Pennsylvania is now in session. The |
| 6 | Honorable Joseph F. Leeson, Jr. presiding in criminal action |
| 7 | number 18-181, United States of America v. Angel Luis |
| 8 | Concepcion-Rosario. Please be seated. |
| 9 | THE COURT: Good afternoon. |
| 10 | IN UNISON: Good afternoon, Your Honor. |
| 11 | THE COURT: I acknowledge the present of Mr. Nair for |
| 12 | the Government and Mr. Murray from the DEA. Good afternoon. |
| 13 | Mr. Clark for the defense. |
| 14 | MR. CLARK: Good afternoon, Your Honor. |
| 15 | THE COURT: Mr. Concepcion-Rosario. Good afternoon, |
| 16 | sir, and Mr. Johnson. |
| 17 | We are scheduled today to have a final pretrial |
| 18 | conference on the case of United States v. Angel Luis- |
| 19 | Concepcion-Rosario. I understand there's some other matters |
| 20 | that I have to take up before we go to our conference. |
| 21 | Mr. Clark. |
| 22 | MR. CLARK: Yes, Your Honor. |
| 23 | THE COURT: Is there something you'd like to bring to |
| 24 | my attention? |
| 25 | MR. CLARK: Yes, Your Honor. I have had a conference |

1  with my client since about 20 minutes to 2:00.  We were down in

2  the bulkhead and during that period of time, he was very

3  dissatisfied with my advice.  He advised me that he was going to

4  ask Your Honor to appoint new counsel so that he can get a paid

5  lawyer, and I told him or advised him that it's his right to

6  make any request he wants to make.  And so I would recommend or

7  ask the Judge consider that issue.  One of the reasons he has

8  and I will of course stay non-privileged information with

9  respect to my representation of Mr. Concepcion-Rosario today.

10          THE COURT:  Mr. Nair.

11          MR. NAIR:  I believe the Court will at some point ask

12  me to step out, and I'm ready to do that with Task Force Officer

13  Murray.

14          THE COURT:  Why don't we do this? Assuming there's no

15  objection, let's excuse Mr. Nair and Mr. Murray temporarily

16  while we can look into this matter brought to my attention by

17  Mr. Clark.

18          MR. CLARK:  Yes, Your Honor.

19          THE COURT:  Thank you.

20      (Pause)

21          THE COURT:  The courtroom has been cleared of

22  government counsel and the government representatives.

23          Mr. Wood, would you administer the oath to -- let's do

24  initially to the interpreter.  Mr. Johnson, you are here today

25  as an interpreter.  Is that correct?

1          INTERPRETER:  That's correct, Your Honor.

2          THE COURT:  I understand for the record you are an

3    experienced interpreter.  Is that correct?

4          INTERPRETER:  That is correct.

5          THE COURT:  And you're fluent in both English and

6    Spanish, correct?

7          INTERPRETER:  That's correct.

8          THE COURT:  And you're willing to provide

9    interpretation services today.  Is that correct?

10          INTERPRETER:  That is also correct.

11          THE COURT:  Would you administer the oath to the

12    interpreter, please?

13       (The interpreter is Sworn)

14          THE COURT:  Now, would you administer the oath to the

15    defendant, please?

16       (The Defendant is Sworn)

17          THE COURT:  Mr. Johnson, I know you've already been

18    translating, but just for the record, would you continue to

19    translate everything that is said in court for the defendant

20    also for the court?

21          INTERPRETER:  Yes, sir.

22          THE COURT:  Mr. Clark, you made an on the record

23    statement in the presence of all parties.  Now that we're just

24    proceeding with just your client and yourself, is there anything

25    else you would like to say before we turn to Mr. Concepcion-

1  Rosario?

2         MR. CLARK:  Judge, the only thing I would also add is

3  that the -- I would say in March of this year, we received

4  information from the government with respect to my client being

5  a career offender, and he has been very adamant all throughout

6  that he wants to have a trial.  And the consequences for him

7  taking the plea offer from the government versus being

8  designated a career offender is shall we say substantial.  And

9  so that's part of the reason I think he is unhappy with me is

10 that my recommendation would say take the government's offer

11 rather than run the risk of a trial under this scenario because

12 the penalty would be substantial should he be convicted.  And so

13 that's an issue he's not willing to accept.

14        Frankly, Judge, he has many issues that are not

15 relevant to the material issue of guilt or innocence; things

16 people are saying in the jail, whose out on bail, all those

17 things I tried to explain to him not relevant to this trial.

18 Even if he decides to take the stand, we're not going to get

19 into all that.  Just what happened here, what the agents talk

20 about, we cross-examine them, the jury makes a decision.  So --

21 and he's uncomfortable with that.  He's adamant I want a trial

22 in the face of what I would consider to be significant enough

23 evidence, substantial evidence that he will be found guilty of

24 this offense, Your Honor.

25        THE COURT:  Mr. Concepcion, did you hear everything

1  that your lawyer just said?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  I'm going to give you an

4  opportunity to tell me your position, Mr. Concepcion-Rosario.

5          THE DEFENDANT:  With much respect, Your Honor, he's

6  not in agreement with what the DEA agent was saying, what the

7  state troopers are saying.

8          THE COURT:  Mr. Johnson, I'm going to ask if you put

9  the microphone a little bit closer to you.

10          THE DEFENDANT:  The DEA agent says the 10th of October

11  of 2017 there was an investigation against Santiago 120 some

12  grams and they had intercepted a call, and I don't know who this

13  person was, and that I had bought drugs from Santiago.  That's

14  what the DEA agent said at the beginning.

15          On the 11th of October of 2018, the DEA agent said he

16  couldn't see anything because something was up.  I've never at

17  any time done a transaction with Santiago.  When I came to

18  Allentown, I was to bring $300 to a friend of mine.  The girl to

19  whom I was bringing the $300 was a friend of Correa Santiago.

20  The agent said that Santiago and I did a transaction regarding

21  an investigation against Correa Santiago.

22          I have explained to my attorney asking him what kind

23  of investigation this was.  There were no photos, no recordings.

24  Now at this moment, I'm (indiscernible).  If I were guilty, I

25  would take the 10 years.  And I would prefer to lose my life in

1    prison losing my innocence.  All the state and federal cases
2    I've always declared myself guilty having fought them.  When the
3    official arrested me, I was driving side to side as if I were
4    drunk which is not true.  I asked the attorney to watch the
5    videos from the patrol car.  I parked as soon as I saw the
6    lights flashing.  He asked me for my license and my
7    registration.  I give it to him.  And right away he says get
8    down from the car.  I get out.  He said I had crossed the yellow
9    line three times.  And I said no.  So he said he was going to
10   give me a warning.

11         The other state trooper is speaking with me and I said
12   I don't speak English, trying to explain to him. The agent says
13   to me sign a warning and I signed the warning.  He starts
14   laughing.  He goes to the patrol car, gets the dog.  After I
15   signed, he went to the car and took out -- he opened the hood.
16   The dog got out of the car, walked around the car, put him on
17   top of the motor, got inside the car, opened the trunk, got
18   inside the trunk and then he put the dog away.  Went to the car
19   and he says to me you're under arrest for drugs.  Why?  I don't
20   have drugs in the car.

21         He put cuffs on me and the other state trooper put me
22   in the patrol car and took me away.  And the official at no time
23   pulled out anything in front of me and then he says -- he said
24   that I told him that the drugs were mine.  I never said that to
25   him because I don't speak English.

1          THE COURT:  Mr. Clark.

2          MR. CLARK:  These are all matters which he's

3    discussing with you -- these are matters that we had probably

4    pretrial motions for with respect to suppress.  At that time, he

5    didn't want to testify.  Now, he's giving Your Honor his version

6    of why I filed it, but the reality of it is I think

7    (indiscernible) he's unhappy with my representation and he

8    should tell you why.

9          I don't -- I'm not trying to dictate to the Court how

10   we should proceed.

11         THE COURT:  No, I understand.  Mr. Concepcion-Rosario,

12   may I ask you a question?

13         You want a new lawyer.  Is that correct?

14         THE DEFENDANT:  I don't dislike my attorney, but what

15   he's saying to me is I should plead guilty when I'm not guilty.

16   He says 10 years are good for me.  The person who put the drugs

17   in the car, that's the person that should respond -- should

18   answer.  So what I'm seeing is they're using me like bait in the

19   sense of when I go from Allentown, the state trooper --

20   presumably the DEA official called the police and said that

21   Santiago and I had done a transaction.

22         THE COURT:  Pardon me for just a moment.

23      (Pause)

24         THE COURT:  Mr. Concepcion-Rosario I understand you're

25   telling me that you deny the allegations.  Is that correct?

1          THE DEFENDANT:  Uh-huh.

2          THE COURT:  And you're saying you're innocent,

3    correct?  You're saying that you are innocent, correct?

4          THE DEFENDANT:  I am innocent.

5          THE COURT:  All right.  I'm not going to make that

6    decision. The jury is going to make that decision.  Do you

7    understand that?  Do you understand?  Yes?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Now, you've indicated to me your position

10   about Mr. Clark.  Now, Mr. Clark, I want to tell you is one of

11   the leading lawyers in the criminal defense field in this area.

12   He is prepared to try this case.  He's very experienced in

13   trying cases like this, and he's very capable of analyzing the

14   facts, the law, the allegations, and how all these things

15   interact.

16          It is your right to decide whether you want to plead

17   innocent or guilty.  That's your decision.  But Mr. Clark is an

18   experienced attorney and experienced legal adviser for people

19   charged with crimes, and it would be good for you to carefully

20   consider all of the advice that he's given you and the reasons

21   for that advice.

22          Now, we are ready to go to trial, and the next step in

23   the case is I'm going to have a meeting and do the final

24   preparations for the trial in what is known as a final pretrial

25   conference.  Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.

3          Mr. Concepcion-Rosario, you are not required to take

4  Mr. Clark's advice, but we will go to trial if that is your

5  decision.  Other than what we've talked about so far, is there

6  any other reason for dissatisfaction with Mr. Clark?

7          THE DEFENDANT:  The reason that I'm asking what person

8  that's guilty would ask for videos from the state trooper in the

9  state trooper barracks the state troopers are lying and they

10  don't want to show the videos but I'm asking for them.  What

11  would exonerate me would be the videos.  Now if there's an

12  investigation put myself as an example same as having the cell

13  phone, and I would take photos with a cell phone, and I said to

14  my attorney the first time I met him I want the videos.  I want

15  the audios.  Because I've done no transaction with Santiago.

16          If I had done a transaction with him, I have family, a

17  wife, I'm not going to be losing all that for lying.  I know

18  what I'm saying now.  The attorney said to me 30 years, and I'm

19  42 years old, in 30 more years, I lose my family completely.  If

20  I were guilty, I wouldn't wasting your time right now.

21          THE COURT:  Mr. Clark, just for the record, have you

22  already investigated these matters that Mr. Concepcion-Rosario

23  has brought up?

24          MR. CLARK:  Yes, Your Honor.  He is correct.  He

25  brought that to me very early, and I requested the government

1  give me additional videos, photographs and documentation, and I

2  think Your Honor has now seen most of that at the suppression

3  hearing.  But they advised me that they had no such photographs.

4  They had no such videos at the time of (indiscernible) state

5  police barracks, and they should have provided to me all the

6  photographic, videos, that evidence they had.

7        THE COURT:  All right.  Thank you.  All right.

8        Before we -- I'm going to take a moment to think about

9  what you've told me, but before I go think about it, is there

10  anything else you want to tell me, Mr. Concepcion-Rosario?

11        THE DEFENDANT:  The only thing is you have the power

12  to look at all the evidence I'm telling you about because the

13  DEA agent under oath the 10th of October 2017 said there was an

14  investigation against Correa Santiago.  Being that the case,

15  there has to be video presumably of the transactions between the

16  two of us.  Whether there is or there isn't, I'm conscious of

17  the fact that I did not engage in any transaction.  If I had, I

18  repeat wouldn't be wasting your time.  I would be declaring

19  myself guilty.

20        THE COURT:  Thank you.  We're just going to take a

21  short adjournment.  Please remain in your seats. This won't take

22  long.

23        (Recess is taken from 4:07 p.m. to 4:10 p.m.)

24        DEPUTY CLERK:  Court is again in session.

25        THE COURT:  Mr. Concepcion-Rosario, I've listened to

1    all of your comments, and I've considered them, and the comments

2    and matters that you've brought to my attention pertain to

3    issues of guilt and innocence.  And they also pertain to what

4    appears to be your not liking the opinion that Mr. Clark has

5    given you.

6            Now as far as the defenses that you have to your case,

7    you will be allowed to present whatever defense you deem

8    appropriate to the jury.  However, Mr. Clark has indicated to

9    the Court on the record that he has already looked into and

10   investigated and asked for the items that you referenced and

11   also looked into the matters that you've described.

12           As far as these additional videos and things, they

13   don't exist according to what Mr. Clark has told us based on the

14   legal process that's occurred in your case between the

15   government lawyer and Mr. Clark.  That's what Mr. Clark has

16   shared with us.

17           You do not have the right to legal counsel of choice

18   in this matter.  Trial is scheduled in five days and trial is

19   going to go forward, and I'm going to deny your request for a

20   new lawyer.

21           THE DEFENDANT:  Can I speak?

22           THE COURT:  Yes.

23           THE DEFENDANT:  Between me and my attorney we are fine

24   because we're speaking.  I feel comfortable.  I want him there

25   from the very beginning, but I'm saying to him from the very

1  beginning defend me as if I were your son.   I'm comfortable

2  with it.

3            THE COURT:  Very good.  Thank you.  Anything else

4  before we bring government counsel and the government back in?

5            MR. CLARK:  No, Your Honor.

6            THE COURT:  All right.  Let me note for the record

7  that government counsel, Mr. Nair and the DEA representative,

8  Mr. Murray, have rejoined us in court.

9            Let me address a question to the marshals, to the CSO.

10  We have a matter scheduled for 4:00 p.m. also involving a

11  criminal defendant.  Not in custody?  Oh, okay.  Pardon me.  I

12  thought the 4 o'clock was in custody.  Then there is no need to

13  pursue that question.

14            All right.  As I noted earlier, request for new

15  counsel, replacement of counsel is denied.

16            Now, let's turn to the final pretrial conference.  And

17  we'll go through a number of things in order to get the case

18  ready for trial on Monday.

19            On the defendant's motion to suppress, let's talk

20  about that initially.  I've reviewed the briefs on this matter.

21  I've reviewed the defendant's motion and the Government's

22  answer, and Mr. Clark, you were given the opportunity to submit

23  supplemental brief if you wish, but I think your initial brief

24  really does cover the essence of your arguments unless I'm

25  missing something.

1          MR. CLARK:  No, Your Honor.  We would rest on the

2   brief, Judge, and our initial submission of the findings of

3   fact.

4          THE COURT:  And if there is anything else you have to

5   offer, I'll give you an opportunity to do so now.

6          MR. CLARK:  No, I'm fine.

7          THE COURT:  Very good.  And, Mr. Nair, you rest on

8   your brief?

9          MR. NAIR:  Yes.

10          THE COURT:  All right.  Having reviewed those

11   materials, I'm going to get a decision out, if not today, first

12   thing in the morning on that subject; defendant's motion to

13   suppress.

14          Government's motion to introduce evidence of other

15   crimes.  I've reviewed both parties' submissions on that.  We're

16   going to get a decision out today, and if not today, first thing

17   in the morning.

18          Anything else anybody wants to add or want to be heard

19   on that particular topic?

20          MR. NAIR:  Fortunately, related to it, Your Honor,

21   there was a representation made by counsel that he does not

22   anticipate his client testifying, but I would put them on notice

23   that I probably will file a supplemental Rule 609 motion

24   depending what happens to the 404(b).  In other words, if the

25   Court decided to deny the Government's 404(b) motion and the

1  defendant were to take the stand, I would use the same

2  convictions with the Court's permission obviously weighing the

3  factors to impeach him.

4         So I'm just clarifying that for the record.  I didn't

5  file a 609 motion because Government's belief was that at least

6  the one conviction would be coming in on the Government's case

7  in chief.  But I think at this point, it's still fair of me to

8  give them notice that that's what I intend to do if he were to

9  take the stand.

10        THE COURT:  Mr. Clark, anything you want to say on

11 that subject?

12        MR. CLARK:  Judge, I would -- based on my

13 conversations with my client today even what he's representing

14 to the Court, it is his intention at this time I think to take

15 the stand to testify.  And that is one of those areas where you

16 alluded to that that's strictly up to him no matter what I

17 think, but he's indicated to me that he's thinking he's going to

18 do that, so I would not want counsel to labor on a

19 misconception.  Because I had indicated initially he would not

20 be taking the stand.  Today (indiscernible).

21        THE COURT:  Very good. Thank you.

22        MR. NAIR:  Your Honor.  Sorry, just one other follow-

23 up.  On the 609 motion, I think it would go to the same

24 conviction.  We believe there's a second conviction.  It may be

25 older than 10 years for the amount of time that he would've been

1  convicted and his prison sentence.  That's why I have to check

2  on it.  So that's the only one that's up in the air, but I'll

3  have a better answer by tomorrow.

4          THE COURT:  Very good.  Let me go through the filings.

5  I have some other things to go through with you.

6          The Government's pretrial memorandum asks for a

7  stipulation regarding a lab test report.

8          MR. NAIR:  I have talked to Counsel. I'm prepared to

9  go forward without the stipulation, Your Honor.  We will be

10  calling the chemist.

11          THE COURT:  Okay.  Mr. Clark, you're not in a position

12  to stipulate?

13          MR. CLARK:  I am not in a position to stipulate.

14          THE COURT:  I understand.

15          Mr. Nair, were there any other special issues from

16  your pretrial memo that you wanted to have addressed other than

17  the stipulation which we've touched upon?  I didn't see any.

18          MR. NAIR:  No, Your Honor.  There are no unusual

19  evidentiary issues that the Government is anticipating at this

20  point other than what's already been filed, the 404(b), and

21  possibly related 609 impeachment evidence.  That's it that I can

22  think of at the moment, Your Honor.

23          THE COURT:  All right.  Mr. Clark, I didn't see any

24  special issues that you wanted me to take up at pretrial as a

25  result of your pretrial memorandum.  Is there anything else?

1          MR. CLARK:  No, there's nothing special, Judge.  I was

2    just looking at the Government's motion.  I know my client was

3    asking -- in our conversations, he was asking me about possible

4    testimony from co-defendants, but I think an email back in

5    March, the Government indicated there would be no such

6    testimony.  And I'm looking at his witness list today, and there

7    is no co-defendant testimony expected.

8          MR. NAIR:  That's correct.  The Government will not be

9    calling any potential co-defendants or confidential sources in

10   this case.

11         THE COURT:  Very good.  Now, as you know, being

12   experienced trial lawyers, the judge always likes to read a

13   summary of the case to the jury panel.  There does not appear to

14   be an agreement on what to read.  However, would both sides be

15   agreeable to the Court reading the substance of the indictment?

16         MR. CLARK:  Yes.

17         MR. NAIR:  Yes, Your Honor.

18         THE COURT:  Is that agreeable?  All right.  So that

19   way the jury can get a feel for what they're about to get into.

20         MR. CLARK:  That would be fine.  Excuse me, Judge.

21   The only thing I would ask of course, which I'm sure you're

22   going to do anyway, it will be made clear to them it's just an

23   allegation --

24         THE COURT:  It's just an allegation.  Yes.  Mr.

25   Schuster, would you make a note of that, please?

1      MR. NAIR:  Your Honor, I'm sorry.  I did remember one

2   issue.  I believe it's covered in my 404(b) motion.  If the

3   Court were to grant that, I would ask for a cautionary

4   instruction when that evidence comes in, if it were in front of

5   the jury, that it's not to show the propensity, and then also

6   during the court's charge.  I did include it in I believe in the

7   Government's proposal of charge.  So that is one slight issue

8   related to 404(b).  I think it's covered in my memorandum.

9      THE COURT:  Double check that it's in there, and if

10  it's not in there, would you write something up for us?

11     MR. NAIR:  Yes, sir.

12     THE COURT:  And run it by Mr. Clark first, and see if

13  you can reach agreement on limiting instruction on that topic.

14     MR. NAIR:  And then one other trial issue. The

15  Government anticipates calling Agent Romig twice.  Once as a

16  coded language expert for the wire evidence, and I'm going to

17  separate his testimony from factual testimony as permitted by

18  the Court and I'll recall him as a fact witness later so there

19  will have to be a cautionary instruction given when he takes the

20  stand a second time, that he's there as a fact witness and not

21  as an expert.

22     THE COURT:  Did you submit something on that?

23     MR. NAIR:  No, but I will.

24     THE COURT:  Would you draft something, run it by Mr.

25  Clark, see if you can reach agreement and if you can't,

1  regardless, submit what you propose.

2          MR. NAIR:  Thank you, Your Honor.

3          THE COURT:  I looked at the verdict forms.  It seems

4  that the verdict forms submitted by both sides are essentially

5  the same. Counsel, do you see it differently, or do you agree

6  with me that they're basically the same?

7          MR. CLARK:  About the same, Your Honor.

8          MR. NAIR:  In all honesty, I haven't had time to look

9  at Attorney Clark's.

10         THE COURT:  Well, they appear to be the same.

11 Accordingly, we'll use them unless I hear from you to the

12 contrary, Mr. Nair.

13         MR. NAIR:  Thank you, Your Honor.

14         THE COURT:  This is something also that Mr. Clark

15 you're already aware of it but just as a friendly reminder,

16 would you make arrangements with the marshals to get civilian

17 clothes for your client, so he's dressed appropriately at trial?

18         MR. CLARK:  We discussed that in our conference today,

19 and I've got the names and numbers of his wife and a friend who

20 will help us accommodate getting clothing.

21         THE COURT:  Okay.  Let's go to voir dire questions.

22 Both sides submitted voir dire questions.  Government's voir

23 dire questions.  Mr. Clark, do you have any objections to any of

24 the Government's proposed voir dire questions?

25         MR. CLARK:  I do not.

1          THE COURT:  And vice versa, Mr. Nair, do you have any

2    objections to any of the proposed voir dire questions of the

3    defense?

4          MR. NAIR:  No, sir.

5          THE COURT:  Thank you.  Typically, in criminal cases,

6    I will do the voir dire.  We've already touched on some limiting

7    instructions with which have already been identified.  If there

8    any others, I ask that you please submit those in writing on

9    Monday -- no later than Monday, preferably this week, but no

10   later than Monday.

11         As far as the trial schedule, we're going to start on

12   Monday in Philadelphia.  As you know, we pick our juries in

13   Philadelphia, and I'm going to ask that you report at 9:00 a.m.

14   Our current courtroom assignment is courtroom 3A.  Is that

15   correct, Mr. Wood?

16         DEPUTY CLERK:  I haven't received anything.

17         THE COURT:  You haven't received anything yet?  All

18   right.  Well, what we'll do is we think it's 3A but we'll get

19   communication to both of you before Monday as to which courtroom

20   we're in.  And as you know, since I'm based in Allentown, I

21   don't have an assigned courtroom in Philadelphia.  So we'll

22   confirm that, and get that information to you.  If you don't

23   hear from us by Friday, please call us if we forget to give you

24   a call on that.

25         So report at 9:00 a.m. I do not know how many juries

1  are going to be selected on Monday.  In terms of seniority, I'm

2  at the bottom of the list, so I go last in the jury selection.

3  So sometimes that means we wait until prospective jurors become

4  available after the other cases ahead of me are selected.  So

5  I'm hoping we'll get started at 9:00, but just sharing with you,

6  that doesn't always happen.

7        Typically, we take a one hour lunch break from 12:30

8  to 1:30 p.m., but if there's witnesses on the stand, and we're

9  near the end of the witness's testimony, we'll continue and get

10 the witness finished.  We take a mid-morning break and a mid-

11 afternoon break, typically 10 to 15 minutes.  We run until 5:00

12 p.m. each day.

13       On Monday, we're going to do obviously jury selection

14 and opening statements.  Let me ask you, Mr. Nair.  I'm not sure

15 how along all that will take and hopefully we'll move

16 expeditiously, but if we find that we have a lot of time on

17 Monday to complete those, is it possible for you to have any

18 testimony on Monday without inconveniencing your witnesses and

19 security matters and the like?

20       MR. NAIR:  The only difficulty I have, Your Honor,

21 with the beginning of witness -- or calling witnesses, the

22 logistics of the government exhibits, but if I can work that out

23 down there, I'd be ready to call Agent Romig.

24       THE COURT:  Okay.  Why don't you see if that's

25 possible?  Because hypothetically, if we conclude jury selection

1 and opening statements in the morning or even early afternoon,

2 it would be nice to get a little bit work done so we can keep

3 the case moving.

4      MR. NAIR:  I'm just thinking of the exhibits that I'd

5 be entering through Agent Romig, and I don't think I would need

6 at that point any video equipment, and they're basically going

7 to be transcribed calls, two very short ones that I can make

8 available to the jury.  Oh, and the recording -- I would not be

9 be able to proceed with the second witness.  She isn't expected

10 to come until -- and that would be the translator.

11      THE COURT:  I'll accommodate both sides' needs on

12 scheduling, but I do like to try to keep my cases moving.

13      MR. NAIR:  I'll anticipate calling Agent Romig then in

14 Philadelphia.

15      THE COURT:  And if for some reason technical issues

16 don't work out, let us know.

17      MR. NAIR:  Thank you, Your Honor.

18      THE COURT:  Let's talk about how much time each side

19 is going to need for opening statements.  Let's go with the

20 government request first.  How much time do you think you're

21 going to need?

22      MR. NAIR:  Approximately five to eight minutes.

23      THE COURT:  I'll give you 10 minutes.

24      MR. NAIR:  Thank you, Your Honor.

25      THE COURT:  Mr. Clark, how much time will you need?

1        MR. CLARK:  I think, Judge, probably about 20 minutes.

2        THE COURT:  I'll give you 25 minutes.

3        MR. CLARK:  That will be more than enough.

4        THE COURT:  Very good.  Let's talk about the expected

5  length of the trial.  I see the Government is estimating 16 to

6  22 hours without stipulations.  It looks like you're talking two

7  and a half days of testimony approximate?

8        MR. NAIR:  Yes, sir.  If we get started on Monday with

9  testimony, I would anticipate finishing on Wednesday afternoon

10 late.  There is a possibility of going into Thursday morning if

11 we didn't start testimony until Tuesday.

12        THE COURT:  And from the defense perspective, I see

13 you are estimating four days of trial, and obviously, I know you

14 have some decisions you have to make about strategy.  I

15 understand that.  All right.  Do you think four days is still a

16 safe assumption, or do you think it's going to be more?

17        MR. CLARK:  I think so, Judge, especially based upon

18 the representation by Mr. Nair.

19        THE COURT:  Four days total then.  We're going to go -

20 - as you know, we're going to go with a 12 member jury and two

21 alternates.  Any objection?

22        MR. CLARK:  No, Your Honor.

23        MR. NAIR:  No, Your Honor.

24        THE COURT:  And as far as the number of challenges, as

25 you know both being experienced attorneys, the Government has

1  six peremptory, defendant has 10 peremptory. And since we'll

2  impanel two alternates, each side gets one additional challenge.

3         Let me just turn to my staff.  Anything else we need

4  to go over?

5         UNIDENTIFIED SPEAKER:  (indiscernible)

6         THE COURT:  Counsel, anything else to go over before

7  we adjourn the final pretrial conference?

8         MR. NAIR:  Not on behalf of the United States, Your

9  Honor.  Thank you.

10        MR. CLARK:  Judge, let me take the (indiscernible)

11  404(b), but I think I may be remiss if I didn't say a little bit

12  about that just to this extent.  When information is given to

13  the jury, even when there's a cautionary instruction given with

14  respect to that, once it gets out and it hits the jurors' ears,

15  I'm a firm believer that they start drawing inferences and

16  thoughts about what that all means.  Even sometimes when the

17  Court says well, you know, just because I made a ruling that

18  way, it doesn't tell you what my opinion is, and you know, I'm

19  neutral.  I know that to be true, but if the judge does anything

20  wrong, they're looking for somewhere to hang their hat, to make

21  their decision somehow.

22        And the 404(b) evidence, which is mostly -- well, it's

23  not a limiting instruction.  Actually, it's inclusive.  It's the

24  kind of argument that can be included pretty easily.  I still

25  submit to the Court, though, that it's so very prejudicial to a

1  client such as I have here, and I would ask Your Honor to give

2  the defense as much latitude as you can under the law and deny

3  that motion of course based on the memo that we filed.  I think

4  it's a pretty decent memo.  I summarized our position on it, but

5  I do think that I didn't want Your Honor to think just because I

6  didn't say anything about it that I didn't think it was

7  important, you know, in this case.

8          THE COURT:  Thank you.  No, I think your statement and

9  your arguments today have been very vigorous on that topic.  I

10  acknowledge that.  All right.

11          Anything else?  Mr. Wood, would you adjourn Court

12  please?  I will see you Monday morning, 9:00 a.m., in

13  Philadelphia.

14          DEPUTY CLERK:  All rise.  Court is adjourned.

15      (Proceedings concluded at 4:32 p.m.)

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I, EILEEN DHONDT, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


EILEEN DHONDT, CET 807
Aequum Legal Transcription

Dated:   February 22, 2023