UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF                  .  Case No.
AMERICA,                         .  5:18-cr-00181-JFL-1
                                 .
                                 .
        Plaintiff,               .  U.S. Courthouse
                                 .  601 Market Street
                v.               .  Philadelphia, PA 19106
                                 .
ANGEL LUIS                        .  December 3, 2018
CONCEPCION-ROSARIO,              .  11:10 a.m.
                                 .

        Defendant.

. . . . . . . . . . .

                CRIMINAL JURY TRIAL - DAY 1 - VOIR DIRE
                 BEFORE HONORABLE JOSEPH F. LEESON, JR.
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff              KISHAN NAIR, ESQ.
United States of           UNITED STATES ATTORNEY'S OFFICE
America:                   615 Chestnut Street, Suite 1250
                           Philadelphia, PA 19106

For Defendant              GLENNIS L. CLARK, ESQ.
Angel Luis                 LAW OFFICE OF GLENNIS L. CLARK
Concepcion-Rosario:        1101 Hamilton Street, Suite 351
                           Allentown, PA 18101


Audio Operator:            Laura Buenzle

TRANSCRIBED BY:            Eileen Dhondt, CET-807
                           Aequum Legal Transcription Services
                           6934 East Almeria Road
                           Scottsdale, AZ 85257

  Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

**INDEX**
**December 3, 2018**

**THE COURT:**                                          **PAGE:**

Voir Dire                                                3

**WITNESSES:**

**FOR THE PLAINTIFF:**
None

**FOR THE DEFENDANT:**
None

**EXHIBITS**                          **MARKED**        **ADMITTED**
**FOR THE PLAINTIFF:**
None

**FOR THE DEFENDANT:**
None

1                          PROCEEDINGS

2          (Voir Dire begins)

3          (Jury panel in at 12:24 p.m.)

4              THE COURT:  Are we ready, Mr. Wood?

5              DEPUTY CLERK:  Yes, sir.

6              THE COURT:  All right.  Jurors Number 1 through 15 are

7    in the first row.  Is that correct?

8              DEPUTY CLERK:  Yes, sir.  Number 1 is on the left --

9              THE COURT:  Okay.

10             DEPUTY CLERK:  -- through 15.

11             THE COURT:  All right.  And then the second row we

12   have Number 16 through 30?

13             DEPUTY CLERK:  Yes, sir.

14             THE COURT:  And then the third row, we have Number 31

15   to 45?

16             DEPUTY CLERK:  Yes, sir.

17             THE COURT:  And the last row, Number 46 to 50.  Is

18   that correct?

19             DEPUTY CLERK:  Yes, sir.

20             THE COURT:  All right.  Ladies and gentlemen, please

21   be seated.  Welcome and good afternoon.  You've been summoned to

22   this courtroom as a panel of prospective jurors in the case of

23   the United States of America vs. Angel Luis Concepcion-Rosario.

24   This is a criminal case in which Mr. Angel Luis

25   Concepcion-Rosario has been charged with one count of the crime

1 of possession with intent to distribute 40 grams or more of

2 fentanyl in violation of federal criminal law. This is an

3 allegation, and it must be proven in court. I am Judge Leeson,

4 and I will be presiding over this trial.

5 We're going to do a little bit of work before we

6 adjourn for lunch. We're going to adjourn for lunch at about 1

7 p.m., and then we'll take lunch from 1 p.m. to 2 p.m. But why

8 don't we get started on the case now and get a little bit done

9 before we break.

10 From this panel, we will select the jurors who will

11 sit on the jury that will decide this case. We will also select

12 alternate jurors who will be part of this trial and available in

13 the event that one of the regular jurors becomes ill or is

14 otherwise unable to continue on the jury.

15 We rely on juries in this country to decide cases

16 tried in our courts, so service on a jury is a very important

17 duty of citizenship. And it's important that all jurors conduct

18 themselves with honesty, integrity, and fairness. As a nation,

19 we could not function and we could not have a system of justice

20 without courts and without juries. And so your potential

21 involvement, if you are selected as a juror, is critical,

22 critical to the functioning of our system of justice here in the

23 United States. We could not do our jobs without you.

24 Under our system of justice, the role of the jury is

25 to find the facts of the case based on the evidence presented at

1    the trial.  That is, from the evidence seen and heard in the

2    court, the jury decides what the facts are and then applies

3    those facts to the law that I will explain to you.  My role as

4    the trial judge is to make whatever legal decisions must be made

5    during the trial and to explain to the jury the legal principles

6    that will guide its decisions.

7         The parties, the lawyers, and I recognize that you are

8    all here at some sacrifice.  However, we cannot excuse anyone

9    merely because of personal inconvenience unless serving on this

10   jury would be truly a compelling hardship.

11        In a few minutes, you will be sworn to answer

12   truthfully the questions that will be presented to you about

13   your qualifications to sit as jurors in this case.  This

14   questioning process is what we call voir dire.  I will conduct

15   most of the questioning.  It is, of course, essential that you

16   answer these questions truthfully.  A deliberately untruthful

17   answer could result in severe penalties to you since you will be

18   under oath.  The voir dire examination questioning will begin

19   with a brief statement about the particulars of the case.  The

20   purpose of this statement is to tell you what the case is about

21   and to identify who the parties are.  I will then proceed to ask

22   you questions to find out whether any of you have any personal

23   bias or if there is any reason why you cannot render a fair and

24   impartial verdict.

1       We want to know whether you are related to or

2   personally acquainted with any of the parties, any of the

3   lawyers, or any of the witnesses who may appear during the trial

4   and whether you already know anything about this particular

5   case.  Other questions will be asked to determine whether any of

6   you have any beliefs, feelings, life experiences or any other

7   reasons that might influence you in rendering a verdict.

8       When answering these questions, it's important that

9   the Court and the lawyers can hear you and that we can identify

10  who is speaking.  We record all court sessions.  And at the

11  lower bench, we have the operator who is operating the recording

12  system.

13      Accordingly, if a question applies to you, please

14  raise your hand with your number, and that is how we will

15  recognize you for the preliminary selection and questioning

16  process.  And when recognized by me, please stand and state your

17  juror number since we are recording the session.  Please keep

18  your voice up, because these proceedings are being recorded, and

19  it's important that you speak loudly enough that the microphones

20  can pick up your voice.  I may pose some follow-up questions

21  either while you remain standing at your seat, or I may ask you

22  to come up to the bench a little bit later so that the lawyers

23  and I can ask the questions to you privately if it involves a

24  sensitive subject.  If any juror would feel more comfortable

25  addressing any particular follow-up question privately, please

1   let me know, and we will do that.

2        To begin, I must tell you that if you are selected to

3   be a member of the trial jury, it will be your duty to apply the

4   law as I explain it to you.  That will be a part of your oath as

5   a juror in this matter.  It would be highly improper to permit

6   each juror to decide for himself or herself what law to apply in

7   the trial of a criminal case.  Therefore, if you are selected

8   for the jury, please listen to me as I will explain the law to

9   you both during the trial and at the end of the trial when I

10  present the charge of the Court.

11       It's the responsibility of the Judge to tell the jury

12  what the law is, and it will be your duty to apply that law as I

13  give it to you if you are selected to be a member of the jury.

14  If you cannot or will not do this, you should not be a juror in

15  this matter.

16       From this panel, 14 people, 14 jurors will be

17  selected.  Twelve will participate in the deliberations and

18  decide on the verdict.  The remaining two will serve as

19  alternate jurors who may step in if for any reason one of the 12

20  is no longer able to continue to serve.  As I mentioned earlier,

21  we're going to go through this selection process which is

22  routine in the sense that this is what occurs in the preparation

23  of all jury trials in criminal cases.  The purpose, the

24  objective of the questioning is to obtain a fair, impartial, and

25  unprejudiced jury.  It's for that reason that you will be

1  questioned about your background, your activities, your

2  knowledge, and so forth.  No one should deliberately attempt to

3  make a special effort to be excluded or selected for the jury.

4  You should answer the questions that are put to you with

5  complete honesty.

6          After the questioning is completed, the parties each

7  have a right to use a limited number of what are known as

8  peremptory challenges.  That is, they have the right to excuse

9  individual jurors without disclosing their reason for doing so.

10 That's one of our procedures, and it's an important one.

11         Please bear in mind that the questions that you are

12 about to be asked are not intended to be an invasion of your

13 privacy and not intended to be an improper inquiry into personal

14 affairs.  But this is an important procedure that is simply a

15 necessary part of the preparation for the trial of this case.

16         You're going to be answered these -- you're going to

17 be asked these questions and to answer them under oath.  So now

18 I'm going to ask all of you to please stand and to raise your

19 right hands, and I will now direct my courtroom deputy,

20 Mr. Wood, to collectively swear or affirm the entire panel of

21 prospective jurors.

22     (The Jury Panel is Sworn)

23         DEPUTY CLERK:  Thank you.  You may be seated.

24         THE COURT:  Ladies and gentlemen, you are now, having

25 been sworn in, part of a very important process, a system of

1  justice that depends on the willing participation of its

2  citizens.  This court, the United States District Court for the

3  Eastern District of Pennsylvania, its history dates back to the

4  very founding of our country.  We were one of the original 13

5  courts.  And it was originally located across the mall in what

6  we all know as Independence Hall.  That's where our court got

7  its start.

8          Then as now, for our system of justice to work it

9  requires our citizens to set aside their important work, family,

10 and personal responsibilities and serve this country as jurors.

11 With this in mind, I'm going to ask you to dig deep when you are

12 asked whether jury service would work an undue or extraordinary

13 hardship on you.  Let me be the first to acknowledge that

14 service is a hardship for everyone, but consider whether it

15 would work an undue or extraordinary hardship.  Consider whether

16 you can set aside your other responsibilities and commit to

17 serving as a juror in this important matter.  We can't do this

18 trial without you.  This particular case is going to be tried in

19 the City of Allentown.  The federal court has several

20 courthouses here in Eastern Pennsylvania.  Obviously, we're in

21 the Philadelphia Courthouse at the moment.  This case is going

22 to be tried in the United States Courthouse at 5th and Hamilton

23 Streets in downtown Allentown.  If you live more than 50 miles

24 from the Allentown Federal Courthouse, the Court will reimburse

25 you for your expenses to stay overnight if you wish to do so.

1  If you do not live more than 50 miles away, the Court will

2  reimburse you for your travel expenses.

3      After we conclude today's proceedings, we will recess

4  and reconvene tomorrow morning at 9 a.m. in Allentown for those

5  of you who are selected to serve.  Generally, we go from 9 a.m.

6  to 5 p.m. every day with breaks mid -- in the midmorning and in

7  the midafternoon as well as an hour for lunch.  You will not be

8  sequestered for this trial.  That means you will not have to be

9  isolated during the trial, and you may go home to your homes and

10  your families at the end of each day.

11      As I mentioned before, I'm Judge Joseph Leeson.  I'm

12  based in Allentown at the federal courthouse there, and I'm

13  assisted by Justin Wood, who you've already met.

14      Mr. Wood, please stand.

15      My law clerk, W. Ryan Schuster.

16      My law clerk, William Lane (phonetic).

17      And my law clerk, Kelly Sloan (phonetic).

18      Does anyone here know me or any member of my staff?

19  The defendant in this case is Angel Luis Concepcion-Rosario, and

20  he is charged with possession with intent to distribute 40 grams

21  or more, that is approximately 199 grams, of a mixture that is

22  alleged to be fentanyl, and he's charged with aiding and

23  abetting occurring on or about June 17, 2017, in Allentown,

24  Lehigh County, and on Route 222, Berks County, Pennsylvania.

25  Please remember this is just an allegation and nothing has been

1  proven.

2        Do you know -- does anyone here know anything about

3  the facts of this case?

4        Have you heard anything about this case since you

5  arrived at the courthouse?

6        Has anyone seen, heard, or read anything about the

7  case on radio or television or in the newspapers or on the

8  internet?

9        If you heard anyone talk about -- have you heard

10  anyone talk about the case or have you heard -- seen or heard

11  anything on television, radio, or the internet about the case?

12  Have you formed opinions about it?  I think everybody answered

13  no, they haven't heard anything about the case.  Okay.

14        Does anyone here know the defendant, or do you or any

15  member of your immediate family or any close friend have any

16  connection of any kind with him?

17        And Mr. Concepcion-Rosario, would you please stand to

18  identify yourself, please?

19        THE COURT:  All right.  Thank you.  You may be seated.

20        Does anyone know the defendant, or do you or any

21  member of your immediate family or close friends have any

22  connection of any kind with him?

23        Do any of you know the lawyers in this case?  The

24  lawyer for the Government is Attorney Kishan Nair.

25        Mr. Nair, would you stand?

1            MR. NAIR:  Good afternoon.

2            THE COURT:  And the lawyer for the defendant is

3    Attorney Glennis Clark.

4            Mr. Clark, would you stand, please?

5            Have either of these lawyers ever acted as your

6    attorney or the attorney for any of your immediate family

7    members or close friends, to your knowledge?  Anyone know these

8    lawyers?

9            Among the individuals who may be called to possibly

10   testify by the Government and by the defense are -- and these

11   are possible witnesses.  They may or may not testify.  Special

12   Agent Joshua Romig.

13           Mr. Romig, would you stand, please?  Thank you.  You

14   may be seated.

15           Adrianna Elehanji.

16           Postal Inspector Al Herzog.

17           Task Force Officer Damian Murray.

18           Mr. Murray, would you stand?

19           MR. MURRAY:  Afternoon.

20           THE COURT:  Task -- thank you.

21           Task Force Officer Patrick Matsko (phonetic).

22           Task Force Officer Adam Noblock (phonetic).

23           Sergeant Vasa Faasuamalie.

24           Did I pronounce that correctly?

25           MR. FAASUAMALIE:  Yes, sir.

1          THE COURT:  Task Force Officer John Casella.

2          Trooper Jared Glugston.

3          Trooper Mark Quesada.

4          Trooper Joseph Carlson.

5          Trooper William Everett.

6          Aaron Quintangely (phonetic).

7          Task Force Officer Scott Errington.

8          Rosemary Bones Gomez.

9          Jillian Hummer (phonetic).

10          MR. NAIR:  Your Honor, may I add one --

11          THE COURT:  Yes.

12          MR. NAIR:  -- other witness?  Trooper Daniel Reed.

13          THE COURT:  Very good.  Thank you.

14          Having heard the list of possible witnesses, does

15  anyone here know them personally or have any dealings with any

16  of these people or their families?

17          This case relates to events occurring in the 800 block

18  of Jasper Street in the City of Allentown, the 900 block of

19  Wyoming Street in the City of Allentown, and on the Route 222

20  bypass in Berks County.  Has anyone seen, heard, or read

21  anything about those areas?

22          Do you or any member of your family or any close

23  friends live in or near these areas?

24          All right.  I'm going to ask you to stand and raise

25  your numbers, please, if you would.

1          Juror Number 1?  Which -- how do you know which

2     address?

3          PROSPECTIVE JUROR 1:  I have -- oh, I don't know that

4     address.  I have people that -- I have some friends that live in

5     Orefield, which is close to Allentown.

6          THE COURT:  All right.  Thank you, Number 1.

7          Let's go to Number 11.

8          PROSPECTIVE JUROR 11:  I live in the area.  My office

9     is in the area also.

10          THE COURT:  Okay.  Where is your office located?

11          PROSPECTIVE JUROR 11:  Trexlertown Road right next to

12     the 222 bypass.

13          THE COURT:  All right.  Thank you.

14          Number 12?

15          PROSPECTIVE JUROR 12:  I live in the area also.

16          THE COURT:  Okay.  Which area?

17          PROSPECTIVE JUROR 12:  Allentown.

18          THE COURT:  What part of Allentown?

19          PROSPECTIVE JUROR 12:  Like Kuhnsville area.

20          THE COURT:  Okay.  Thank you.

21          Number 13?

22          PROSPECTIVE JUROR 13:  I live in the area.

23          THE COURT:  Which area?  Whereabouts?

24          PROSPECTIVE JUROR 13:  Also in Allentown off of Mosser

25     Street.

1          THE COURT:  Off Mosser Street?

2          PROSPECTIVE JUROR 13:  Yeah.

3          THE COURT:  Okay.  Thank you.

4          Number 20?

5          PROSPECTIVE JUROR 20:  I'm in Easton, so I don't know

6    if that qualifies, Easton, PA, which is --

7          THE COURT:  Okay.  Very good.  Thank you.

8          Number 38?

9          PROSPECTIVE JUROR 38:  I live in Lower Macungie

10   Township close to the bypass.

11         THE COURT:  All right.  Thank you.

12         Number 45?

13         PROSPECTIVE JUROR 45:  I have close friends in Berks

14   County.

15         THE COURT:  Okay.  Very good.

16         You may be seated Number 38.

17         And Number 46?

18         PROSPECTIVE JUROR 46:  I live in Easton, PA as well,

19   just ten minutes away.

20         THE COURT:  All right.  Thank you.

21         Do any of you have any opinions about drug laws that

22   would make you unable to decide this case on the evidence

23   presented and the law as stated by the Court?  For example, do

24   you view violations of drug laws as victimless crimes, for

25   example?

1       Do any of you believe that individuals should be

2   permitted to possess drugs for their own use?

3       Do any of you have such negative feelings about drugs

4   that you would be unable to evaluate the evidence fairly as to

5   the defendant?

6       All right.  Number 45.  And let's -- anyone -- would

7   you please stand and raise your number?  All right.  Number 6.

8   Thank you.

9       Number 30.  Thank you.  Number 3.  Thank you.  Number

10  35.  Thank you.  You may be seated.  And I think Number 45.

11  Thank you.  You may be seated.

12      Anybody else?  Number 14?  All right.  Thank you.  You

13  may be seated.

14      All right.  Number -- next question.  Have you or has

15  any member of your family or any close friend used any drugs,

16  been addicted to drugs or been placed in a drug treatment

17  program?  All right.  Would you stand if that applies?  All

18  right.  Let's -- Mr. Clark and Mr. Nair, would you approach for

19  just a moment?

20      (Sidebar commences at 12:45 p.m.)

21      THE COURT:  Do you want me to do individual voir dire with

22  them to ask how they -- why they responded positively or just

23  get their numbers and you can do individual voir dire if you

24  want to do it later?

1       MR. CLARK: Well, no, I wouldn't want to do it in like

2  an open forum with them. You know, we wouldn't want to

3  embarrass them or anything like that.

4       MR. NAIR: Yeah.

5       (Simultaneous speech).

6       THE COURT: Okay. So I'll just get their numbers.

7       (Simultaneous speech).

8       MR. NAIR: Yeah. Thank you.

9     (Sidebar concluded at 12:46 p.m.)

10       THE COURT: All right. I'm just going to read your

11  numbers. And after I read your number, you may be seated.

12  Number 1. Number 3. Number 6. Number 8. Number 9. Number

13  14. Number 18. Number 19. Number 20. Number 26. Number 27.

14  Number 30. Number 31. Number 32. Number 33. Number 35.

15  Number 39. Number 40. Number 41. Number 44. Number 45. And

16  Number 46. Thank you.

17       Do you have any opinions, religious beliefs,

18  philosophies or prejudices which might make you unable to come

19  to a fair and impartial verdict in this case? For example, do

20  any of you believe that no person should ever be judged or

21  convicted? Do you believe that a person is guilty just because

22  they are here in court?

23       Do you feel a defendant would not be on trial unless

24  he had done something wrong?

1    Do any of you feel that just because a defendant is

2 charged with a crime that he is probably guilty?

3    Do you believe that the fact that a defendant is

4 arrested and charged with a crime, is that entitled to any

5 weight at all in deciding whether that defendant is innocent or

6 guilty?

7    Would anyone be unable to follow my instruction that

8 the defendant at this moment is innocent of any crime and that

9 he is presumed to be innocent throughout the course of this

10 trial?  Anybody unable to follow that instruction?

11    Would anyone be unable to accept the presumption that

12 the defendant is innocent even though he has been arrested and

13 charged with a crime, even though you've not heard any evidence

14 yet?  Anybody have any problem accepting that?

15    Would anyone be unable to follow my instruction that

16 it is the sole obligation of the Government to prove, if it is

17 able, that the defendant is guilty beyond a reasonable doubt?

18 Anybody unable to follow that instruction?

19    The burden of proof in a criminal case is that of

20 beyond a reasonable doubt.  This is the highest burden of proof

21 in our justice system, and it requires significantly more

22 evidence than a preponderance of the evidence and significantly

23 more evidence than clear and convincing evidence.  Is there

24 anyone who feels they could not understand that burden or feel

25 unable to hold the Government to it?

1    In determining whether the Government has proven a

2    defendant guilty beyond a reasonable doubt, you may only

3    consider the evidence adduced or the lack of evidence.  Does

4    anyone feel unable to accept, apply, or follow this rule?

5    Would anyone here vote guilty if you felt that the

6    evidence presented by the Government in this case showed only

7    that the defendant was more likely guilty than not guilty?

8    Would any of you vote guilty if you felt that the

9    evidence presented by the Government in this case showed only

10   that the defendant was probably guilty?  Is there anyone here

11   that believes that the law leans too far in favor of criminal

12   defendants?

13   Is there anyone here who believes that the law is too

14   soft on criminal defendants or that criminal defendants have too

15   many rights?

16   Is there anyone here that feels that it would be

17   unacceptable to vote not guilty or believe that a defendant was

18   not guilty after a trial?  Anybody who couldn't accept that?  Do

19   you feel -- anyone here who feels that they would be unable to

20   accept the law as I instruct you about it without reservation,

21   even if you wholly or partially disagree with it?  Would you

22   believe a witness or find them more impartial just because she

23   or he testifies on behalf of the Government?

1      Would you believe a witness or find them more

2   impartial just because she or he testifies on behalf of the

3   defense?

4      Is there anyone here who would believe a witness just

5   because she or he is a law enforcement officer?

6      Is there anyone here who would not believe a witness

7   just because she or he is a law enforcement officer?

8      If I instruct you that you are not to automatically

9   assume that the testimony of a law enforcement officer is

10  truthful just because the witness happens to be a police

11  officer, would you -- anyone here not be able to follow the

12  Court's instructions on that point?

13     If I further instruct you that such testimony of

14  police officers is to be evaluated by you as jurors just like

15  the testimony of any witness who is not a police officer and

16  evaluated by you using the same standards as non-police

17  officers, is there anyone here who would not be able to accept

18  those instructions from me?

19     Police officers can make mistakes just like the rest

20  of us.  And when any witness takes the stand, regardless of what

21  he or she does for a living, you must judge this testimony

22  objectively.  Is there anyone here who would not be able to

23  accept that instruction as the law?

24     Is there anyone here that the religion, the race,

25  color, sex, or ethnic background of a witness might influence

1  whether you believe his or her testimony?

2          The defendant in a criminal case is allowed to testify

3  if he wishes, but under the constitution of the United States,

4  the defendant has the absolute right not to testify and the

5  absolute right not to introduce evidence on his own behalf.

6  Under the law, jurors are not allowed to hold it against the

7  defendant if he chooses not to testify or introduce any

8  evidence.  This means that if the defendant in this case decides

9  not to testify, you may not infer that he is guilty or has

10  something to hide.  You may not do that.  Does anyone here

11  disagree with this rule or feel unable to follow it?

12          Now that the defendant has been formally charged, and

13  the lawyers and the Court have taken care of all the questions

14  raised before trial, would you expect that included in the

15  evidence at trial will be testimony trying to show that the

16  defendant did not commit the charged crimes or that he is

17  innocent?

18          Does anyone here believe that innocent defendants are

19  more likely to testify in their own defense than guilty

20  defendants?  Is there anyone here who believes that a defendant

21  who is innocent might nevertheless refuse to testify on his own

22  behalf?

23          Is there anyone here who would consider the

24  defendant's decision not to take the stand and testify on his

25  own behalf as evidence of guilt?

1        If the defendant were to testify in this case, would

2   you view his testimony differently than you would a witness who

3   is not a defendant?

4        If the defendant were to testify in this case, would

5   you judge his credibility more harshly?  Anybody here think that

6   way?

7        Anyone here believes that the testimony of a person

8   who was involved in the commission of this type of crime is

9   entitled to more or less weight than other kinds of testimony?

10  Has anyone here had any training in law, in law enforcement,

11  criminal justice, or any special science dealing generally or

12  specifically with criminal law?

13       All right.  Let's get the numbers.  Number 8, can you

14  tell us what experience you have in that -- those areas?

15       PROSPECTIVE JUROR 8:  Yes.  I was a Cook County

16  juvenile probation officer for five years in Chicago, Illinois.

17  I was also a Chicago police officer for 11 years.

18       THE COURT:  All right.  Thank you.  You may be seated.

19       Number 20?

20       PROSPECTIVE JUROR 20:  It was a long time ago, but I

21  was a probation officer for two years in upstate New York.

22       THE COURT:  Thank you.

23       Number 25?

24       PROSPECTIVE JUROR 25: Auxillary policeman in

25  (indiscernible) Township back in the '80s, and I have an

1  associate degree in criminal justice.

2          THE COURT:  Thank you.  You may be seated.

3          And then Number 31?

4          PROSPECTIVE JUROR 31:  I have a law degree, and I've

5  been involved in a surveillance of criminal acts in and real

6  estate planning.

7          THE COURT:  All right.  Thank you.  You may be seated.

8          Are the people here or any members of your family,

9  close friends, or work associates lawyers?  Okay.  And also let

10 me -- would you please stand.  Also let me include, are there

11 any lawyers here?  Would you also stand?

12         All right.  Let's go through each one.

13         Number 11?

14         PROSPECTIVE JUROR 11:  My sister is a lawyer.

15         THE COURT:  Okay.  What kind of a lawyer?  Do you

16 know?

17         PROSPECTIVE JUROR 11:  International, not criminal.

18         THE COURT:  Okay.  Very good.  Thank you.

19         Number 17?

20         PROSPECTIVE JUROR 17:  I just have two really good

21 close friends that are lawyers but more family law stuff.

22         THE COURT:  Okay.  Thank you.

23         Number 20?

24         PROSPECTIVE JUROR 20:  My brother is a personal injury

25 attorney.  My daughter is a civil litigator.  And my father was

1  a policeman for a long -- 30, 35 years.

2          THE COURT: Okay. Thank you.

3          Number 27?

4          PROSPECTIVE JUROR 27: Son-in-law is a corporate

5  lawyer.

6          THE COURT: Okay. Thank you.

7          Number 31?

8          PROSPECTIVE JUROR 31: I'm an attorney, and my

9  daughter's an attorney.

10          THE COURT: What kind of law do you practice, sir?

11          PROSPECTIVE JUROR 31: I don't practice law anymore.

12          THE COURT: Okay. What kind of law does your daughter

13  practice?

14          PROSPECTIVE JUROR 31: She practices real estate law.

15          THE COURT: All right. Thank you. You may be seated.

16          Number 32?

17          PROSPECTIVE JUROR 32: My niece is an attorney. I

18  don't know what kind.

19          THE COURT: All right. Thank you.

20          Number 33?

21          PROSPECTIVE JUROR 33: A good friend is a military Air

22  Force prosecutor.

23          THE COURT: All right. Thank you.

24          Number 35?

25          PROSPECTIVE JUROR 35: My mother-in-law was a

1  litigation lawyer and then family law.

2          THE COURT:  Was it -- do you know if it was civil

3  litigation or criminal litigation?

4          PROSPECTIVE JUROR 35:  Civil.

5          THE COURT:  Civil.  Okay.  Very good.  Thank you.

6          Number 36?

7          PROSPECTIVE JUROR 36:  For the last 15 years, I've

8  worked for various law firms in Philadelphia as well as in the

9  suburbs, specializing anywhere from all different types of law

10  to my current firm which is a cyber security firm.

11          THE COURT:  All right.  Thank you.

12          Number 37?

13          PROSPECTIVE JUROR 37:  My daughter is currently a

14  practicing attorney in Chicago, mostly white-collar criminal

15  matters.  And my father was a corporate lawyer.

16          THE COURT:  All right.  Thank you.

17          Number 39?

18          PROSPECTIVE JUROR 39:  My nephew is a lawyer.  I'm not

19  sure what he is, but it's not criminal.

20          THE COURT:  All right.  Thank you.

21          Number 40?

22          PROSPECTIVE JUROR 40:  My cousin is currently a lawyer

23  in Philly and formerly a clerk for a federal judge in Philly.

24          THE COURT:  Do you know what kind of law he -- he or

25  she practices?

 1          PROSPECTIVE JUROR 40:  I'm not entirely sure.

 2          THE COURT:  Okay.  Number 42?

 3          PROSPECTIVE JUROR 42:  My brother-in-law is a

 4  lawyer -- does systems work.

 5          THE COURT:  I'm sorry.  What was it?

 6          PROSPECTIVE JUROR 42:  He does systems work.

 7          THE COURT:  Oh, I see.  Okay.  Thank you.

 8          And Number 45?

 9          PROSPECTIVE JUROR 45:  My husband's boss is a criminal

10  defense attorney, and I also work in human resources, so I work

11  with a number of attorneys in employment law.

12          THE COURT:  Okay.  Thank you.

13          All right.  A couple more questions before we adjourn

14  for lunch.  Have any of you ever served as a juror before?  If

15  you would please stand.

16          Number 7, what kind of a case did you serve as a juror

17  on, civil or criminal?

18          PROSPECTIVE JUROR 7:  It was civil.

19          THE COURT:  Civil?  Okay.  Thank you.

20          PROSPECTIVE JUROR 7:  It was in Bucks County.

21          THE COURT:  All right.  Thank you.  You may be seated.

22          PROSPECTIVE JUROR 7:  Can I give further --

23          THE COURT:  Oh, there's more?  Okay.  Go ahead.  Okay.

24  Let's do this.

25          Counsel, would you make a note?  We'll ask Juror

1    Number 7 to meet privately later.

2              Number 19?  Service as a juror?

3              PROSPECTIVE JUROR 19:  Yes.  In Bergen County, New

4    Jersey.

5              THE COURT:  Civil or criminal case?

6              PROSPECTIVE JUROR 19:  Criminal case.

7              THE COURT:  Okay.  Thank you.

8              Number 22?

9              PROSPECTIVE JUROR 22:  Yes.  It was Lancaster County,

10   and it was a civil case.

11             THE COURT:  All right.  Thank you.

12             Number 24?

13             PROSPECTIVE JUROR 24:  Here.  I did civil and

14   criminal.

15             THE COURT:  When you say here, do you mean federal

16   court?

17             PROSPECTIVE JUROR 24:  Federal -- oh, not in federal.

18   The one --

19             THE COURT:  Across the street?

20             PROSPECTIVE JUROR 24:  Yeah.  That --

21             THE COURT:  State court?  Okay.  Thank you.

22             Number 26?

23             PROSPECTIVE JUROR 26:  I'm not sure whether this is

24   pertinent.  It was here in Philadelphia.  It was a criminal

25   case, but it was postponed, so I never actually observed a

1    trial.

2             THE COURT:  Okay.  Thank you.

3             Number 27?

4             PROSPECTIVE JUROR 27:  In Lehigh County, criminal.

5             THE COURT:  All right.  Thank you.  Number 28?

6             PROSPECTIVE JUROR 28:  In Norristown, criminal.

7             THE COURT:  All right.  Thank you.  Number 29?

8             PROSPECTIVE JUROR 29:  Lancaster County, criminal.

9             THE COURT:  All right.  Thank you.

10            Number 30?

11            PROSPECTIVE JUROR 30:  Philadelphia, criminal.

12            THE COURT:  All right.  Thank you.

13            Number 30?

14            PROSPECTIVE JUROR 30:  Philadelphia, criminal.

15            THE COURT:  All right.  Thank you.

16            Let's see.  Number 31.

17            PROSPECTIVE JUROR 31:  Montgomery County, criminal.

18            THE COURT:  Thank you.

19            Number 41?

20            PROSPECTIVE JUROR 41:  It was a civil service case,

21   and I was a juror (indiscernible).

22            THE COURT:  Okay.  Thank you.

23            Number 43?

24            PROSPECTIVE JUROR 43:  Civil case in this court.

25   Federal.

1          THE COURT:  Thank you.

2          And then, sir, I can't see your number.  48?

3          PROSPECTIVE JUROR 48:  Bucks County, criminal.

4          THE COURT:  Thank you.

5          Number 49?

6          PROSPECTIVE JUROR 49:  Both were in Philadelphia.  One

7  was civil and the other one is criminal.

8          THE COURT:  Thank you.

9          Number 50?

10          PROSPECTIVE JUROR 50:  Media, Delaware County, medical

11  malpractice.

12          THE COURT:  All right.  Thank you.

13          All right.  Of those of you who said that you had

14  served on criminal juries and criminal cases, did your service

15  as a juror have any effect on your ideas concerning criminal

16  trials or defendants in criminal trials?  If so, would you

17  please stand with your number?

18          All right.  Number 31.  Thank you.

19          And we'll do one last question before we adjourn for

20  lunch.  Have any of you been called to serve on a jury panel

21  before but not chosen as a juror?

22          Okay.  Would you all stand and with your numbers,

23  please?  All right.  What I'll do is I'm going to read the

24  numbers.  And then, obviously, you can then be seated.  Number

25  1.  You may be seated.  Number 2.  May be seated.  Number 3.

 1   May be seated.  Number 4.  May be seated.  Number 5, 6, 7, 8, 9,

 2   10, 16, 17, 18, 19, 20, 21, 22, 23, 26, 28, 30, 32, 33, 34, 36,

 3   37, 39, 43, 45, 46, 47, 48, and 50.

 4              All right.  Ladies and gentlemen, we're going to take

 5   a one-hour break now for lunch.  Before I excuse you for lunch,

 6   I have some instructions for you that are very important.

 7              You are not allowed to discuss this case with anyone

 8   over the lunch hour.  You may not discuss the jury selection

 9   process.  You may not discuss what you've heard about the case,

10   which is very limited.  You may not look this case up in any

11   way.  That would be strictly forbidden and would cause serious

12   problems for this case if you were to try to do any independent

13   research on your own.  That is strictly prohibited.  And if we

14   were to find out that anybody did that, that would have serious

15   ramifications for you and for this process.

16              So you can talk about anything you want but not about

17   the case or about this process.  Everybody feel comfortable

18   following those instructions?  And you'll hear -- if you're

19   selected for the jury, you're going to hear similar instructions

20   repeated by me throughout the case.  It's important that if you

21   are selected for this case that you hear the whole case and all

22   the evidence before you make your decision as to guilt or

23   innocence.  And then there will be a time for those who are

24   selected to deliberate at the end of the trial to discuss it at

25   that time but not before.

1      All right.  Anything else, counsel, before we excuse

2  for lunch?

3      MR. NAIR:  No, Your Honor.

4      MR. CLARK:  No, Your Honor.

5      THE COURT:  All right.  Very good.

6      Mr. Wood, would you adjourn court for one hour?

7      Please return in one hour to the same seats you're in

8  now.

9      DEPUTY CLERK:  All rise.  Court is adjourned.

10     (Recess is taken from 1:03 p.m. to 1:58 p.m.)

11     THE COURT:  Counsel, are we ready to go?

12     MR. CLARK:  Yes, Your Honor.

13     THE COURT:  Want to bring the defendant in?

14     DEPUTY CLERK:  He's on his way in.

15     THE COURT:  Okay.  Good.

16     (Pause)

17     DEPUTY CLERK:  Judge, I'm going to go in the back.  Do

18  you want to talk on the microphone, so I can hear you?

19     THE COURT:  Okay.  All right.  This is just a test.

20  Let's see if Mr. Wood can hear me in the back with the

21  microphone.

22     UNIDENTIFIED SPEAKER:  I can hear good.  I don't think

23  you were talking in the mic before.

24     THE COURT:  Okay.  So I need to talk a little closer

25  to the mic then.  How's this?

1      DEPUTY CLERK:  Good.

2      THE COURT:  How's this?  So-so?

3      DEPUTY CLERK:  It's okay.

4      THE COURT:  All right.  So I need to get a little

5 closer.

6      DEPUTY CLERK:  Yeah.

7      THE COURT:  All right.  Got it.  Thank you.

8    (Pause)

9      THE COURT:  All right, counsel.  Are we ready to bring

10 the jury in?

11      MR. NAIR:  Yes, sir.

12      MR. CLARK:  Yes, Judge.

13      THE COURT:  All right.  Mr. Wood?

14    (Jury in at 2:02 p.m.)

15      THE COURT:  Ladies and gentlemen, would you look to

16 your right and left.  I just want to make sure everybody's here.

17 Does anybody sense that anyone's missing?  Anybody sense that

18 anyone's missing, or are we all here?

19      UNIDENTIFIED SPEAKER:  Number --

20      UNIDENTIFIED SPEAKER:  Okay.  We're missing one.

21 Number 4.

22      THE COURT:  Number 4?  Okay.  Let's -- all right.

23 We'll wait just a moment, see if this Number 4 comes along.

24    (Pause)

25      THE COURT:  All right.  Everybody here now, all the panel

1  members?  Anybody see anyone missing?  All right.  Let's

2  proceed.

3         Are we on the record?  Okay.  Very good.  Before we

4  adjourned for lunch, I was asking you about service -- prior

5  service on juries, and some of you responded that you had prior

6  service on criminal juries.  And I have a few follow-up

7  questions.

8         For those of you who responded yes that you had

9  previously served on a criminal jury, I want to ask did that

10  case go to a verdict.  And I'm going to ask those to stand with

11  their numbers for those where you served as a criminal juror

12  where the case went to a verdict.

13         Okay.  Number 19, did the case result in a conviction

14  or an acquittal?

15         PROSPECTIVE JUROR 19:  Conviction.

16         THE COURT:  Conviction.  All right.  Thank you.

17         Number 27, did the case result in a conviction or an

18  acquittal?

19         PROSPECTIVE JUROR 27:  Conviction.

20         THE COURT:  Conviction.  All right.  Very good.

21         Number 28, did the case result in a conviction or an

22  acquittal?

23         PROSPECTIVE JUROR 28:  Conviction.

24         THE COURT:  All right.  Thank you.

25         Oh, by the way, when I said very good, I meant that

1  means to sit down.  That's what that means.  I wasn't commenting

2  on your decision.

3         Number 29, did it result in a conviction or an

4  acquittal?

5         PROSPECTIVE JUROR 29:  A conviction.

6         THE COURT:  All right.  Thank you.

7         Number 30, was it -- did it result in a conviction or

8  an acquittal?

9         PROSPECTIVE JUROR 30:  Same.  Conviction.

10        THE COURT:  Conviction.  Thank you.

11        And Number 49, did it result in a conviction or an

12  acquittal?

13        PROSPECTIVE JUROR 49:  Acquittal.  Acquittal.

14        THE COURT:  Acquittal.  Thank you.

15        For those of you who responded -- oh, by the way,

16  another follow-up question.  For those of you who have served

17  previously on criminal juries, would that experience in any way

18  prevent you from -- if you're selected here, to listen to the

19  facts, listen to the law, and decide this case solely based on

20  the facts and the law that you hear in the courtroom?  Anybody

21  who could not do that?  Okay.

22        For those of you who responded earlier that you have

23  relationships with lawyers -- and a number of you responded.

24  For those folks who responded, would that in any way affect your

25  ability to be a fair and impartial juror in this case and decide

1  the facts -- decide the case based solely on the facts you hear

2  in the courtroom and the law you hear in the courtroom?  Anybody

3  who could not do that?

4        A number of you indicated you had relationships with

5  law enforcement officers, you knew them, or they were relatives

6  or friends or something.  For those of you who had those types

7  of associations with law enforcement officers, would those

8  relationships affect your ability to be fair and impartial in

9  this case and decide this case solely on the facts and the law

10 you hear in this courtroom?  Anybody who couldn't do that?

11        All right.  Number 31?  All right.  Thank you.

12        Now, a number of you mentioned you had served on civil

13 juries, so this question is sort of a bigger question directed

14 to anybody who had served on any kind of a jury.  Is there

15 anything about that experience would -- which would affect your

16 ability to sit as a juror in this case?

17        Okay.  Number 7.  Anybody else?  All right.  Number 7,

18 do you feel you'd be able to listen to the facts and the law on

19 this case and just decide this case based solely on the facts

20 and the law that you hear in the courtroom?  Would you be able

21 to do that?

22        PROSPECTIVE JUROR 7:  (No audible response).

23        THE COURT:  All right.  Thank you.  Next question.

24 Have any of you ever been involved in any legal action as a

25 defendant or a plaintiff?  A defendant or a plaintiff?  And that

1  would be in a civil case.

2          Okay.  Number 10, what was your involvement in a case?

3  Civil case?

4          PROSPECTIVE JUROR 10:  Yes.

5          THE COURT:  Okay.  Defendant or plaintiff?

6          PROSPECTIVE JUROR 10:  Defendant.

7          THE COURT:  Okay.  And can I ask, what kind of a case

8  was it?

9          PROSPECTIVE JUROR 10:  It was a property dispute.  I

10 was a landowner, property owner, and I was involved in a

11 frivolous lawsuit for about four years and tens of thousands of

12 dollars to defend myself.

13         THE COURT:  Okay.  And the case did go to court?

14         PROSPECTIVE JUROR 10:  Ultimately, it settled, and the

15 plaintiff walked away after they got tired of harassing us.

16         THE COURT:  All right.  Thank you.

17         Number 11, were you a defendant or a plaintiff in a

18 civil case?

19         PROSPECTIVE JUROR 11:  Defendant.

20         THE COURT:  Okay.  Can you tell us what kind of a case

21 it was?

22         PROSPECTIVE JUROR 11:  A partnership dispute.

23         THE COURT:  Okay.  And that went to court?

24         PROSPECTIVE JUROR 11:  We settled outside of court.

25         THE COURT:  Okay.  Thank you.

1    Number 31, were you a defendant or plaintiff in a

2  civil case?

3    PROSPECTIVE JUROR 31:  I was a defendant in a

4  contracts dispute and a defendant in multiple civil suits.

5    THE COURT:  Okay.  And did those -- any of those

6  disputes go to court?

7    PROSPECTIVE JUROR 31:  Yes.

8    THE COURT:  Any of them go to a verdict, or were they

9  resolved?

10    PROSPECTIVE JUROR 31:  They all went -- the ones

11  I -- the contract went to court.  But I'm (indiscernible) had a

12  thousand landlord/tenant slip and falls.  I can't tell you how

13  many went to court, how many didn't.

14    THE COURT:  Okay.

15    PROSPECTIVE JUROR 31:  So some of them definitely did.

16    THE COURT:  Okay.  Thank you.

17    And Number 15, were you --

18    PROSPECTIVE JUROR 15:  Yes.

19    THE COURT:  -- in a civil case, were you a plaintiff

20  or a defendant?

21    PROSPECTIVE JUROR 15:  Defendant.  It is currently

22  open.

23    THE COURT:  It's currently open.  What kind of a case

24  is it?

25    PROSPECTIVE JUROR 15:  Car accident.

1      THE COURT:  Okay.  And is it -- it's in court?

2      PROSPECTIVE JUROR 15:  No.

3      THE COURT:  No, it's not in court?

4      PROSPECTIVE JUROR 15:  No.

5      THE COURT:  Okay.  Thank you.

6      Number 45, you were in a civil case.  Were you a

7  plaintiff or a defendant?

8      PROSPECTIVE JUROR 45:  Plaintiff.

9      THE COURT:  And what kind of a case was it?

10      PROSPECTIVE JUROR 45:  Employment law.

11      THE COURT:  And was that in court?

12      PROSPECTIVE JUROR 45:  Yes.

13      THE COURT:  Is it in court right now?

14      PROSPECTIVE JUROR 45:  No.

15      THE COURT:  Okay.  And was that -- did it go to a

16  verdict, or would -- did it get resolved?

17      PROSPECTIVE JUROR 45:  It was settled.

18      THE COURT:  Okay.  Thank you.

19      Next question.  Have you or any member of your family

20  or a close friend ever been the victim of a crime, been

21  arrested, or been charged with a crime?

22      All right.  I'm just going to read your numbers, and

23  I'm going to ask you to be seated.  All right.  Let's see.

24  Number 1.  You may be seated.  Number 3.  You may be seated.

25  Number 9.  You may be seated.  Number 10.  Number 15.  Number

1   17.   Number 18.   Number 19.   Number 20.   Number 26.   Number 27.

2   Number 28.   Number 30.   Number 31.   Number 34.   Number 37.

3   Number 39.   Number 45.   Number 46.   Number 47.   And Number 49.

4          Have any of you ever been interviewed by any members

5   of a law enforcement agency or prosecutor's office in connection

6   with a criminal case or been involved in a criminal case as a

7   witness or in some other capacity?   If so, would you please

8   stand with your numbers.

9          Okay.   Number 3.   Number 8.   Number 9.   Number 30.

10   Number 31.   Number 37.   Number 45.   Thank you.

11          If you or any member of your family or any close

12   friend were the victim of a crime, was anyone arrested or

13   prosecuted for the crime?   If so, would you please stand with

14   your number.

15          All right.   Number 6.   I'm going to ask a follow-up

16   question to each of you.   Number 6, were you satisfied with the

17   way the police, the lawyer, and the courts handled that case?

18          PROSPECTIVE JUROR 6:   Yes.

19          THE COURT:   All right.   Thank you.

20          Number 13, same question.   Were you satisfied with the

21   way the police, the lawyer, and the courts handled that case?

22          PROSPECTIVE JUROR 13:   Yes.

23          THE COURT:   All right.   Thank you.

24          Number 20, were you satisfied with the way the police,

25   the lawyer, and the courts handled that case?

1          PROSPECTIVE JUROR 20:  Yes with the criminal part, but

2     the injury -- personal injury part, no, not so much.

3          THE COURT:  All right.  Thank you.

4          Number 30, were you satisfied with the way the police,

5     the lawyer, and the courts handled the case?

6          PROSPECTIVE JUROR 30:  Pretty much.  Just not the

7     outcome.

8          THE COURT:  All right.  Thank you.

9          Number 34 -- or, excuse me, Number 31, were you

10    satisfied with the way the police, the lawyer, and the courts

11    handled the case?

12         PROSPECTIVE JUROR 34:  Yes.

13         THE COURT:  All right.  Number 34, were you satisfied

14    with the way the police, the lawyer, and the courts handled the

15    case?

16         PROSPECTIVE JUROR 34:  Yes.

17         THE COURT:  Number 38, were you satisfied with the way

18    the police, the lawyer, and the courts handled the case?

19         PROSPECTIVE JUROR 38:  No one was ever charged, so.

20    It was investigated, but no charges were -- they never found

21    anybody.  So (indiscernible).  I don't know that they could

22    have.

23         THE COURT:  All right.  Thank you.

24         Number 45, were you satisfied with the way the police,

25    the lawyer, and the courts handled the case?

1        PROSPECTIVE JUROR 45:  No.

2        THE COURT:  All right.  Thank you.

3        Number 46, were you satisfied with the way the police,

4    the lawyer, and the courts handled the case?

5        PROSPECTIVE JUROR 46:  Yes.

6        THE COURT:  Thank you.

7        Do you or does any member of your family or close

8    friend have any involvement with the United States Government,

9    the Drug Enforcement Administration, the United States

10   Attorney's Office, or any other federal law enforcement agency?

11   If so, would you please stand with your number.

12        Number 45?

13        PROSPECTIVE JUROR 45:  My husband is a retired public

14   official.  He was a fire chief.  I don't know if that is in the

15   realm of what you're talking about.

16        THE COURT:  Okay.  He was a fire chief in your

17   community where you live?

18        PROSPECTIVE JUROR 45:  Yes.

19        THE COURT:  All right.  Thank you.

20        Number 21?

21        PROSPECTIVE JUROR 21:  Almost 40 years in local

22   government, sir.

23        THE COURT:  Okay.

24        PROSPECTIVE JUROR 21:  Local.

25        THE COURT:  Were you involved in any law enforcement

1  aspect?

2       PROSPECTIVE JUROR 21:  Municipal manager and hired and

3  fired police officers, disciplined them throughout my career.

4       THE COURT:  All right.  Thank you.

5       Number 32?

6       PROSPECTIVE JUROR 32:  My son is 20 years in the Air

7  Force.  He's a policeman in the Air Force.

8       THE COURT:  Okay.  Number 22?

9       PROSPECTIVE JUROR 22:  Yes.  I have a good friend who

10 was a detective for the State of Pennsylvania.  He's retired

11 now.

12       THE COURT:  All right.  And Number 33?

13       PROSPECTIVE JUROR 33:  I have a friend in the FBI.

14       THE COURT:  Okay.  And 39?

15       PROSPECTIVE JUROR 39:  Friend in the FBI.

16       THE COURT:  All right.  Thank you.

17       Have any of you ever had or do you anticipate having

18 any claim or dispute with or against the United States

19 government?

20       Have any of you -- do you now or have you ever been in

21 the military service or employed by the United States government

22 in any capacity?

23       Okay.  Number 3.  Number 15.  Number 21.  You may be

24 seated.  Number 32.  34.  36.  39.  And 43.  Thank you.

25       Has any member of your family or any close

1  friend -- pardon me.  That's -- I already read that.  Next, have

2  you or has any member of your family or any friend or

3  acquaintance ever worked as a law enforcement officer or for any

4  law enforcement agency, investigatory agency, prosecutorial

5  agency, or private security agency?  Okay.

6          Number 1, can you tell me which one applies?

7          PROSPECTIVE JUROR 1:  I have a friend from high school

8  that's a police officer.

9          THE COURT:  Okay.  Do you feel that would affect your

10  ability to serve as a juror in this case and decide the case

11  fairly and impartially?

12          PROSPECTIVE JUROR 1:  No, it wouldn't have any affect.

13          THE COURT:  Okay.  Number 3?

14          PROSPECTIVE JUROR 3:  My neighbor is a policeman in

15  Maryland, but he lives in Pennsylvania.

16          THE COURT:  All right.  Do you feel that that would in

17  any way affect your ability to serve as a fair and impartial

18  juror in this case?

19          PROSPECTIVE JUROR 3:  I wouldn't say so.

20          THE COURT:  All right.  Thank you.

21          Number 8?

22          PROSPECTIVE JUROR 8:  My husband was a former police

23  officer.

24          THE COURT:  Do you feel that would in any way affect

25  your ability to serve as a juror in this case on a fair and

1   impartial basis?

2           PROSPECTIVE JUROR 8:  No.

3           THE COURT:  All right.  Number 9?

4           PROSPECTIVE JUROR 9:  I have a cousin that's a police

5   officer.

6           THE COURT:  All right.  Do you feel that in any way

7   would affect your ability to sit as a juror in this case and

8   decide it on a fair and impartial basis?

9           PROSPECTIVE JUROR 9:  No.

10          THE COURT:  All right.  Thank you.

11          Number 14?

12          PROSPECTIVE JUROR 14:  Friend, a state trooper.

13          THE COURT:  All right.  Do you feel that that in any

14  way would affect your ability to serve as a juror in this case

15  and decide it on a fair and impartial basis?

16          PROSPECTIVE JUROR 14:  (No audible response).

17          THE COURT:  All right.  Number 15?

18          PROSPECTIVE JUROR 15:  Both a cousin-in-law was a

19  police officer who's now passed away --

20          THE COURT:  Do you feel that would in any way affect

21  your ability to sit as a juror in this case and decide the case

22  fairly and impartially?

23          PROSPECTIVE JUROR 15:  No.

24          THE COURT:  All right.  Number 20?

25          PROSPECTIVE JUROR 20:  Father was a detective sergeant

1  in Syracuse for 35 years.

2      THE COURT:  Do you feel that in any way would affect

3  your ability to sit as a juror in this case and decide the case

4  fairly and impartially?

5      PROSPECTIVE JUROR 20:  No.

6      THE COURT:  All right.

7      Number 22?

8      PROSPECTIVE JUROR 22:  Yes.  The friend I had spoke

9  about before, he was a state trooper, and then he became a

10  detective for the State of Pennsylvania.  Now he's retired.

11      THE COURT:  Okay.  Do you feel that in any way would

12  affect your ability to serve as a juror in this case and decide

13  it fairly and impartially?

14      PROSPECTIVE JUROR 22:  (No audible response).

15      THE COURT:  All right.  Number 23?

16      PROSPECTIVE JUROR 23:  Several close friends are

17  police officers.

18      THE COURT:  And would that in any way affect your

19  ability to serve as a juror and decide this case fairly and

20  impartially?

21      PROSPECTIVE JUROR 23:  No.

22      THE COURT:  All right.  Thank you.

23      Number 24?

24      PROSPECTIVE JUROR 24:  Several close friends are

25  detectives.  And one is a retired sergeant.

1    THE COURT:  And would that in any way affect your

2  ability to serve as a juror in this case and decide it fairly

3  and impartially?

4    PROSPECTIVE JUROR 24:  No.

5    THE COURT:  Number 25?

6    PROSPECTIVE JUROR 25:  Several close friends who are

7  police officers, detectives, and a former sheriff's officer.

8    THE COURT:  All right.  Would that in any way affect

9  your ability to serve as a juror in this case and decide the

10  case fairly and impartially?

11    PROSPECTIVE JUROR 25:  No.

12    THE COURT:  All right.  Thank you.

13    26?

14    PROSPECTIVE JUROR 26:  My cousin is a law enforcement

15  officer a prison guard in California.  I don't think that would

16  affect my ability to be impartial in this case.

17    THE COURT:  All right.  Thank you.

18    Number 32?

19    PROSPECTIVE JUROR 32:  I work part time for Lehigh

20  University security.  My son's a policeman in the Air Force for

21  20 years.  And my next-door neighbor's a state cop.

22    THE COURT:  All right.  Would any of that affect your

23  ability to serve as a juror in this case and decide the case

24  fairly and impartially?

25    PROSPECTIVE JUROR 32:  (No audible response).

1          THE COURT:  Number 33?

2          PROSPECTIVE JUROR 33:  Air Force (indiscernible) FBI

3    agent.  And, no, it wouldn't.

4          THE COURT:  Okay.  Could you -- I'm going to ask you

5    so I can -- I couldn't hear too well.  So I'll ask, and then you

6    can repeat your answer.  I'm sorry.  What was the --

7          PROSPECTIVE JUROR 33:  I have a -- my friend's a

8    prosecutor in the Air Force, and my other friend is an FBI

9    agent.  And I doubt it would affect my ability.

10         THE COURT:  All right.  Would not affect your ability

11   to sit as a juror and hear it fairly and impartially, correct?

12         PROSPECTIVE JUROR 33:  Correct.

13         THE COURT:  All right.  Very good.  Number 35?

14         PROSPECTIVE JUROR 35:  My neighbors, the husband and

15   the wife are both state troopers.

16         THE COURT:  And that would -- would that affect your

17   ability to serve as a juror in this case and decide it fairly

18   and impartially?

19         PROSPECTIVE JUROR 35:  No, I don't think so.

20         THE COURT:  All right.  Number 37?

21         PROSPECTIVE JUROR 37:  My uncle is a retired assistant

22   district attorney.  I don't believe it will affect my ability to

23   be impartial.

24         THE COURT:  All right.  Thank you.

25         Number 39?

1       PROSPECTIVE JUROR 39:  My brother-in-law is a retired

2    Cook County sheriff, and I have friends that are state troopers.

3       THE COURT:  All right.  And would --

4       PROSPECTIVE JUROR 39:  And it would not affect.

5       THE COURT:  All right.  Would not affect.  All right.

6       Number 46?

7       PROSPECTIVE JUROR 46:  My father is a retired

8    corrections officer.

9       THE COURT:  All right.  Would that affect your ability

10   to serve as a juror and decide the case --

11      PROSPECTIVE JUROR 46:  No.

12      THE COURT:  -- fairly and impartially?  All right.

13   Thank you.

14      MR. NAIR:  I think you have --

15      MR. CLARK:  We have one more.

16      MR. NAIR:  -- (indiscernible) one more.

17      THE COURT:  Oh, I'm sorry.

18      MR. CLARK:  (Indiscernible).

19      THE COURT:  Number 45.

20      PROSPECTIVE JUROR 45:  My brother was a former police

21   officer in the State of Virginia, and my cousin is a police

22   officer in Pennsylvania.

23      THE COURT:  And would that affect your ability to

24   serve as a juror and decide the case fairly and impartially?

25      PROSPECTIVE JUROR 45:  No.

1         THE COURT:  All right.  Thank you.

2         Have you or any member of your family ever had any

3  personal experience with law enforcement agents, including but

4  not limited to the Pennsylvania State Police, the Federal Bureau

5  of Investigation, FBI, or local authorities?

6         If you have, would you stand, and we'll read your

7  numbers.  Number 8.  Number 9.  Number 10.  Number 21.  Number

8  31.  And Number 45.  Thank you.

9         This is somewhat duplicative, but we'll cover it

10  anyway.  Have you or has any member of your family or close

11  friend ever worked for the state government or local government?

12  And if so, could you tell us a little bit about that?  I know

13  some have already touched on that.

14         Number 8?

15         PROSPECTIVE JUROR 8:  I currently work for Montgomery

16  County.

17         THE COURT:  For Montgomery County?

18         PROSPECTIVE JUROR 8:  Yes.

19         THE COURT:  And what do you do for the county?

20         PROSPECTIVE JUROR 8:  I work for children and youth.

21         THE COURT:  Okay.  And I think -- Number 9, were you

22  going to stand?

23         PROSPECTIVE JUROR 9:  I was going to.  Well, my cousin

24  is a police officer, and I also have a distant cousin that's a

25  correctional officer.

1          THE COURT:  Okay.  Thank you.

2          PROSPECTIVE JUROR 9:  Yeah.

3          THE COURT:  Number 20?

4          PROSPECTIVE JUROR 20:  I think we covered this.  My

5    father, the police officer.

6          THE COURT:  Okay.  Yes.

7          PROSPECTIVE JUROR 20:  Yeah.

8          THE COURT:  Number 21?

9          PROSPECTIVE JUROR 21:  Forty years in two townships in

10   Montgomery County, 26 as township manager.

11         THE COURT:  Thank you.  Number 37?

12         PROSPECTIVE JUROR 37:  As I mentioned, my uncle.  I

13   also have a friend who is a child advocate for Montgomery

14   County.

15         THE COURT:  Thank you.

16         And Number 45?

17         PROSPECTIVE JUROR 45:  My husband retired after 32

18   years of service in Lancaster County.

19         THE COURT:  Thank you.  And Number 26?

20         PROSPECTIVE JUROR 26:  Are you asking specifically

21   about Pennsylvania?

22         THE COURT:  Any state.

23         PROSPECTIVE JUROR 26:  Okay.  I worked for the city

24   government in Charlotte, North Carolina --

25         THE COURT:  All right.  Thank you.

1          PROSPECTIVE JUROR 26:  -- their housing department.

2          THE COURT:  Have you or anyone in your immediate

3     family ever worked in the banking or real estate industry?

4          What I'm going to do is I'm going to read your number

5     and ask if you can just give us a brief summary of what -- the

6     information that's responsive that you have.  Let's do Number 3.

7          PROSPECTIVE JUROR 3:  Well, I'm an auctioneer.  And

8     we're still allowed to sell real estate, but the laws might

9     change on that pretty soon.  But I sold a property or two in

10    Coatesville by public auction to settle estates.

11         THE COURT:  Okay.  Thank you.

12         Number 4?

13         PROSPECTIVE JUROR 4:  My mother was a bank -- was a

14    bank teller.

15         THE COURT:  Thank you.

16         Number 7?

17         PROSPECTIVE JUROR 7:  I worked in the technology

18    department for a bank for a number of years.

19         THE COURT:  Thank you.

20         Number 8?

21         PROSPECTIVE JUROR 8:  I worked in the lockbox section

22    of a bank for a number of years.

23         THE COURT:  Thank you.

24         Number 10?

25         PROSPECTIVE JUROR 10:  My husband was a licensed real

1  estate agent and broken, and my sister-in-law was also a real

2  estate agent, and my sister worked as a bank teller for several

3  different banks.

4          THE COURT:  Thank you.

5          Number 14?

6          PROSPECTIVE JUROR 14:  My sister worked as a real

7  estate agent.

8          THE COURT:  Thank you.

9          Number 15?

10         PROSPECTIVE JUROR 15:  I used to work as -- in

11  computer operations at a bank.

12         THE COURT:  Thank you.

13         Number 16?

14         PROSPECTIVE JUROR 16:  I worked computer operations

15  for a bank.

16         THE COURT:  Thank you.

17         Number 17?

18         PROSPECTIVE JUROR 17:  My aunt works as a bank

19  manager.

20         THE COURT:  Thank you.

21         Number 22?

22         PROSPECTIVE JUROR 22:  I worked at Merrill Lynch, a

23  brokerage firm, and I have several friends who are stockbrokers

24  and administrative assistants.

25         THE COURT:  Thank you.  Number 25?

1    PROSPECTIVE JUROR 25:  Loan officer for a bank.

2    THE COURT:  Thank you.

3    Number 31?

4    PROSPECTIVE JUROR 31:  My one son worked at Bear

5 Stearns, and my other son worked at Goldman Sachs.  And I'm a

6 residential landlord in 11 states.

7    THE COURT:  Thank you.

8    Number 34?

9    PROSPECTIVE JUROR 34:  Worked at lending technology

10 for two different banks for a number of years.

11    THE COURT:  Thank you.

12    Number 35?

13    PROSPECTIVE JUROR 35:  I worked as a bank teller.  My

14 husband was also a bank teller and worked in financial services,

15 as was my brother, my brother-in-law, and my other

16 brother-in-law.

17    THE COURT:  Thank you.

18    Number 37?

19    PROSPECTIVE JUROR 37:  My sister worked in HR for a

20 bank in Cleveland.

21    THE COURT:  Thank you.

22    Number 39?

23    PROSPECTIVE JUROR 39:  My sister was a bank teller.

24    THE COURT:  Thank you.

25    And 43?

1          PROSPECTIVE JUROR 43:  Wife was a bank teller.

2          THE COURT:  Thank you.

3          Number 45?

4          PROSPECTIVE JUROR 45:  I worked for a land developer

5   and residential homebuilder for five years in HR and I'm also

6   (indiscernible).

7          THE COURT:  Thank you.

8          Have you or your spouses ever been self-employed?

9   What I'm going to do is I'm going to call on your number and

10  then ask you if you could give me the information that's

11  responsive to the question.

12          Number 3?

13          PROSPECTIVE JUROR 3:  Well, I'm an auctioneer, partly

14  retired now.

15          THE COURT:  All right.  Thank you.

16          Number 5?

17          PROSPECTIVE JUROR 5:  I rent the extra bedrooms in my

18  house on Airbnb.

19          THE COURT:  Thank you.

20          Number 6?

21          PROSPECTIVE JUROR 6:  Ex-husband.

22          THE COURT:  Pardon?

23          PROSPECTIVE JUROR 6:  Ex-husband was --

24          THE COURT:  Okay.  What did he do?

25          PROSPECTIVE JUROR 6:  -- self-employed.

1          THE COURT:  What was his employment?

2          PROSPECTIVE JUROR 6:  Painting.

3          THE COURT:  Okay.  Thank you.

4          Number 10?

5          PROSPECTIVE JUROR 10:  My husband had his own

6   photography studio.

7          THE COURT:  Thank you.

8          Number 11?

9          PROSPECTIVE JUROR 11:  I am self-employed.

10         THE COURT:  And what kind of work do you do?

11         PROSPECTIVE JUROR 11:  Technology (indiscernible).

12         THE COURT:  Okay.  Thank you.

13         Number 15?

14         PROSPECTIVE JUROR 15:  I used to consult as a computer

15  operations --

16         THE COURT:  Thank you.

17         Number 26?

18         PROSPECTIVE JUROR 26:  I was a freelance writer and

19  editor.

20         THE COURT:  Thank you.

21         Number 27?

22         PROSPECTIVE JUROR 27:  My husband is self-employed.

23         THE COURT:  Thank you.

24         Number 31?

25         PROSPECTIVE JUROR 31:  My wife was a psychologist at a

1  private practice, and I own a residential apartment company in

2  11 states.

3           THE COURT:  Thank you.

4           Number 35?

5           PROSPECTIVE JUROR 35:  My husband very recently passed

6  away, and he was self-employed in financial services.

7           THE COURT:  Thank you.  I'm sorry about that.

8           Number 37?

9           PROSPECTIVE JUROR 37:  My husband used to be a

10  computer consultant, self-employed.

11           THE COURT:  Thank you.

12           Number 38?

13           PROSPECTIVE JUROR 38:  I have been self-employed as a

14  pastor, as a therapist, and as a leadership consultant.

15           THE COURT:  Thank you.

16           Number 39?

17           PROSPECTIVE JUROR 39:  Regulatory affairs consultant.

18           THE COURT:  Thank you.

19           Number 45?

20           PROSPECTIVE JUROR 45:  I served as a human resources

21  consultant.

22           THE COURT:  Thank you.

23           Number 1?

24           PROSPECTIVE JUROR 1:  Yeah.  I thought you said

25  spouse.  My ex-spouse has her own company.  Or my ex-wife has

1  her own company.

2            THE COURT:  What kind of company is it?

3            PROSPECTIVE JUROR 1:  Job placement, job -- like a

4  headhunter.

5            THE COURT:  Okay.  Thank you.

6            Number 47?

7            PROSPECTIVE JUROR 47:  Roofing contractor.

8            THE COURT:  Thank you.

9            Number 48?

10            PROSPECTIVE JUROR 48:  Wife owned a hair salon for

11  eight years solely.

12            THE COURT:  Thank you.

13            Does anyone here have any membership in any

14  charitable, political, community, or religious organizations

15  which might affect your ability to be a fair and impartial

16  juror?

17            Does anyone have a problem with their hearing or their

18  eyesight or any other physical disability which would

19  prevent -- in any manner prevent you from either hearing or

20  seeing the evidence presented at trial?

21            All right.  Number 29?  Okay.  Thank you.

22            Number 63.  Pardon me.  I'm looking at a question

23  number.  I'm not calling on a 63.  There is no 63.  Is anyone

24  taking any medication that might interfere with your ability to

25  concentrate, understand, consider, and weigh the evidence in

1   this case?

2          Number 4?  All right.  Thank you.  And Number 49.

3   Thank you.

4          Number -- let's see.  Does anyone have any physical,

5   emotional, or psychological issues that would prevent you from

6   sitting on a jury and rendering a fair and impartial verdict?

7          Number 35.  Thank you.

8          Does everyone here have a sufficient understanding of

9   the English language to allow you to read any exhibits that

10  might be introduced into evidence and to understand the

11  testimony of witnesses that would come from the witness stand?

12         Does anyone here speak or understand Spanish?

13         PROSPECTIVE JUROR 11:  I think I understand it.

14         THE COURT:  All right.  I have a follow-up question

15  for each of you.  If you would both stand.  We'll question

16  Number -- sir, your number again is --

17         PROSPECTIVE JUROR 11:  It's 11.  I'm sorry.

18         THE COURT:  Number 11.  Okay.  Do you think that your

19  knowledge of Spanish might in any way interfere with your

20  ability to accept the official translation by a translator of a

21  witness's testimony?

22         PROSPECTIVE JUROR 11:  Your Honor, if I don't see the

23  thing, how can I say that?  Possibly, but I don't know.

24         THE COURT:  Okay.  Let me just rephrase the question

25  just to make sure we understand each other.  There may be use of

1 a translator during the course of the trial to translate some of

2 the testimony in the trial.  Would your own knowledge of Spanish

3 in any way interfere with your ability to listen to that

4 translator and, as a result, accept the translation of what the

5 translator is translating?

6 　　　　　PROSPECTIVE JUROR 11:  I will understand the English

7 part, and I'll likely understand the Spanish part.  Actually,

8 I'm sure I understand the Spanish part.  And I have my own

9 interpretation of what is being said.

10 　　　　　THE COURT:  Okay.  Thank you.

11 　　　　　Number 26, same question.  Your knowledge of Spanish,

12 would that in any way interfere with your ability to listen to

13 the translation presented by a translator in court of anything

14 that's spoken in Spanish on the witness stand?

15 　　　　　PROSPECTIVE JUROR 26:  No.

16 　　　　　THE COURT:  All right.  Thank you.

17 　　　　　Do any of you feel that if you and the rest of the

18 jury were to disagree that you would not try to reach a

19 reasonable compromise?  Everybody feel they could do that?

20 　　　　　Is there anyone here who feels they would not be

21 willing to accept a compromise if it meant giving up your own

22 views?

23 　　　　　If your views were in the minority, would you feel

24 that would influence your vote during any jury deliberations? If

25 all the other jurors believed a defendant was guilty, and you

1 were sincerely convinced he was innocent, would you feel unable

2 to stick to your views?  Anybody feel that way?

3          If the choice were yours, would you not select

4 yourself to be a juror in this case?  Anybody feel that way?

5 Okay.  Number --

6          UNIDENTIFIED SPEAKER:  Somewhat it's confusing the

7 question.

8          THE COURT:  Oh, let me reread the question.  Okay.  If

9 the choice were yours, is there anyone here who would not select

10 yourself to serve as a juror in this case?

11          All right.  Would you stand, and I'll read your

12 numbers.  Number 3.  Thank you.  Number 4.  Thank you.  Number

13 9.  Thank you.  Number 10.  Thank you.  Number 14.  Thank you.

14 Number 17.  Thank you.  Number 18.  Thank you.  Number 19.

15 Thank you.  Number 29.  Thank you.  Number 30.  Thank you.

16 Number 31.  Thank you.  Number 35.  Thank you.  And Number 45.

17 Thank you.

18          If a close friend or relative of yours were the

19 defendant in this case, would you not feel satisfied with 12

20 jurors who felt and believed the same things you do?  If you

21 concluded that a defendant did something you believed to be

22 wrong but that the conduct was not the crime charged, and the

23 evidence did not prove the defendant guilty of the crime

24 charged, would you feel unable to disregard your own conclusions

25 of wrongdoing and acquit?

1    If you were representing the Government or the

2 defendant in this case, is there any reason why you would not be

3 content to have the case decided by someone in your frame of

4 mind?  Is there any matter pending in your life about which you

5 are so concerned that it would prevent you from devoting your

6 full and undivided attention to this trial if you were picked as

7 a juror?

8    Okay.  Number 17?  Thank you.  Number 9.  Thank you.

9 Number 11.  Thank you.  Number 22.  Thank you.  Number 35.

10 Thank you.  And Number 45.  Thank you.

11    If you are selected to sit as a juror on this case,

12 would you be willing and able to render a verdict based solely

13 on the evidence presented at the trial and the law

14 (indiscernible) regardless of any other ideas or personal

15 beliefs about the law you may have?  Everybody could do that?

16    Can anyone think of any other matter which you should

17 call to the Court's attention which might have some bearing on

18 your qualifications to serve as a juror which might prevent you

19 from rendering a fair and impartial verdict based solely on the

20 evidence and my instructions on the law?  Anything we haven't

21 already covered?

22    All right.  Number 9.  Number 35.  Number 45.  Number

23 3 and Number 31.  All right.  Thank you.

24    This case will be tried in Allentown.  Is there anyone

25 here -- and let me acknowledge that, as I did at the beginning

VOIR DIRE

1   this morning, that all jury service is a hardship for everyone.

2   I understand that.  It takes you away from your work and your

3   daily routine.  Is there anyone here, because the case will be

4   tried in Allentown, that it presents an extraordinary hardship?

5           Number 35?

6           PROSPECTIVE JUROR 35:  What's -- can you -- what's

7   extraordinary?

8           THE COURT:  Something beyond just a normal

9   inconvenience, something beyond the daily problems of life that

10  we all have.

11          PROSPECTIVE JUROR 30:  I have no license.  I have no

12  license.

13          THE COURT:  Okay.  Number 30?  All right.  Number 35?

14  All right.  Thank you.

15          The length of this trial is estimated to conclude by

16  the end of this week.  As you may have heard, the White House

17  has announced that the federal government will be closed on

18  Wednesday, and that includes us.  So we will, of course, work

19  today, work tomorrow, Tuesday, work Thursday.  We expect that

20  the case will conclude by Friday.  Is there anyone for whatever

21  reason that we haven't already talked about feels that the

22  scheduling presents an extraordinary hardship?

23          Okay.  Number 10.  Number 11.  Number 9.  Number 17.

24  And Number 35.  Number 4.  All right.  Thank you.

25          Counsel, anything else?

1          MR. NAIR:  No, Your Honor.

2          THE COURT:  All right.  Mr. Clark, anything else?

3          MR. CLARK:  No, Your Honor.

4          THE COURT:  All right.  I'd like to see counsel at the

5   sidebar for just a moment.

6      (Sidebar commences at 2:42 p.m.)

7          THE COURT:  (Indiscernible).

8          DEPUTY CLERK:  Make sure you speak into that

9   microphone.

10         THE COURT:  I'll repeat.  We've concluded the voir

11  dire questioning on a group basis.  I'd like now to proceed to

12  individual voir dire at sidebar.  Do you have your lists ready

13  to do individual voir dire?

14         MR. NAIR:  I do, Your Honor.

15         THE COURT:  All right.

16         MR. CLARK:  Yes, sir.

17         THE COURT:  Okay.  Why don't we start with Mr. Nair.

18  We'll go one by one.  Call them up.

19         MR. NAIR:  I think Number 7 --

20         MR. CLARK:  Yeah.

21         MR. NAIR:  -- wanted to talk to you --

22         THE COURT:  All right.

23         MR. CLARK:  Yes.  Yes, Your Honor.

24         THE COURT:  All right.  Ladies and gentlemen, what

25  we're going to do now is -- as you know, a number of matters

1  were raised that were of a private nature and a more sensitive

2  nature, and I didn't follow up with those questions with you in

3  the group questioning.  But we are going to follow up now

4  privately at the sidebar with the lawyers to make some

5  individual inquiries.

6           And we're going to start with Number 7, please.  Would

7  you please come forward and join us over here on the side?

8           And we will (indiscernible) call others of you as

9  well.

10          THE COURT:  Mr. Nair?

11          MR. NAIR:  I believe you said prior experience

12 with -- as a juror -- would you prefer not to sit because of the

13 experience.

14          PROSPECTIVE JUROR 7:  Yeah.

15          MR. NAIR:  And you wanted to talk about it up here.

16          PROSPECTIVE JUROR 7:  Yeah.  It was a medical

17 malpractice, and the experience with my fellow jurors was not

18 good.  And I vowed to hopefully never sit on a jury again.  I

19 was the only one that was for the plaintiff, and everyone else

20 just wanted to go home.  And it was just not a good experience.

21          THE COURT:  I'm sorry.  Now, in this case, it's -- as

22 you know, it's a criminal matter --

23          PROSPECTIVE JUROR 7:  Uh-huh.

24          THE COURT:  -- not a civil matter.  And do you feel

25 that because this is a different case that you could listen to

1  the facts, accept my instructions on the law, and decide this

2  case based solely on the facts and the law and give the

3  defendant a fair trial?  Do you feel you could do that?

4           PROSPECTIVE JUROR 7:  I do.  I'm just worried about

5  the experience with my fellow jurors.

6           THE COURT:  Okay.  Any other questions?

7           MR. CLARK:  (Indiscernible).

8           PROSPECTIVE JUROR 7:  I mean, I could try, for sure,

9  if you need me.  Because I know I don't have any other problems

10 with --

11          MR. CLARK:  Just one second, Judge.  I thought that

12 you had another concern.  That's what I'm trying to --

13          PROSPECTIVE JUROR 7:  No.  That was really --

14          MR. CLARK:  The primary one?

15          PROSPECTIVE JUROR 7:  That was really the, yes, big --

16          MR. CLARK:  Oh, okay.

17          PROSPECTIVE JUROR 7:  Yeah.

18          MR. CLARK:  Uh-huh.

19          PROSPECTIVE JUROR 7:  That was --

20          MR. CLARK:  Uh-huh.

21          PROSPECTIVE JUROR 7:  That was it.  That was --

22          MR. CLARK:  Okay.

23          THE COURT:  Okay.  You may resume your seat.

24          PROSPECTIVE JUROR 7:  Thank you.

25          THE COURT:  Thank you.

1    Next?  Oh, by the way, why don't we do challenges for

2  cause when we get done with all the individual voir dire.  Is

3  that all right?

4         MR. CLARK:  Uh-huh.

5         MR. NAIR:  That's fine.

6         THE COURT:  I'll give you a chance to review your

7  notes.

8         MR. CLARK:  Okay.

9         MR. NAIR:  Okay.

10         THE COURT:  Let's do the next one.

11         MR. CLARK:  Number 4, I think he has a physical injury

12  to his foot.  I think that's the gentleman who was late getting

13  back --

14         THE COURT:  Uh-huh.

15         MR. CLARK:  -- from lunch.  Maybe we ought to see if

16  he can sit with a --

17         (Simultaneous speech)

18         THE COURT:  Okay.

19         MR. CLARK:  Yeah.

20         MR. NAIR:  So we can start on Number 4.

21         THE COURT:  All right.  Number 4, please?

22         THE COURT:  All right.  Mr. Nair?

23         MR. NAIR:  (Indiscernible).

24         PROSPECTIVE JUROR 4:  I have a squished nerve ending

25  in my foot.

1          MR. NAIR:  Okay.  So it would be very difficult for

2   you to sit all week?

3          PROSPECTIVE JUROR 4:  Yes.

4          MR. NAIR:  Okay.

5          THE COURT:  All right.  Anything else?

6          MR. CLARK:  No.

7          THE COURT:  Thank you, sir.

8          MR. NAIR:  Thank you.

9          Judge, I would recommend we excuse him.

10          THE COURT:  Any objection?

11          MR. CLARK:  No.

12          THE COURT:  All right.  Go ahead.

13          MR. NAIR:  I think also when you asked the question

14   about medication or concentrating, Number 49 --

15          THE COURT:  All right.  Want to go to that juror next?

16          MR. CLARK:  Yes, sir.

17          THE COURT:  All right.  Number 49, please.

18          MR. NAIR:  Ma'am, when you were -- when the Judge

19   asked about the ability to concentrate or medication, did you

20   say it would be difficult for you to sit all week?  Is that

21   correct?

22          PROSPECTIVE JUROR 49:  Well, so I'm a diabetic, and I

23   take medicine in the morning.  But I have to just make sure my

24   blood sugars stay up.  So like a break to make sure I eat.  So,

25   I mean, like if I'm going to take a break and eat lunch, I'm

1  good.  But like today, the 1:00, like I started to feel a little

2  shaky by the time I got to lunch.

3       THE COURT:  What our schedule would be is we will

4  break from 12:00 to 1:00.  Is that okay?

5       PROSPECTIVE JUROR 49:  That's fine.  And I'm -- I

6  mean, I'm not (indiscernible).

7       THE COURT:  And we'll take a midmorning break.

8       PROSPECTIVE JUROR 49:  As long as I have some sugar.

9  I keep candy in my purse.  But sometimes I do get to that shaky

10  point where I need to have like a orange juice or sugar making

11  sure my sugars go back up.

12       THE COURT:  And we'll take a midmorning break and a --

13       PROSPECTIVE JUROR 49:  Yeah.

14       THE COURT:  -- midafternoon break.  Would you be able

15  to bring a little something with you?

16       PROSPECTIVE JUROR 49:  Yeah.  Like I keep candies in

17  my purse for that, so yeah.

18       THE COURT:  So you think you'd be able to serve as a

19  juror then?

20       PROSPECTIVE JUROR 49:  Yeah.  I mean, yeah.

21       THE COURT:  Okay.

22       PROSPECTIVE JUROR 49:  But it's just this happened

23  before, so I just wanted to be transparent.

24       THE COURT:  Okay.

25       MR. NAIR:  Thank you, ma'am.

1           PROSPECTIVE JUROR 49:  Thank you.

2           THE COURT:  Anything else?

3           MR. NAIR:  No.  Sorry.

4           MR. CLARK:  Uh-huh.  No.  Nothing further, Judge.

5           THE COURT:  Thank you, ma'am.

6           MR. CLARK:  Okay.

7           MR. NAIR:  I think she'll be fine on that.

8           THE COURT:  Yeah.

9           MR. NAIR:  I think there was, Number 29, hearing

10   disability --

11          THE COURT:  All right.

12          MR. NAIR:  -- (indiscernible).

13          THE COURT:  Number 29, please?  29?

14          MR. NAIR:  How are you doing, sir?

15          Sir, you mentioned that you have a -- something

16   preventing you from hearing all week.

17          PROSPECTIVE JUROR 29:  Yeah.  There's some parts of

18   the words -- tones of the words that I don't get.  Then I'm

19   thinking, you know, what are you saying.

20          MR. NAIR:  Okay.

21          PROSPECTIVE JUROR 29:  And I miss part of the

22   question.

23          MR. NAIR:  Oh, I got you.  Okay.  So basically --

24          PROSPECTIVE JUROR 29:  I have them cranked up right --

25          MR. NAIR:  I would say the acoustics that you're going

1  to hear in Allentown -- there are -- there were wiretaps in this

2  case, but there's only two small ones.

3          PROSPECTIVE JUROR 29:  I'm sorry.

4          MR. NAIR:  Oh, sorry.  I --

5          PROSPECTIVE JUROR 29:  I have it cranked up.

6          MR. NAIR:  Yeah.

7          PROSPECTIVE JUROR 29:  Yeah.

8          MR. NAIR:  All right.  SO you would need everything in

9  a very loud voice?

10          PROSPECTIVE JUROR 29:  Uh-huh.  Yeah.

11          MR. NAIR  Or was that going to be -- you're worried

12  about whether -- I don't have any follow-up questions.  Do you?

13          MR. CLARK:  No questions, Judge.

14          THE COURT:  All right.  Thank you.

15          MR. NAIR:  Thank you, sir.  Appreciate it.

16          MR. NAIR:  I think we should excuse him.

17          MR. CLARK:  All right.  Yeah.

18          THE COURT:  Granted.

19          MR. CLARK:  And that was 29?

20          MR. NAIR:  29.

21          THE COURT:  29.  Uh-huh.

22          MR. CLARK:  Okay.

23          THE COURT:  Okay.  Next?

24          MR. NAIR:  35 was -- her husband passed.

25          THE COURT:  Yeah.  Do you agree --

1          MR. NAIR:  Should we even bring her up?

2          THE COURT:  I won't even bring her up.

3          MR. CLARK:  No.

4          THE COURT:  Is that okay?

5          MR. CLARK:  That's fine.

6          MR. NAIR:  Yes, that's fine.

7          THE COURT:  All right.

8          MR. CLARK:  Thank you.

9          THE COURT:  So Number 35 is stricken.

10          MR. NAIR:  Number 11, I don't know if we want to bring

11    him up anymore, but he -- I don't -- I think he made it pretty

12    clear that he said that he would use his own interpretation, so

13    that could hurt both the defendant and the Government.  Do you

14    have any disagreement on that?

15          MR. CLARK:  I think --

16          MR. NAIR:  Would you like to bring him up?

17          MR. CLARK:  Number 11.  Let's bring him up.

18          THE COURT:  All right.

19          MR. NAIR:  Okay.

20          THE COURT:  Number 11, please.  Number 11.

21          MR. NAIR:  He also says he has a matter pending, so

22    there's a couple things he --

23          THE COURT:  Okay.

24          MR. NAIR:  So we'll cover two.

25          THE COURT:  Okay.

1          MR. NAIR:  Yeah.

2          PROSPECTIVE JUROR 11:  Your Honor.

3          THE COURT:  If you could just come up here so your

4   voice is --

5          PROSPECTIVE JUROR 11:  Sure.

6          MR. NAIR:  Sir, you said you had a matter pending in

7   your life that would prevent you from sitting all week.

8          PROSPECTIVE JUROR 11:  It's because I own my business,

9   you know?

10          MR. NAIR:  Uh-huh.

11          PROSPECTIVE JUROR 11:  Getting stuck until Friday, you

12   know?

13          MR. NAIR:  It would be very difficult?  Okay.

14          PROSPECTIVE JUROR 11:  I'm still very needed in the

15   business, so I guess I have part of a business, part of a job,

16   so I need to be there.

17          MR. NAIR:  Just as important to the Government and the

18   defense, we both will be relying on Spanish interpretations.

19   And I take it that that is your native language that you learned

20   first or --

21          PROSPECTIVE JUROR 11:  No.  My native language is

22   Portuguese, but I understand Spanish --

23          MR. NAIR:  Okay.

24          PROSPECTIVE JUROR 11:  -- a hundred percent.

25          MR. NAIR:  All right.  So if you hear something

 1   different from the interpreter, you're not -- you're going to

 2   follow what you listened to and not what they -- even though it

 3   might be an official court interpreter?

 4        PROSPECTIVE JUROR 11:  Well, I will let somebody know

 5   that my understanding is -- I'll speak my mind.

 6        MR. NAIR:  Okay.  Fair enough.  Thank you, sir.

 7        THE COURT:  Thank you.

 8        PROSPECTIVE JUROR 11:  Thank you.

 9        MR. NAIR:  I think we have to excuse him.

10        THE COURT:  Any objection?

11        MR. CLARK:  Yeah, Judge.  I don't think we do, because

12   I don't -- unless I'm misunderstanding wrong.  If he hears on

13   the -- if he hears something on the translation, which is going

14   to be very small anyway, if he hears something on the

15   translation that doesn't sound right to him based on his

16   understanding of Spanish, I don't think that's a disqualifier.

17   He doesn't have to follow -- and I was thinking about it as you

18   were asking him questions.  He doesn't have to follow what

19   the -- she's just an expert, a person who's going to tell you

20   what that is.  He doesn't have to follow the opinion of an

21   expert as to what that translation is.

22        THE COURT:  All right.  What I'm going to do is I'm

23   going to defer ruling.

24        MR. CLARK:  Yeah.

25        THE COURT:  I'm going to ask you to bring this to my

1   attention when we do -- I'm going to -- after we do the

2   individual voir dire, I'm going to give you a chance to review

3   your notes.

4           MR. CLARK:  Uh-huh.

5           THE COURT:  Any ones that we haven't dealt with, I'll

6   give you a chance to move for cause.  Then I'm going to ask you

7   to -- we'll revisit it at that time.

8           MR. CLARK:  Okay.

9           THE COURT:  All right?  Don't let me forget.

10          MR. CLARK:  I won't, Judge.

11          THE COURT:  All right.

12          MR. NAIR:  There were a lot of people that said that

13  they wouldn't select themselves as a juror.  Should we go

14  through those?  That's --

15          THE COURT:  That's up to you.

16          MR. NAIR:  -- pretty important.

17          MR. CLARK:  Yeah.

18          MR. NAIR:  Yeah.

19          THE COURT:  All right.

20          MR. NAIR:  So I would start with Number 3.

21          MR. CLARK:  Uh-huh.

22          THE COURT:  Number 3, please.

23          MR. NAIR:  He's also (indiscernible).

24          MR. CLARK:  Yeah.

25          PROSPECTIVE JUROR 3:  Yes, sir?  Yes?

1    MR. NAIR:  Okay.

2    THE COURT:  They have a question for you.

3    PROSPECTIVE JUROR 3:  How may I help you?

4    MR. NAIR:  When the Judge asked you if you would not

5   select yourself as a juror and asked you to stand up and raise

6   your hand.  Is there a reason in particular?

7    PROSPECTIVE JUROR 3:  Yes.  My wife's cousin, who

8   lived in Quakertown --

9    MR. NAIR:  Uh-huh.

10    PROSPECTIVE JUROR 3:  -- a little over a year ago was

11   only 40 years old and he died from a fentanyl overdose.

12    MR. NAIR:  I'm sorry.

13    THE COURT:  Okay.  Any other questions?

14    MR. NAIR:  And you would not be able to put that aside

15   and decide this case fairly?  You feel that you would --

16    PROSPECTIVE JUROR 3:  Well --

17    MR. NAIR:  -- not be able to --

18    PROSPECTIVE JUROR 3:  -- there's something else about

19   me.

20    MR. NAIR:  Oh, okay.

21    PROSPECTIVE JUROR 3:  I'm a Vietnam war veteran --

22    MR. NAIR:  Uh-huh.

23    PROSPECTIVE JUROR 3:  -- and Agent Orange cancer

24   survivor.

25    MR. NAIR:  Uh-huh.

1        PROSPECTIVE JUROR 3:  I served in what they call

2    (indiscernible) --

3        MR. NAIR:  Uh-huh.

4        PROSPECTIVE JUROR 3:  -- which is, you know, like

5    infantry where you're -- I was in 1st Signal Company.  I saw

6    more people's lives ruined by drugs that were there --

7        MR. NAIR:  Uh-huh.

8        PROSPECTIVE JUROR 3:  -- than I did that were shot in

9    the war.  And then I had to go to the VA, because I'm a Agent

10   Orange cancer survivor.

11       MR. NAIR:  Uh-huh.

12       PROSPECTIVE JUROR 3:  Luckily, I had non-Hodgkin's

13   Lymphoma, and I made it through it.  About half of us get it

14   over again, but I didn't.  And I still go every now and then,

15   once a year, to be checked and all.  But I've seen so many

16   people that are just -- and I vowed to have nothing to do with

17   that whatsoever, because I've seen it.  You know, it's

18   devastating.

19       MR. NAIR:  Okay.  All right.  Well, thank you, sir.

20       PROSPECTIVE JUROR 3:  You're welcome.

21       MR. NAIR:  Thank you for your service.

22       MR. CLARK:  All right.

23       PROSPECTIVE JUROR 3:  You're welcome.

24       THE COURT:  Now, let me ask you, sir.

25       PROSPECTIVE JUROR 3:  Yes, sir.

1        THE COURT:  I'm going to ask you to dig deep --

2        PROSPECTIVE JUROR 3:  Yes.

3        THE COURT:  -- and I'm going to ask you the following

4   question.

5        PROSPECTIVE JUROR 3:  All right.

6        THE COURT:  This defendant is entitled to a fair

7   trial, as you know.

8        PROSPECTIVE JUROR 3:  That's right.

9        THE COURT:  Could you listen to the facts of his case,

10  listen to the law as I give it to you, and decide the case

11  fairly and impartially based solely on the facts you hear in the

12  courtroom and the law as I give it to you?

13       PROSPECTIVE JUROR 3:  Well, I can try.  That's the

14  best I could do, but I have a -- this is upsetting to me --

15       THE COURT:  All right.

16       PROSPECTIVE JUROR 3:  -- that people would -- you

17  know, involved with drugs.  And I can tell their names, although

18  it was 50 years ago, you know, the ones that went downhill that

19  were busted in rank and wound up in hospital.  And one climbed

20  in the tower and threatened to shoot us all.  So his name was

21  Knobbs (phonetic).

22       THE COURT:  Uh-huh.

23       PROSPECTIVE JUROR 3:  And he was in ward four by the

24  time I left there.

25       THE COURT:  All right.  Thank you.

1          PROSPECTIVE JUROR 3:  Yeah.

2          MR. NAIR:  Okay.  Thank you, sir.

3          PROSPECTIVE JUROR 3:  So this is pretty heavy on me.

4          THE COURT:  Thank you, sir.

5          PROSPECTIVE JUROR 3:  You're welcome.

6          MR. CLARK:  Judge, I move for cause.

7          THE COURT:  All right.  Number 3.  Any objection?

8          MR. NAIR:  No, sir.

9          THE COURT:  All right.  I will grant it.

10         DEPUTY CLERK:  That was Number 3?

11         MR. CLARK:  Number 3.

12         THE COURT:  And then we have Number -- did we cover

13  Number 4?

14         MR. NAIR:  Yeah, we did.

15         THE COURT:  He's 4.  Okay.

16         MR. NAIR:  And Number 9 comes under three categories:

17  matter pending in her life, didn't want to be selected as a

18  juror, and then something not covered.  So I think we should

19  bring her up.

20         THE COURT:  Number 9, please.

21         MR. CLARK:  So I have 4.  One, two, three, four so

22  far.  So it should --

23         MR. NAIR:  Yeah.

24         THE COURT:  Okay.  Mr. Nair?

25         MR. NAIR:  Oh, the -- you said there were three things

1 | that you had.  You wouldn't select yourself as a juror, you have

2 | a matter pending in real life --

3 | 　　　　　PROSPECTIVE JUROR 9:  Uh-huh.

4 | 　　　　　MR. NAIR:  -- and then something else that we didn't

5 | discuss would prevent you from serving this week.  I just wanted

6 | to know what those were.

7 | 　　　　　PROSPECTIVE JUROR 9:  Okay.  So, honestly, I have

8 | three nephews that's being house right now --

9 | 　　　　　MR. NAIR:  Uh-huh.

10 | 　　　　　PROSPECTIVE JUROR 9:  -- in this prison.

11 | 　　　　　MR. NAIR:  Uh-huh.

12 | 　　　　　PROSPECTIVE JUROR 9:  And one just started trial this

13 | morning.

14 | 　　　　　MR. NAIR:  Okay.  So it'd be hard for you to sit?

15 | 　　　　　PROSPECTIVE JUROR 9:  It probably would.  Yeah.

16 | 　　　　　THE COURT:  All right.  As you know, each case is

17 | different, and --

18 | 　　　　　PROSPECTIVE JUROR 9:  Uh-huh.

19 | 　　　　　THE COURT:  -- each case is separate.  And this

20 | defendant is entitled to a fair trial.

21 | 　　　　　PROSPECTIVE JUROR 9:  Correct.

22 | 　　　　　THE COURT:  Do you -- knowing that, do you feel that

23 | you could listen to the facts that are presented in this trial

24 | and listen to the law as I give it to you and decide this case

25 | solely based on the facts and the law and put aside any other --

1          PROSPECTIVE JUROR 9:  Personal stuff?

2          THE COURT:  Yeah.  Could you do that?

3          PROSPECTIVE JUROR 9:  I'm not 100 percent.

4          MR. NAIR:  Thank you, ma'am.

5          PROSPECTIVE JUROR 9:  No problem.

6          THE COURT:  All right.  Thank you.

7          PROSPECTIVE JUROR 9:  Yeah.

8          MR. NAIR:  Okay.  I think we should excuse her.

9          MR. CLARK:  (Indiscernible).

10          THE COURT:  Okay.  Number 9?

11          MR. CLARK:  No objection, Judge.

12          THE COURT:  All right.  Granted.

13          UNIDENTIFIED SPEAKER:  That was Number 9?

14          THE COURT:  Yes.

15          MR. NAIR:  So that'll be our fifth.  Let's see.  And,

16  okay, so then the next person was Number 10 under that same

17  question.

18          THE COURT:  Number 10, please.

19          MR. NAIR:  Hi.  When the Judge asked you if you would

20  not select yourself as a juror, we just wanted to follow up with

21  you on that.  Was there any particular reason?

22          PROSPECTIVE JUROR 10:  Time commitment.  It's a very

23  big-time commitment (indiscernible).

24          MR. NAIR:  Okay.

25          UNIDENTIFIED SPEAKER:  We couldn't hear you.

1      UNIDENTIFIED SPEAKER:  Sorry.  Just a little louder.

2      MR. NAIR:  I'm sorry.  You said it was -- it would be

3   hard for you to be out of work?

4      PROSPECTIVE JUROR 10:  I can't afford three days out

5   of the office.

6      MR. NAIR:  Okay.

7      PROSPECTIVE JUROR 10:  I work for an insurance

8   company.  This is Medicare open enrollment time.  It's our

9   busiest time of the year.  It ends on December 7th.

10     MR. NAIR:  Oh, yeah.  I got to get mine --

11     PROSPECTIVE JUROR 10:  And we're planning for 2019 at

12  the same time, so it's bad timing.

13     THE COURT:  All right.  Any other questions?

14     MR. CLARK:  Yeah.  Anything else other than that?  I

15  understand the hardship for you for the work.

16     PROSPECTIVE JUROR 10:  It's the timing.

17     MR. CLARK:  Okay.  So you don't think you could

18  concentrate (indiscernible).  Is that what you're saying?

19     PROSPECTIVE JUROR 10:  Yeah.  I'm saying because I

20  can't possibly keep up with what I need to do at work and be

21  here all day --

22     MR. CLARK:  Okay.

23     MR. NAIR:  All right.  Thank you.

24     PROSPECTIVE JUROR 10:  -- trying to work at night and

25  be here during the day and --

1         MR. NAIR:  Okay.

2         THE COURT:  Thank you, ma'am.

3         MR. NAIR:  Thank you.

4         PROSPECTIVE JUROR 10:  Okay.

5         MR. NAIR:  I don't have an objection (indiscernible)

6         THE COURT:  So you agree?

7         MR. NAIR:  Yes.

8         MR. CLARK:  We agree, Judge.

9         THE COURT:  All right.

10        MR. NAIR:  Number 11 said -- oh, we've already talked

11 about Number 11.  He came under two things.  So then I have

12 Number 14 next under would not select self as a juror.

13        MR. NAIR:  All right.  Number 14, please.  We've got

14 to pick up your voice on here.

15        PROSPECTIVE JUROR 14:  Okay.

16        MR. NAIR:  When the Judge asked you, you said you

17 would not select yourself as a juror.

18        PROSPECTIVE JUROR 14:  Right.

19        MR. NAIR:  Was there a particular reason?

20        PROSPECTIVE JUROR 14:  Given that this is -- has to do

21 with Fentanyl, I deal with patients, take care of them, operate

22 on them.  I think it would be hard.

23        MR. NAIR:  Okay.

24        THE COURT:  All right, ma'am.  You know from your own

25 experience that every defendant is entitled to a fair trial.

1  Okay?  So you feel that you couldn't hear the facts as presented

2  during the trial?  Okay.

3          PROSPECTIVE JUROR 14:  I think it would be difficult.

4          THE COURT:  Okay.  Thank you.  I think I understand

5  your position.  Thank you for sharing that with us.

6          MR. NAIR:  I don't have any objection to her.

7          THE COURT:  What number was it?  What number?

8          MR. NAIR:  14.

9          MR. CLARK:  14.

10          THE COURT:  14.  All right.  It's granted.  No

11  objection?

12          MR. CLARK:  No objection.

13          MR. NAIR:  No objection.  And then I have Number 17 on

14  two of the last questions.  So Number 17.

15          THE COURT:  Number 17, please.

16          MR. NAIR:  Hi, ma'am.  If you could come up here so we

17  can hear you.

18          PROSPECTIVE JUROR 17:  Yes.

19          MR. NAIR:  When the Judge asked you about you would

20  not select yourself to be a juror, was there any particular

21  reason?

22          PROSPECTIVE JUROR 17:  About ten years ago, I was

23  roofied.  And so I would like to think that I wouldn't be

24  biased, but it's still somewhat stuck with me.

25          MR. NAIR:  Okay.  So you think it'd be hard to be fair

1  to the defendant?

2         PROSPECTIVE JUROR 17:  I would like to think I

3  wouldn't be, but I don't know.

4         MR. NAIR:  Do you think that you could just listen to

5  the facts and follow the Judge's instructions?

6         PROSPECTIVE JUROR 17:  I would hope that I could.

7         MR. NAIR:  Okay.

8         THE COURT:  Any questions?

9         MR. CLARK:  No questions, Judge.

10        THE COURT:  All right.  You understand that each

11 defendant is entitled to a fair trial.

12        PROSPECTIVE JUROR 17:  Yes.

13        THE COURT:  You know that.

14        PROSPECTIVE JUROR 17:  Yes.  Hundred percent.

15        THE COURT:  Do you feel that you could -- you've taken

16 an oath.  If you were selected as a juror --

17        PROSPECTIVE JUROR 17:  I would do my absolute --

18        THE COURT:  -- could you listen to the facts and

19 listen to the law as I explain it and decide the case fairly and

20 impartially?

21        PROSPECTIVE JUROR 17:  Yes.

22        THE COURT:  Okay.  Thank you.

23        MR. NAIR:  Then I had Number 18 on that same question.

24        THE COURT:  All right.  Number 18, please?

25        MR. CLARK:  So what's our numbers looking like?

1      MR. NAIR:  So I think we need one, two, three, four,

2  five, six -- I have seven.

3      MR. CLARK:  I have seven.

4      MR. NAIR:  You have seven?

5      THE COURT:  Okay.

6      MR. NAIR:  All right.  And we have 60 total?

7      THE COURT:  Fifty.

8      MR. NAIR:  Fifty.

9      DEPUTY CLERK:  Fifty jurors.

10      MR. NAIR:  All right.  So we got 43.  So six and ten

11  (indiscernible).

12      PROSPECTIVE JUROR 18:  Hi.

13      THE COURT:  Come up.

14      MR. NAIR:  Ma'am, when the Judge asked you about you

15  would not select yourself to be a juror, was there any

16  particular reason?

17      PROSPECTIVE JUROR 18:  (Indiscernible).

18      MR. NAIR:  It's going to be tough to do?

19      PROSPECTIVE JUROR 18:  Going all the way up there on

20  time, getting back, gas.

21      MR. NAIR:  Uh-huh.

22      PROSPECTIVE JUROR 18:  (Indiscernible) that kind of

23  thing (indiscernible).  I'm fine but just the financial part for

24  me.

25      THE COURT:  Now, ma'am, can I share with you that all

1  your expenses will be fully reimbursed?

2          PROSPECTIVE JUROR 18:  I know, but that's reimbursed.

3  I need the money to get there.  I got that part down, but just

4  getting there is my thing, so.

5          THE COURT:  Okay.  I understand.  Any other questions?

6          MR. CLARK:  No.  I understand completely.

7          PROSPECTIVE JUROR 18:  Okay.

8          MR. NAIR:  Thank you, ma'am.

9          PROSPECTIVE JUROR 18:  Uh-huh.

10          MR. NAIR:  All right.  Why don't we hold her.  Why

11  don't we hold her, Judge, and see how it goes.

12          THE COURT:  All right.  I'm going to rely on you,

13  though --

14          MR. NAIR:  Yeah.

15          THE COURT:  -- to revisit this --

16          MR. NAIR:  Okay.

17          THE COURT:  -- after we get through --

18          (Simultaneous speech)

19          MR. NAIR:  Looks like you want to revisit Number 11

20  and Number 82.

21          THE COURT:  I think we took Number 11 off.  Wasn't --

22          MR. CLARK:  No.

23          MR. NAIR:  No.  We wanted to come -- we wanted to

24  reserve.

25          THE COURT:  Oh, you're right.

1        MR. NAIR:  Yeah.  So 11 and 18.

2        THE COURT:  All right.  Okay.

3        MR. CLARK:  Yep.

4        MR. NAIR:  So then the next person we have would be

5   Number 19.

6        THE COURT:  Number 19, please.

7        PROSPECTIVE JUROR 19:  Good afternoon, Your Honor.

8   Good afternoon, gentlemen.

9        MR. NAIR:  Sir, when the Judge asked you -- when you

10  stated you would not select yourself to be a juror, was there

11  any particular reason?

12       PROSPECTIVE JUROR 19:  My wife and I are fans of

13  "Dateline" and those kinds of shows, "48 Hours."  And so --

14       UNIDENTIFIED SPEAKER:  (Indiscernible).

15       PROSPECTIVE JUROR 19:  So watching those, we have

16  certain formed opinions in terms of what kind of happens in

17  these proceedings.

18       MR. NAIR:  Okay.  Well, let me put it this way.  Would

19  you be able to follow the Court's instructions on a presumption

20  of innocence and to listen to the facts and follow the law as

21  given to you by the Judge?

22       PROSPECTIVE JUROR 19:  I could.

23       MR. NAIR:  Okay.

24       PROSPECTIVE JUROR 19:  Sorry.  I could.

25       MR. NAIR:  You could be fair?

1          PROSPECTIVE JUROR 19:  I could be fair.

2          MR. NAIR:  Uh-huh.

3          PROSPECTIVE JUROR 19:  But certain biases in, you

4   know, watching those kind of shows --

5          MR. CLARK:  Well --

6          MR. NAIR:  Well, I think that we all watch TV.

7          PROSPECTIVE JUROR 19:  Yeah.

8          MR. NAIR:  And we all have preconceived ideas at

9   times.  But if the Judge instructs you that you must follow the

10  law, and it's coming from him, can you follow that order?

11          PROSPECTIVE JUROR 19:  Yeah.

12          MR. CLARK:  And you can put aside any thoughts or --

13          PROSPECTIVE JUROR 19:  Yeah.

14          MR. CLARK:  -- whatever you had or whatever you

15  (indiscernible).  Half that stuff is not true, by the way.  But

16  if you just listen to the law and the facts, can you do that

17  part of it?

18          PROSPECTIVE JUROR 19:  Yeah.

19          MR. CLARK:  And not consider the things that you might

20  have seen on "Dateline" or any other program, keep that all out

21  of your --

22          PROSPECTIVE JUROR 19:  Keep in mind --

23          MR. CLARK:  Uh-huh.

24          PROSPECTIVE JUROR 19:  -- I used to be a juror on

25  another case.

1          MR. CLARK:  Uh-huh.

2          PROSPECTIVE JUROR 19:  It was criminal defense.

3          MR. CLARK:  Uh-huh.

4          PROSPECTIVE JUROR 19:  And it was also drug-related

5    charges.

6          MR. CLARK:  Uh-huh.  Okay.

7          MR. NAIR:  Okay.

8          MR. CLARK:  There's nothing wrong with that.

9          MR. NAIR:  All right.

10         MR. CLARK:  You know, this case, of course, is

11   different from the one that you --

12         PROSPECTIVE JUROR 19:  Absolutely.  Absolutely.

13         MR. CLARK:  Okay.

14         MR. NAIR:  All right.  Thank you.

15         UNIDENTIFIED SPEAKER:  Thank you, sir.

16         PROSPECTIVE JUROR 19:  Thank you.

17         MR. CLARK:  I think he's -- I think he can follow the

18   Court's instructions.

19         UNIDENTIFIED SPEAKER:  I'm sorry.  What number was

20   that?  19?

21         UNIDENTIFIED SPEAKER:  19.

22         UNIDENTIFIED SPEAKER:  19.

23         MR. NAIR:  All right.

24         UNIDENTIFIED SPEAKER:  19.

25         MR. NAIR:  Then I have 22 --

1      THE COURT:  All right.

2      MR. NAIR:  -- on the matter pending with life that

3  would prevent from sitting during the week.

4      THE COURT:  Number 22, please.

5      UNIDENTIFIED SPEAKER:  Is that the same question?

6      MR. NAIR:  No, there's two different ones.

7      UNIDENTIFIED SPEAKER:  Okay.  Got it.

8      MR. NAIR:  Matter pending with life --

9      UNIDENTIFIED SPEAKER:  Okay.

10      PROSPECTIVE JUROR 22:  Hi.

11      MR. NAIR:  Hi, ma'am.  We're going to take down

12  everything you say --

13      PROSPECTIVE JUROR 22:  Sure.

14      MR. NAIR:  -- up here.  You said there was a matter

15  pending in your life that would prevent you from sitting this

16  week?

17      PROSPECTIVE JUROR 22:  Well, I -- I'm -- my faith is

18  very strong, so I think some of my religious convictions might,

19  you know, inhibit some of that.  I have some commitments at my

20  church that I'm involved in.  But of course, like anything else,

21  I could probably get out of that.

22      MR. NAIR:  Uh-huh.  But you feel like some of your

23  convictions would prevent you from passing judgment on someone?

24      PROSPECTIVE JUROR 22:  No, I don't.  I guess I can.

25  No.  I would be truthful and honest.

1          MR. NAIR:  Uh-huh.

2          PROSPECTIVE JUROR 22:  But I couldn't -- you know, say

3  somebody was -- if -- in my heart if, you know, I felt that they

4  were just, I would be fair.  I'd be fair.

5          MR. NAIR:  Okay.

6          PROSPECTIVE JUROR 22:  Okay.

7          MR. NAIR:  Would you be able to the Court's

8  instructions on the law?

9          PROSPECTIVE JUROR 22:  Sure.

10          MR. NAIR:  Okay.

11          PROSPECTIVE JUROR 22:  Okay.

12          THE COURT:  All right.  Any other questions?

13          MR. CLARK:  No, Your Honor.

14          THE COURT:  All right.

15          PROSPECTIVE JUROR 22:  All right.

16          MR. NAIR:  Thank you.

17          THE COURT:  Thank you, ma'am.

18          PROSPECTIVE JUROR 22:  Thank you.  Uh-huh.

19          UNIDENTIFIED SPEAKER:  And that was Juror Number 22?

20          UNIDENTIFIED SPEAKER:  22.

21          MR. NAIR:  22.  Yes.  And then I next come up to 29.

22          MR. CLARK:  Uh-huh.

23          MR. NAIR:  Back to not --

24          THE COURT:  Yeah.

25          MR. NAIR:  -- not to select yourself to be a juror.

1           THE COURT:  Okay.  Number 29, please.  29.

2           MR. NAIR:  Oh, you know what?  We excused 29.

3           THE COURT:  Okay.

4           MR. NAIR:  I'm sorry.

5           THE COURT:  Oh, I'm sorry.  Number 29, we already got

6    you.

7           PROSPECTIVE JUROR 29:  That's okay.

8           THE COURT:  We already asked you.  Thank you.

9           MR. NAIR:  Sorry about that, Judge.  I next have

10   Number 30.

11          THE COURT:  30?

12          MR. NAIR:  Yeah.

13          THE COURT:  Okay.  Number 30, please.

14          UNIDENTIFIED SPEAKER:  I think he said he had no car

15   too.  His license --

16          (Simultaneous speech)

17          MR. NAIR:  He hit on a couple things.  Yes.

18          How are you doing, sir?

19          PROSPECTIVE JUROR 30:  All right.  How about yourself?

20          MR. NAIR:  Good.  Thanks.  When the Judge asked you,

21   you said you would not select yourself to be a juror.  Is that

22   because it would be a hardship for -- without having a license

23   (indiscernible)?

24          PROSPECTIVE JUROR 30:  More so because my brother

25   passed away.

1      MR. NAIR:  So --

2      PROSPECTIVE JUROR 30:  He passed away of OD, drug

3  overdose.  So I live in the area where it's like --

4      MR. NAIR:  Devastated?

5      PROSPECTIVE JUROR 30:  Yeah.  Like that whole area.

6  So I'm kind of -- almost I'm biased towards that, and I couldn't

7  do it fair.  But I want to be honest with you.

8      MR. NAIR:  Okay.  So even if the Judge were to say

9  that you have to follow the law and follow the presumption of

10  innocence and --

11      PROSPECTIVE JUROR 30:  Yeah.  I would most

12  likely -- yeah, we -- most likely I would.

13      MR. NAIR:  Follow the Judge's instructions?

14      PROSPECTIVE JUROR 30:  Yeah.

15      MR. NAIR:  Okay.  All right.  Is there any other

16  hardship if you had to come over to court now to --

17      PROSPECTIVE JUROR 30:  No.  Just like I said, just

18  finding a way to get there.

19      MR. NAIR:  But you might be able to do that?

20      PROSPECTIVE JUROR 30:  Probably.

21      MR. NAIR:  Okay.

22      THE COURT:  All right.  Anything else?

23      MR. CLARK:  No, Judge.

24      THE COURT:  Sir, thank you.

25      MR. NAIR:  Thank you, sir.

1    PROSPECTIVE JUROR 30:  All right.

2    UNIDENTIFIED SPEAKER:  That's number?

3    MR. NAIR:  30.

4    UNIDENTIFIED SPEAKER:  30?  Okay.

5    MR. NAIR:  I next -- let me make sure I'm not

6  repeating.  31.

7    MR. CLARK:  Yes.

8    THE COURT:  All right.  Number 31, please.

9    MR. NAIR:  (Indiscernible) I think he (indiscernible).

10    UNIDENTIFIED SPEAKER:  Uh-huh.

11    MR. NAIR:  I don't think he could be fair.

12    UNIDENTIFIED SPEAKER:  Huh-uh.

13    MR. NAIR:  Yeah.

14    THE COURT:  How are you?

15    MR. NAIR:  How are you doing, sir?

16    PROSPECTIVE JUROR 31:  How are you?  Excellent.  Good

17  afternoon.

18    MR. NAIR:  I have some questions for you.

19    PROSPECTIVE JUROR 31:  Sure.

20    MR. NAIR:  So you said that you would not select

21  yourself to be a juror and then a couple other things that you

22  answered, things that are more covered for the week.  But I take

23  it from your experience that it'd be hard for you to follow the

24  instructions of the Judge?

25    PROSPECTIVE JUROR 31:  No.

1      MR. NAIR:  Oh.

2      PROSPECTIVE JUROR 31:  No.  I am -- I have 46,000

3  apartment units in 11 states.  I can't tell you how many

4  criminal and drug stings that we have helped law enforcement put

5  together.

6      MR. NAIR:  Okay.

7      PROSPECTIVE JUROR 31:  My biggest problem with my

8  residents is drug dealers.  So I -- am I a logical, smart

9  person.  I think I can -- probably.  And the other part of it

10 that I don't think I'd pick myself is (indiscernible) and we've

11 been dealing with drug issues with kids for 14 years I've been a

12 trustee.  So would I pick me if I was him?  No.  Am I a

13 reasonable, fair person?  (Indiscernible).

14     MR. NAIR:  Yeah.  So you're saying you can follow the

15 Judge's instructions.

16     PROSPECTIVE JUROR 31:  Yeah.

17     MR. NAIR:  You can follow the presumption of

18 innocence.

19     PROSPECTIVE JUROR 31:  I'm not --

20     MR. NAIR:  And --

21     PROSPECTIVE JUROR 31:  I think so.  I guess.

22     MR. NAIR:  Okay.  Sure.  Okay.  Is there anything else

23 we need -- that you answered that we might have missed?

24     PROSPECTIVE JUROR 31:  No.  I think those are the two.

25 And I was on -- in a criminal case which was a hung jury, which,

1  you know, it was 11 to 1.  I wasn't the one.

2         MR. NAIR:  Okay.

3         PROSPECTIVE JUROR 31:  But it made me disappointed in

4  the system.  But if you tell me to listen to you, I'll listen to

5  you.

6         THE COURT:  All right.

7         MR. NAIR:  Fair enough.

8         THE COURT:  And that would be my instruction.  You

9  know, as you know, being a lawyer, legal -- legal training that

10  your obligation is to give the defendant a fair trial.  And what

11  I'm hearing you say is you could do that.

12         PROSPECTIVE JUROR 31:  I'm not -- of course.  I'm a

13  reasonable person.  I just think I have baggage.  But you have

14  to make the decision if you want me or not.

15         THE COURT:  Okay.  I won't be making that decision.

16         PROSPECTIVE JUROR 31:  Okay.

17         THE COURT:  I'm just asking, could you decide the case

18  fairly and impartially and based on the facts you hear in the

19  court and then the law that I give it -- as I give it to you?

20         PROSPECTIVE JUROR 31:  Yeah.

21         THE COURT:  All right.  Thank you.

22         PROSPECTIVE JUROR 31:  Uh-huh.

23         MR. NAIR:  Thank you, sir.

24         And then I think I had 45 who had three of the last

25  ones.

1      THE COURT:  Okay.  Number 45, please.  45.

2      MR. NAIR:  Hi there.  You answered three questions.

3  One, you said you wouldn't select yourself as a juror.  You also

4  talked about a conviction or a matter pending in your life that

5  would prevent you from sitting, and then some other thing that

6  was not covered.  Starting with why you wouldn't select yourself

7  as a juror.

8      PROSPECTIVE JUROR 45:  Being that this case is in and

9  around the issue of drugs, that's an issue that's affected my

10  family quite impactfully.  We've had two deaths in the family as

11  a result of drug overdose.

12      MR. NAIR:  Sorry.

13      PROSPECTIVE JUROR 45:  And we're raising the children

14  that are left in the aftermath of that.  So I just have some

15  very strong personal feelings about those choices and decisions

16  that individuals make without regard to, you know, those

17  impacted down the line.

18      MR. NAIR:  Okay.

19      PROSPECTIVE JUROR 45:  So, you know, to your earlier

20  questions, I've been thinking since you had asked that I just

21  don't know that I can set that aside.

22      THE COURT:  Well, let me ask you this way.  As you

23  know, you've already been given an oath.  And if you were

24  selected as a juror, your oath calls upon you to listen to the

25  facts that you hear from the witness stand --

1        PROSPECTIVE JUROR 45:  Uh-huh.

2        THE COURT:  -- and listen to the law as I give it to

3   you and decide the case based solely on the facts here in the

4   court and the law as I give it to you, because the defendant is

5   entitled to a fair trial.

6        PROSPECTIVE JUROR 45:  Sure.  I understand that.

7        THE COURT:  Could you honor that and do that?

8        PROSPECTIVE JUROR 45:  I think because I live in that

9   world of caring for children who have been devastated by it, I

10  just can't set that emotional aspect of it aside --

11       THE COURT:  All right.

12       PROSPECTIVE JUROR 45:  -- in all fairness.

13       THE COURT:  All right.  Thank you.

14       MR. NAIR:  Thank you.

15       (Simultaneous speech)

16       THE COURT:  It's granted.

17       DEPUTY CLERK:  45?

18       MR. NAIR:  Uh-huh.

19       THE COURT:  (Indiscernible), Mr. Wood?

20       DEPUTY CLERK:  (Indiscernible).

21       MR. NAIR:  I believe (indiscernible).

22       THE COURT:  (Indiscernible).

23       UNIDENTIFIED SPEAKER:  26.  (Indiscernible).

24       THE COURT:  26?  Okay.

25       MR. NAIR:  Do you want to revisit 11 and 18 at this

1  time, Your Honor?

2          THE COURT:  I am willing to do that.  Are there any

3  others from the general list of (indiscernible)?

4          MR. NAIR:  Let me go back (indiscernible).

5          MR. CLARK:  Hmm?  Well, I've got 35, Judge

6  (indiscernible).

7          MR. NAIR:  We do have 35, yes.

8          THE COURT:  (Indiscernible).

9          MR. NAIR:  She was up in the beginning.

10          THE COURT:  (Indiscernible).

11          MR. NAIR:  (Indiscernible).

12          THE COURT:  (Indiscernible).

13          MR. CLARK:  Yes, Your Honor.

14          THE COURT:  (Indiscernible).

15          MR. NAIR:  I just want to go back (indiscernible).

16          THE COURT:  Thank you.

17      (Pause)

18          UNIDENTIFIED SPEAKER:  (Indiscernible).

19          MR. NAIR:  Oh, the member of her family in the

20  beginning?

21          UNIDENTIFIED SPEAKER:  (Indiscernible).

22          MR. NAIR:  I think we asked -- the Court asked that

23  after lived in the area.  (Indiscernible) member of your family

24  question came after living in the area.

25          MR. CLARK:  Uh-huh.

1        MR. NAIR:  So there were quite a few.

2        Yeah.  Let me do it this way.  It'll probably be

3  easier.  I want to make sure we're not duplicating.

4        UNIDENTIFIED SPEAKER:  Is there a specific question

5  (indiscernible).

6        MR. NAIR:  I'm looking for the one where -- what

7  Glenn's looking for is if they had a member in their family.

8  But what I want to do is instead of calling them up again, I

9  want to make sure (indiscernible) numbers of excused.

10        UNIDENTIFIED SPEAKER:  (Indiscernible).

11        MR. NAIR:  What's that?

12        UNIDENTIFIED SPEAKER:  (Indiscernible) member of

13  family was an attorney?

14        MR. NAIR:  No, no.  Member of family affected by

15  drugs.

16        UNIDENTIFIED SPEAKER:  Oh.

17        MR. CLARK:  So some of them we've gone over.  Some of

18  them we've already (indiscernible).  Number 3.

19        MR. NAIR:  I have Number 3 we've excused.

20        MR. CLARK:  All right.  Number 6 (indiscernible).

21        MR. NAIR:  We have not touched on Number 6

22  (indiscernible) group itself.

23        MR. CLARK:  Okay.

24        MR. NAIR:  We can take a look.  Do we have a list of

25  the numbers that raised their hands for member of the family

1  with drugs, I think is the question, or affected by drugs?

2            MR. CLARK:  Is it this one?

3            MR. NAIR:  Did 1, 3, 6 --

4            MR. CLARK:  1, 3, 6, 8, 9, 14 --

5            (Simultaneous speech)

6            MR. NAIR:  Okay.  8, 9.

7            MR. CLARK:  Uh-huh.

8            MR. NAIR:  Okay.  All right.  I guess we should

9  probably do those, huh?

10            THE COURT:  All right.  Number 1 is the first?

11            MR. NAIR:  Number 1 would be the first.  Yes, sir.

12            THE COURT:  All right.  Number 1, please.  Number 1.

13            MR. NAIR:  I'm sorry.  We have to get you down up

14  here.  You said you had a member of your family --

15            UNIDENTIFIED SPEAKER:  Just come a little closer.

16            MR. NAIR:  -- member of your family or someone that

17  you knew that had a drug use issue?

18            PROSPECTIVE JUROR 1:  Yeah.  I've known people that

19  have used marijuana and more heavier stuff than that but mostly

20  marijuana.

21            MR. NAIR:  Okay.  Is there anything about that

22  experience would make you feel like you could not be a fair and

23  impartial juror in this case?

24            PROSPECTIVE JUROR 1:  No.  Nothing like that.

25            MR. NAIR:  You could listen to the Judge's

1 | instructions on the law --

2 | PROSPECTIVE JUROR 1: Absolutely. Yes.

3 | MR. NAIR: Okay. Thank you.

4 | THE COURT: All right. Thank you.

5 | PROSPECTIVE JUROR 1: You're welcome.

6 | MR. NAIR: Okay. We've already struck Number 3. How

7 | about Number 6 I have next on my list.

8 | MR. CLARK: Uh-huh.

9 | THE COURT: Number 6? All right. Number 6, please.

10 | MR. NAIR: Hi. Come up here, so we can -- when the

11 | Judge asked you in the beginning about whether you knew someone

12 | that had been affected by drugs --

13 | PROSPECTIVE JUROR 6: Yeah. Yeah. My sister and my

14 | niece getting into it, and especially -- my sister is on the

15 | prescription drugs. So she get it --

16 | MR. NAIR: Uh-huh.

17 | PROSPECTIVE JUROR 6: -- at least prescribed. But my

18 | niece is getting into it, and there is no way we can help. You

19 | know, like I can't stand these people, you know, who doing this

20 | to families, so --

21 | MR. NAIR: Uh-huh. Would you be able to follow the

22 | Court's instruction to follow the law --

23 | PROSPECTIVE JUROR 6: I guess I would, but I would

24 | (indiscernible). I mean --

25 | MR. NAIR: If the Judge instructed you that you had

1  (indiscernible) the presumption of innocence for the defendant,

2  and you had to be fair and impartial, could you at least follow

3  the Judge's instruction?

4          PROSPECTIVE JUROR 6:  I guess I could.

5          MR. NAIR:  Okay.

6          PROSPECTIVE JUROR 6:  I feel really strongly about

7  these things.

8          THE COURT:  Yeah.  You know, every -- as you know,

9  every defendant is entitled to a fair trial.

10          PROSPECTIVE JUROR 6:  I understand.  It's just

11  something --

12          THE COURT:  And --

13          PROSPECTIVE JUROR 6:  -- really --

14          THE COURT:  -- in this particular case, if you were

15  selected as a juror, we would ask you to decide the case based

16  solely on the facts you hear in this courtroom and solely on the

17  law as I give it to you.  Could you feel that you'd be able to

18  do something like that and be a fair and impartial juror?

19          PROSPECTIVE JUROR 6:  I don't know if I would be fair.

20  I cannot lie to you.  I just -- I have really strong feelings

21  against these people.

22          THE COURT:  Okay.

23          PROSPECTIVE JUROR 6:  I mean, I know I -- innocent

24  until proven guilty.  I understand that.  But when you live with

25  something like that, you cannot really be partial (sic), you

1   know?

2           THE COURT:  Thank you.

3           PROSPECTIVE JUROR 6:  That's what I can say.

4           THE COURT:  All right.  Thank you very much.

5           MR. NAIR:  Thank you.

6           DEPUTY CLERK:  What number was that?

7           MR. NAIR:  Number 6.

8           MR. CLARK:  6.  I move, Judge.

9           THE COURT:  Any objection?

10          MR. NAIR:  No objection.

11          THE COURT:  All right.  Granted.

12          DEPUTY CLERK:  Yes, sir.

13          MR. NAIR:  Yes, sir.

14          THE COURT:  All right.

15          MR. NAIR:  All right.  So now I think the next person

16  on that list I have is Number 8.

17          MR. CLARK:  Uh-huh.

18          THE COURT:  Okay.

19          UNIDENTIFIED SPEAKER:  Yes.

20          THE COURT:  Number 8, please.  Number 8.

21          MR. NAIR:  Now, you were asked about knowing someone

22  that was affected by drugs.  I think the question comes down to

23  is would that affect your ability to be fair and impartial if

24  you were to be selected?

25          PROSPECTIVE JUROR 8:  No, not at all.

1          MR. NAIR:  Okay.

2          MR. CLARK:  Okay.

3          THE COURT:  All right.  Thank you.

4          MR. NAIR:  Thank you very much.

5          PROSPECTIVE JUROR 8:  No problem.  Yeah.

6          MR. NAIR:  All right.  9 we've already excused.

7          MR. CLARK:  Same with 14.

8          MR. NAIR:  Same with 14.

9          MR. CLARK:  So 18?

10         MR. NAIR:  So we excused 18?

11         MR. CLARK:  No.  I mean 18 is the next one to call.

12         MR. NAIR:  Oh, okay.  Good.  Then we'll call Number

13  18, please.

14         THE COURT:  Number 18, please.  18.

15         UNIDENTIFIED SPEAKER:   I thought we just did Number

16  9.

17         MR. NAIR:  9 was excused.

18         UNIDENTIFIED SPEAKER:  Okay.  Oh, we did 8 then.  The

19  last lady was Number 8?

20         MR. NAIR:  Yes.

21         MR. CLARK:  Yeah.

22         MR. NAIR:  Ma'am, one of the questions that the Judge

23  asked in the beginning was you knew someone that might have been

24  affected by drug use.

25         PROSPECTIVE JUROR 18:  Yes.  My husband.  He's five

VOIR DIRE

1  years clean, but it was the pills.

2        MR. NAIR:  All right.  Would that experience prevent

3  you from following the Judge's instructions and --

4        PROSPECTIVE JUROR 18:  No, not at all.

5        MR. NAIR:  Okay.

6        THE COURT:  Thank you.

7        MR. NAIR:  Thank you very much.

8        Okay.  That brings me to Number 19.

9        MR. CLARK:  Uh-huh.

10       THE COURT:  Okay.  Number 19, please.  19.

11       UNIDENTIFIED SPEAKER:  I think we brought him up

12 already.

13       MR. NAIR:  We did bring him up already.

14       UNIDENTIFIED SPEAKER:  Yeah.

15       MR. NAIR:  But he didn't get --

16       MR. CLARK:  (indiscernible)

17       MR. NAIR:  Sorry to bring you back.

18       MR. CLARK:  Sorry.

19       PROSPECTIVE JUROR 19:  No.  That's okay.

20       MR. NAIR:  In the beginning, there was a question from

21 the Judge about knowing someone who was affected by drugs.

22       PROSPECTIVE JUROR 19:  Yes.

23       MR. NAIR:  Would that experience -- first of all, what

24 was that experience?

25       PROSPECTIVE JUROR 19:  It was my wife's coworker who

1  (indiscernible).

2          MR. NAIR:  Okay.  Would that experience affect you

3  that you could not be a fair and impartial juror based on that

4  experience?

5          PROSPECTIVE JUROR 19:  Based on that experience?  No,

6  I couldn't say that, that I would not be an impartial person.

7          MR. NAIR:  Okay.

8          THE COURT:  Let me ask --

9          MR. NAIR:  Yeah.  Sure.

10          THE COURT:  -- it a different way.  As you know, the

11  defendant is entitled to a fair trial.

12          PROSPECTIVE JUROR 19:  Right.

13          THE COURT:  And would you be in a position that you

14  could listen to the facts presented in the courtroom, listen to

15  the law as I give it to you and decide this case --

16          PROSPECTIVE JUROR 19:  Right.

17          THE COURT:  -- based solely on the facts and the law

18  and give the defendant a fair and impartial trial?  Could you do

19  that?

20          PROSPECTIVE JUROR 19:  I could do that.

21          THE COURT:  All right.  Thank you.

22          MR. NAIR:  Thank you very much.  Okay.  Okay.

23          I have Number 26 next.

24          THE COURT:  All right.  Number 26, please.  26.

25          MR. CLARK:  (Indiscernible).

1    MR. NAIR:  Oh, you -- all right.  Well, may have to go

2  back to 20.  Sorry.

3    MR. CLARK:  20.  Yeah.

4    MR. NAIR:  I'll put a mark there.

5    MR. CLARK:  Okay.

6    MR. NAIR:  Ma'am, in the beginning the Judge asked you

7  about knowing someone that was affected by drugs.

8    PROSPECTIVE JUROR 26:  Yes.

9    MR. NAIR:  Would -- I'm sorry.  Go ahead.

10    PROSPECTIVE JUROR 26:  Okay.  My cousin overdosed

11  in -- on heroin in Oregon where he lived and was revived and has

12  successfully gone through a drug treatment program and is now

13  drug free.

14    THE COURT:  Okay.

15    MR. CLARK:  Okay.

16    MR. NAIR:  So there's nothing about that experience

17  that would prevent you from being a fair and impartial juror?

18    PROSPECTIVE JUROR 26:  I don't think so.

19    MR. NAIR:  Okay.

20    MR. CLARK:  Is there anything else that would cause

21  you to pause or hesitate in being a fair and impartial juror?

22  Could you follow the law given to you by the Judge?

23    PROSPECTIVE JUROR 26:  Yes.

24    MR. CLARK:  And -- okay.  Listen to the facts

25  impartially?

1          PROSPECTIVE JUROR 26:  Yes.

2          THE COURT:  All right.  Thank you.

3          MR. NAIR:  Thank you very much.

4          PROSPECTIVE JUROR 26:  You're welcome.

5          THE COURT:  I have to make a judgment call as to when

6   to take a break.

7          MR. NAIR:  Okay.

8          THE COURT:  Do you want to do it now?  Or how many

9   more individual do you think we have?

10         MR. NAIR:  There are -- on that, that list is long.

11         MR. CLARK:  Long.

12         THE COURT:  All right.  Well, why don't we --

13         MR. CLARK:  Yeah.  We have at least --

14         THE COURT:  Let's do five more minutes, and then we'll

15  take a break.

16         MR. NAIR:  Okay.

17         MR. CLARK:  Sounds good.

18         MR. NAIR:  Now I got to go back to Number 20.

19         UNIDENTIFIED SPEAKER:  Right.  20.  Yes.

20         THE COURT:  Number 20, please.  Number 20.

21         UNIDENTIFIED SPEAKER:  It's a long list

22  (indiscernible).

23         UNIDENTIFIED SPEAKER:  Yeah.  It's crazy.

24         UNIDENTIFIED SPEAKER:  It is crazy.

25         UNIDENTIFIED SPEAKER:  Crazy.

1        MR. NAIR:  How are you doing, sir?

2        PROSPECTIVE JUROR 20:  Hi.  Fine.  How are you?

3        MR. NAIR:  In the beginning the Judge asked you about

4  whether you knew someone that might have been affected by drugs.

5  What we'd like to know is if you can follow the Judge's

6  instructions and the law and be a fair and impartial juror.

7        PROSPECTIVE JUROR 20:  Hey, man, I would do my best,

8  obviously.  That's pretty impactful.  But it's never happened

9  before.  It's my youngest daughter.

10        MR. NAIR:  Uh-huh.

11        PROSPECTIVE JUROR 20:  And she's doing okay.  She, you

12  know, went to rehab, and so far, so good.  I mean, I've been

13  around this stuff all my life, the law and everything.  I've

14  never done this.

15        MR. NAIR:  Uh-huh.

16        PROSPECTIVE JUROR 20:  So I just -- I understand what

17  the law means --

18        MR. NAIR:  Okay.

19        PROSPECTIVE JUROR 20:  -- innocent until proven guilty

20  and the whole thing.

21        MR. CLARK:  You feel like you can follow the Judge's

22  instructions and follow the law?

23        PROSPECTIVE JUROR 20:  Oh, sure.  Yeah.

24        THE COURT:  All right.

25        MR. CLARK:  I thought you had a law enforcement

1  background, correct?

2          PROSPECTIVE JUROR 20:  My father for a long time.

3          MR. CLARK:  Your father.  Okay.

4          PROSPECTIVE JUROR 20:  Yeah.  And my uncle was a

5  security officer.  But my dad was a detective sergeant for a

6  long time.

7          MR. CLARK:  Okay.

8          THE COURT:  Anything else?

9          MR. CLARK:  No, Judge.  I'm good.

10          THE COURT:  All right.  Thank you.

11          MR. NAIR:  Thank you, sir.

12          We did 26, so the next person I have is 27.

13          MR. CLARK:  Uh-huh.

14          THE COURT:  All right.  Number 27, please.  27.

15          MR. NAIR:  Hi.

16          PROSPECTIVE JUROR 27:  This is intimidating.

17          MR. NAIR:  No, no.

18          PROSPECTIVE JUROR 27:  It is.

19          MR. NAIR:  The Judge asked you a question in the

20  beginning about having a family member or someone you knew

21  that - with -- related -- had an issue with drug use.

22          PROSPECTIVE JUROR 27:  Uh-huh.

23          MR. NAIR:  Would that experience prevent you from

24  following the instructions by the Court?

25          PROSPECTIVE JUROR 27:  No.

1          MR. NAIR:  Okay.  And it wouldn't prevent you from

2    being a fair and impartial juror?

3          PROSPECTIVE JUROR 27:  No.  No.

4          MR. NAIR:  Okay.

5          MR. CLARK:  Yeah.  May I ask, what was the

6    circumstance that you're familiar with that --

7          PROSPECTIVE JUROR 27:  My husband -- my ex-husband --

8          MR. CLARK:  Uh-huh.  Uh-huh.

9          PROSPECTIVE JUROR 27:  -- was addicted to

10   amphetamines.

11         MR. CLARK:  Uh-huh.

12         PROSPECTIVE JUROR 27:  It's been about 25 years since,

13   but.

14         MR. CLARK:  Oh, okay.  Uh-huh.  That impacted your

15   family then?

16         PROSPECTIVE JUROR 27:  Yeah.  Ruined our family.

17         MR. NAIR:  I'm sorry.

18         THE COURT:  That's all right.

19         MR. NAIR:  But based upon that, you can still --

20         PROSPECTIVE JUROR 27:  Yes.

21         MR. NAIR:  -- realize that this case was separate --

22         PROSPECTIVE JUROR 27:  Absolutely.

23         MR. NAIR:  -- and you could follow the instructions

24   from the Judge --

25         PROSPECTIVE JUROR 27:  Uh-huh.

1          MR. NAIR:  -- on the law and --

2          PROSPECTIVE JUROR 27:  Uh-huh.

3          MR. NAIR:  Okay.

4          PROSPECTIVE JUROR 27:  Yes.

5          THE COURT:  Okay.  Thank you.

6          MR. NAIR:  Thank you very much.

7          PROSPECTIVE JUROR 27:  Thank you.  All right.

8          DEPUTY CLERK:  All right.  She was 27, I think.

9  Right?

10         MR. NAIR:  Yeah.  So I -- that brings me to 30.

11         MR. CLARK:  Yeah.

12         THE COURT:  Yes.

13         MR. NAIR:  Okay.

14         THE COURT:  All right.  Number 30, please.  Number 30.

15         UNIDENTIFIED SPEAKER:  I thought we had him, right,

16  Number 30?  Did we have Number 30?

17         MR. NAIR:  Oh, no.  You know what?  We're good.

18         UNIDENTIFIED SPEAKER:  We're good?

19         MR. NAIR:  Yes.

20         MR. NAIR:  I think.  But we can start with that.

21         MR. CLARK:  (Indiscernible).

22         MR. NAIR:  Yeah.

23         Sorry to bring you up again.

24         PROSPECTIVE JUROR 30:  That's all right.

25         MR. NAIR:  There was one question that you had

1   asked -- answered in the beginning and that was about knowing

2   someone who was affected by drugs.  And, you know, you even

3   discussed that briefly when you were up here.  But, once again,

4   you can still follow the instructions from the Judge on the law

5   and presumption of innocence, correct?

6           PROSPECTIVE JUROR 30:  I believe so.  (Indiscernible)

7   can't say yeah.  I mean --

8           MR. NAIR:  Okay.

9           PROSPECTIVE JUROR 30:  -- hopefully (indiscernible).

10          MR. CLARK:  Well, but, you know, so this is the time

11  that you have to --

12          PROSPECTIVE JUROR 30:  I mean, I'm --

13          MR. CLARK:  -- you have to assure the Judge that you

14  can follow the law.

15          THE COURT:  You understand --

16          PROSPECTIVE JUROR 30:  I can.  But, I mean --

17          MR. CLARK:  Uh-huh.

18          THE COURT:  You understand that the defendant's

19  entitled to a fair trial?

20          PROSPECTIVE JUROR 30:  Absolutely.

21          THE COURT:  You know that?

22          PROSPECTIVE JUROR 30:  Absolutely.

23          THE COURT:  And you've taken an oath already.  And if

24  you are selected as a juror, will you be able to listen to the

25  facts as presented --

1          PROSPECTIVE JUROR 30:  Yeah.  I -- yeah.  I believe I

2     can.

3          THE COURT:  And listen to the law as I give it to you

4     and decide --

5          PROSPECTIVE JUROR 30:  Yes, sir.

6          THE COURT:  -- the case fairly and impartially based

7     solely on the facts and the law?

8          PROSPECTIVE JUROR 30:  Absolutely.

9          THE COURT:  All right.  Thank you.

10         MR. NAIR:  Thank you, sir.

11         PROSPECTIVE JUROR 30:  But, again, but if I can't get

12    a ride, I won't -- like if I am selected and I can't get a ride,

13    how does that affect me?

14         THE COURT:  All right.  I understand.

15         PROSPECTIVE JUROR 30:  You know --

16         (Simultaneous speech)

17         PROSPECTIVE JUROR 30:  I don't want to say.

18         MR. NAIR:  Well, when you say get it right --

19         PROSPECTIVE JUROR 30:  Get a ride.

20         MR. CLARK:  Get a ride.

21         MR. NAIR:  Oh, ride.  Ride.

22         PROSPECTIVE JUROR 30:  Yeah.  Sorry.

23         MR. CLARK:  (Indiscernible) transportation issue.

24         PROSPECTIVE JUROR 30:  I only have one --

25         MR. NAIR:  Right.

1        PROSPECTIVE JUROR 30:  -- one car (indiscernible).

2        MR. NAIR:  So you're saying it's something more of a

3   hardship?

4        PROSPECTIVE JUROR 30:  Yeah.  (Indiscernible).  I

5   don't know if I can -- I don't want to say yeah and then --

6        MR. NAIR:  Right.  And --

7        PROSPECTIVE JUROR 30:  -- I'd be stuck and get in

8   trouble for --

9        MR. NAIR:  No, we don't want that either.  Okay.

10  Thank you, sir.

11       MR. CLARK:  Thank you very much.

12       MR. NAIR:  Do you want to consider that towards the

13  end --

14       THE COURT:  Yes.  Let's revisit that one.

15       MR. NAIR:  Okay.

16       THE COURT:  I think we're revisiting two right now.

17       MR. NAIR:  Two right now.

18       (Simultaneous speech).

19       MR. NAIR:  (Indiscernible) and 18 (indiscernible).

20       MR. CLARK:  Yeah.

21       UNIDENTIFIED SPEAKER:  19 or --

22       UNIDENTIFIED SPEAKER:  18 (indiscernible).

23       (Simultaneous speech)

24       MR. NAIR:  18 and 30.

25       UNIDENTIFIED SPEAKER:  And 30?

1        MR. NAIR:  We have --

2        THE COURT:  (Indiscernible) about an hour and a half

3   in, and there's another hour and a half before quitting time.

4   So why don't we give them a ten-minute break.

5        MR. NAIR:  Yes, Your Honor.

6        MR. CLARK:  Okay.

7        THE COURT:  And then we'll resume.  All right?

8        MR. CLARK:  Yeah.

9        MR. NAIR:  Okay.

10     (Sidebar concluded at 3:32 p.m.)

11        THE COURT:  Ladies and gentlemen, we have not as yet

12   concluded the individual questioning.  But we're about halfway

13   through our afternoon at this point, so we are going to take a

14   ten-minute break.  You may use the restroom.  And Mr. Wood will

15   allow you to step outside and stretch your legs a little bit if

16   you would -- stretch outside, that is, the courtroom on this

17   floor.  So we are going to reconvene in ten minutes.

18        So, Mr. Wood, would you declare a short recess,

19   please?

20        DEPUTY CLERK:  All rise.  Court is in recess for ten

21   minutes.

22     (Recess is taken from 3:33 p.m. to 3:43 p.m.)

23        THE COURT:  Is everybody back?  Anybody missing?

24   Looking to your left and your right, anybody see anybody that's

25   missing?  Okay.

1          All right.  Let's resume the individual questioning

2     then.  Counsel, would you approach.

3          DEPUTY CLERK:  Court is again in session.

4        (Sidebar commences at 3:43 p.m.)

5          DEPUTY CLERK:  Judge, Number 25 had some personal

6     questions, Your Honor.

7          THE COURT:  All right.

8          MR. CLARK:  And, Judge, you wanted to (indiscernible)

9     Number 11 (indiscernible).  Judge, may the record reflect that I

10    was trying to catch up with my client, explain to him what was

11    going on, and I (indiscernible) Juror Number 11.  And we will

12    agree to have him challenged for cause (indiscernible).

13         (Simultaneous speech)

14         THE COURT:  So 11 is stricken?

15         MR. CLARK:  Uh-huh.

16         THE COURT:  Was that Number 9 or 10?

17         UNIDENTIFIED SPEAKER:  Yes, sir.

18         THE COURT:  Mr. Wood, are we at (indiscernible) now?

19         DEPUTY CLERK:  (Indiscernible).  9, 10.  Yes, sir, we

20    are at 10.

21         THE COURT:  I'm going to call Number 25 up.  He has

22    some questions --

23         MR. NAIR:  Okay.

24         THE COURT:  Number 25, please.  25.  Hi.

25         PROSPECTIVE JUROR 25:  Hello.

1          THE COURT:  You had some questions for me.

2          PROSPECTIVE JUROR 25:  Yeah.  I had two questions.

3          THE COURT:  Yeah.

4          PROSPECTIVE JUROR 25:  One, I was thinking about this.

5  I just got a loan modification, so technically I was sued

6  civilly.  Okay?  Because sometimes you overthink.

7          THE COURT:  Uh-huh.

8          MR. NAIR:  The second thing is, I need -- I have no

9  problem being a juror, but I need help with transportation.

10 Okay?  I live in North Wales.  Okay?  I just did some Googling

11 with -- and I'd have to come down this -- down here and then go

12 north.  My car has parking lights, so I need to -- it needs

13 parking lights.  So I can only drive during the day unless I get

14 a rental car or I drive during the day and stay over for the

15 length of the trial.  Then I have no problem.

16         THE COURT:  Uh-huh.  Do we know -- does the Government

17 reimburse for rental cars?  Do we know?

18         PROSPECTIVE JUROR 25:  Or I rent one from Enterprise

19 and let them pay for it --

20         THE COURT:  I'm not sure.  But is North Wales more

21 than 50 miles?

22         PROSPECTIVE JUROR 25:  No, it's not.  That's the

23 problem.

24         MR. NAIR:  No.

25         THE COURT:  Okay.  Okay.

1          PROSPECTIVE JUROR 25:  Either that or I can drive

2     during the day and then just stay overnight.  But the problem

3     is, they're not going to pay for it, because --

4          MR. NAIR:  Right.

5          PROSPECTIVE JUROR 25:  -- I'm not --

6          MR. NAIR:  (Indiscernible).

7          PROSPECTIVE JUROR 25:  But I have no problem coming.

8          THE COURT:  I understand.

9          PROSPECTIVE JUROR 25:  Okay.  So that's -- I just

10    wanted to let you know before you pick.

11         THE COURT:  Okay.  Thank you.

12         PROSPECTIVE JUROR 25:  All right.

13         MR. NAIR:  Thank you.

14         MR. CLARK:  Thank you.

15         DEPUTY CLERK:  Judge, if it's okay with you, I can

16    text down to the jury room -- jury office and see if we can pay

17    for the rental car.

18         THE COURT:  Why don't you do that.

19         DEPUTY CLERK:  Okay.

20         THE COURT:  Why don't you stay.

21         DEPUTY CLERK:  Sure.

22         UNIDENTIFIED SPEAKER:  I think we have Number 30 next.

23         MR. NAIR:  Did we do -- yeah.  Did we do Number

24    (indiscernible)?

25         UNIDENTIFIED SPEAKER:  I think I want to say we did.

1    UNIDENTIFIED SPEAKER:  We got 25.  We got 27.

2    UNIDENTIFIED SPEAKER:  (Indiscernible) 26.

3    UNIDENTIFIED SPEAKER:  30 should be the next.

4    UNIDENTIFIED SPEAKER:  30, right?

5    UNIDENTIFIED SPEAKER:  Okay.  Thanks.

6    UNIDENTIFIED SPEAKER:  30 was done before

7  (indiscernible).

8    UNIDENTIFIED SPEAKER:  Oh, yeah.  That's right.

9    (Simultaneous speech)

10   MR. NAIR:  Didn't have a driver's license.

11   So we did do Number 30.

12   UNIDENTIFIED SPEAKER:  Yeah.

13   MR. NAIR:  So we're at 31.  Does that sound about

14  right?

15   (Simultaneous speech)

16   UNIDENTIFIED SPEAKER:  Yes.

17   MR. NAIR:  We've seen him before?

18   UNIDENTIFIED SPEAKER:  Yeah.  He was (indiscernible)

19  he was the gentleman with the apartment --

20   MR. NAIR:  Okay.  So we've done -- we did 31.

21   UNIDENTIFIED SPEAKER:   Yes.

22   MR. NAIR:  All right.  So did we see 32, James Rice

23  (phonetic)?  (Indiscernible).  I don't think we did.

24   (Simultaneous speech)

25   MR. NAIR:  Okay.  So we start with 32, Judge.

1        THE COURT:  Okay.

2    (Pause)

3        THE COURT:  Number 32, please.

4        MR. NAIR:  How are you doing, sir?

5        PROSPECTIVE JUROR 32:  Hi.

6        MR. NAIR:  I believe you answered when the Judge asked

7   about knowing someone who's been affected by drugs.  Would that

8   experience prevent you from being a fair and impartial juror

9   that could follow the Judge's instructions on the law?

10        PROSPECTIVE JUROR 32:  I would hope not.  But my

11   next-door neighbor is a state cop (indiscernible).

12        MR. NAIR:  Really?  Okay.  Well, obviously, the facts

13   of this case are completely different.

14        PROSPECTIVE JUROR 32:  Right.

15        MR. NAIR:  Do you think you could be fair and

16   impartial and follow the Judge's instructions?

17        PROSPECTIVE JUROR 32:  I'm hoping so.  Yes.

18        MR. NAIR:  Okay.

19        (Simultaneous speech)

20        PROSPECTIVE JUROR 32:  (Indiscernible) years already.

21        MR. CLARK:  All right.

22        THE COURT:  Thank you, sir.

23        MR. NAIR:  Thank you, sir.

24        MR. CLARK:  All right.

25        UNIDENTIFIED SPEAKER:  (Indiscernible).

1          MR. NAIR:  I'm sorry.  What number is that, 32?

2          UNIDENTIFIED SPEAKER:  That was 32.

3          MR. NAIR:  Yeah.

4          UNIDENTIFIED SPEAKER:  So we're doing 33 next?

5          UNIDENTIFIED SPEAKER:  I have 33.

6          UNIDENTIFIED SPEAKER:  33.  Yes.

7          THE COURT:  33?

8          UNIDENTIFIED SPEAKER:  Uh-huh.

9          THE COURT:  Number 33, please.  33.

10          MR. NAIR:  Sir, when the Judge was asking you about

11  whether you knew anyone that had been affected by drugs, would

12  that experience prevent you from being a fair and impartial

13  juror?

14          PROSPECTIVE JUROR 33:  No.

15          MR. NAIR:  Okay.  And you could follow the Judge's

16  instructions on the law and the presumption of innocence?

17          PROSPECTIVE JUROR 33:  Uh-huh.

18          MR. NAIR:  Okay.

19          MR. CLARK:  What was the circumstances you were

20  concerned about?

21          PROSPECTIVE JUROR 33:  As far as?

22          MR. CLARK:  The drugs?

23          PROSPECTIVE JUROR 33:  My brother-in-law.

24          MR. CLARK:  Your brother-in-law?

25          PROSPECTIVE JUROR 33:  Yes.

1          MR. CLARK:  What was up with that?

2          PROSPECTIVE JUROR 33:  Methamphetamines.

3          MR. CLARK:  Meth?

4          THE COURT:  Anything else?

5          MR. CLARK:  No.  I'm good, Judge.

6          THE COURT:  All right.  Thank you.

7          MR. NAIR:  Thank you, sir.

8          All right.  35 I have next, but we've already excused

9     her.

10         MR. CLARK:  Uh-huh.

11         MR. NAIR:  So then I go to 39.  Does that sound right?

12         MR. CLARK:  Uh-huh.

13         THE COURT:  Okay.

14         UNIDENTIFIED SPEAKER:  I have 36 now.

15         UNIDENTIFIED SPEAKER:  36?

16         MR. NAIR:  There was 35 I had on that list, and we've

17    excused her.

18         UNIDENTIFIED SPEAKER:  Yeah.  I have 36.

19         UNIDENTIFIED SPEAKER:  Uh-huh.  Yeah.

20         THE COURT:  Do you want me to call 36?

21         UNIDENTIFIED SPEAKER:  The cyber guy.  He's a cyber

22    detective (indiscernible).

23         UNIDENTIFIED SPEAKER:  (Indiscernible)be on the safe

24    side.

25         THE COURT:  Number 36, please.  36.

1      UNIDENTIFIED SPEAKER:  Yeah (indiscernible).

2      UNIDENTIFIED SPEAKER:  Do you want to just ask him --

3      UNIDENTIFIED SPEAKER:  Yeah.

4      UNIDENTIFIED SPEAKER:  All right. 36.  Okay.

5      UNIDENTIFIED SPEAKER:  Am I right that we have ten for

6  cause?

7      UNIDENTIFIED SPEAKER:  Uh-huh.

8      UNIDENTIFIED SPEAKER:  Okay.

9      (Simultaneous speech)

10      THE COURT:  I believe counsel have a question.

11      PROSPECTIVE JUROR 36:  Yeah.  Sure.

12      MR. CLARK:  (Indiscernible).  Again, the Judge asked

13  you a question about people who've had maybe family members,

14  friends or someone with a drug issue or something like that.

15      PROSPECTIVE JUROR 36:  No.

16      MR. CLARK:  Were you in that group?

17      PROSPECTIVE JUROR 36:  No, I was not.

18      MR. CLARK:  Okay.

19      MR. NAIR:  Thank you very much.

20      PROSPECTIVE JUROR 36:  Yes, sir.

21      MR. CLARK:  Sorry.

22      (Simultaneous speech).

23      PROSPECTIVE JUROR 36:  No problem.

24      MR. NAIR:  Okay.  Then I believe 39.

25      UNIDENTIFIED SPEAKER:  Yes.

1      UNIDENTIFIED SPEAKER:  39.  Yes.

2      UNIDENTIFIED SPEAKER:  Uh-huh.

3      THE COURT:  Number 39, please.  39.

4      UNIDENTIFIED SPEAKER:  Excuse me.

5      MR. NAIR:  How are you doing, ma'am?

6      PROSPECTIVE JUROR 39:  Hello.

7      MR. NAIR:  Ma'am, the Judge asked you a question in

8  the beginning about if you knew someone that had been affected

9  by drugs.  Would that experience prevent you from being a fair

10 and impartial juror that can follow the instructions from the

11 Judge on the law and also the presumption of innocence?

12     PROSPECTIVE JUROR 39:  No.

13     MR. NAIR:  Okay.

14     MR. CLARK:  Okay.  So was this a family member or --

15     PROSPECTIVE JUROR 39:  My nephew.

16     MR. CLARK:  Your nephew?  Uh-huh.  So he's okay now,

17 or --

18     PROSPECTIVE JUROR 39:  No.

19     MR. CLARK:  No, he's not okay?

20     PROSPECTIVE JUROR 39:  He's my nephew.  He's in and

21 out of trouble.

22     MR. CLARK:  Yeah.

23     PROSPECTIVE JUROR 39:  He's the "black sheep" of the

24 family.

25     MR. CLARK:  Uh-huh.  Uh-huh.  But drugs is part of the

1  problem for him?

2          PROSPECTIVE JUROR 39:  Yeah.  Yeah.

3          MR. CLARK:  Uh-huh.  Okay.

4          MR. CLARK:  But you could follow the Judge's

5  instructions --

6          PROSPECTIVE JUROR 39:  Uh-huh.

7          MR. CLARK:  -- (indiscernible).  Thank you.

8          THE COURT:  All right.  Thank you.

9          MR. NAIR:  Thank you.

10         PROSPECTIVE JUROR 39:  Okay.

11         DEPUTY CLERK:  40?

12         MR. NAIR:  40?

13         MR. CLARK:  40?

14         THE COURT:  Number 40, please?  40.

15         MR. NAIR:  We got to record what you're saying.

16         PROSPECTIVE JUROR 40:  Yeah.

17         MR. NAIR:  The Judge asked you in the beginning about

18  someone maybe in your family who's affected by drugs.  Would

19  that experience affect you from following instructions -- the

20  Judge's instructions on the law or prevent you from being a fair

21  and impartial juror?

22         PROSPECTIVE JUROR 40:  No.

23         MR. CLARK:  Can you tell us a little bit about what

24  that situation is?  Is that someone really close to you --

25         PROSPECTIVE JUROR 40:  It wasn't family.  It was a

1   close friend.

2           MR. NAIR:  Close friend?

3           MR. CLARK:  Close friend?  Okay.

4           PROSPECTIVE JUROR 40:  And so it was a handful of

5   people.  They've left the Amish community --

6           MR. CLARK:  All right.

7           PROSPECTIVE JUROR 40:  -- and so they were heavily

8   into partying and drinking.

9           MR. CLARK:  Uh-huh.

10          PROSPECTIVE JUROR 40:  And they're not currently in

11  that situation anymore, but they have a lot of experience with

12  it.

13          UNIDENTIFIED SPEAKER:  Rumspringa?

14          PROSPECTIVE JUROR 40:  Yes.

15          MR. CLARK:  Okay.  Thank you.

16          PROSPECTIVE JUROR 40:  Yep.

17          MR. NAIR:  All right.  Thank you very much.

18          THE COURT:  Okay.  Thank you.

19          PROSPECTIVE JUROR 40:  Thank you.

20          MR. NAIR:  Okay.  Let's go to the next.

21          MR. CLARK:  41?

22          MR. NAIR:  Yes.

23          THE COURT:  Number 41, please.  41.

24          MR. NAIR:  How are you doing, sir?

25          PROSPECTIVE JUROR 41:  How are you doing?

1          MR. NAIR:  I think the Court asked you in the

2   beginning about knowing someone who's been affected by drugs?

3          PROSPECTIVE JUROR 41:  Yes.

4          MR. NAIR:  Would that experience prevent you from

5   being a fair and impartial juror or following the instructions

6   from the Judge?

7          PROSPECTIVE JUROR 41:  No, sir.

8          MR. NAIR:  Okay.  Thank you, sir.

9          MR. CLARK:  Was it someone close to you or a family

10  member?

11         PROSPECTIVE JUROR 41:  It was me --

12         MR. CLARK:  It was you?

13         PROSPECTIVE JUROR 41:  -- and my sisters.

14         MR. CLARK:  Okay.  All right.  All right.

15         UNIDENTIFIED SPEAKER:  All right.  Thank you.

16         PROSPECTIVE JUROR 41:  Uh-huh.

17         MR. NAIR:  That would take me to 44.

18         MR. CLARK:  Yes, sir.

19         THE COURT:  Number 44, please.  44.

20         PROSPECTIVE JUROR 44:  Yes?

21         MR. NAIR:  How are you doing, sir?  The Judge asked

22  you in the beginning about knowing someone that had been

23  affected by drugs.  Would that experience --

24         PROSPECTIVE JUROR 44:  Two children.

25         MR. NAIR:  I'm sorry?

1          MR. CLARK:  Two children?

2          PROSPECTIVE JUROR 44:  Yeah.

3          MR. NAIR:  Would that experience prevent you from

4  following the instructions given by the Court regarding being a

5  fair and impartial juror?

6          PROSPECTIVE JUROR 44:  I don't think so.

7          MR. NAIR:  You'd be able to follow the Judge?

8          PROSPECTIVE JUROR 44:  I should be able to follow the

9  Judge.

10          MR. NAIR:  Okay.  Great.  Thank you.

11          PROSPECTIVE JUROR 44:  Uh-huh.

12          UNIDENTIFIED SPEAKER:  That was 44, right?

13          UNIDENTIFIED SPEAKER:  Yes, sir.

14          MR. NAIR:  Oh, no.  That was 44.  We're going to 45.

15          (Simultaneous speech).

16          UNIDENTIFIED SPEAKER:  45 is cause.  Sorry.  Yeah.  So

17  now --

18          UNIDENTIFIED SPEAKER:  So now we're at 46.

19          UNIDENTIFIED SPEAKER:  46.

20          UNIDENTIFIED SPEAKER:  46.  Thank you.

21          THE COURT:  Number 46, please.  46.

22          MR. CLARK:  And that's the last one I have

23  (indiscernible) --

24          MR. NAIR:  Last one I have.  Yeah.

25          MR. CLARK:  Yeah.

1        PROSPECTIVE JUROR 46:  Hello.

2        MR. NAIR:  How are you doing?  The Judge asked you in

3   the beginning if you knew someone that had been affected by

4   drugs.  Would that experience prevent you from being a fair and

5   impartial juror and could you follow the Court's instructions on

6   the law?

7        PROSPECTIVE JUROR 46:  (Indiscernible) I could be a

8   fair juror.

9        MR. CLARK:  Okay.  And that circumstance, was that a

10  close family member or friend or --

11       PROSPECTIVE JUROR 46:  So it was a best friend.

12       MR. CLARK:  Best friend?

13       PROSPECTIVE JUROR 46:  Yes.

14       MR. CLARK:  Uh-huh.  And that best friend was -- did

15  she go to rehab or --

16       PROSPECTIVE JUROR 46:  It was her husband.

17       MR. CLARK:  Uh-huh.

18       PROSPECTIVE JUROR 46:  And he's currently in jail, I

19  believe.

20       MR. CLARK:  Uh-huh.

21       PROSPECTIVE JUROR 46:  And then slotted to go to like

22  a halfway house.

23       MR. CLARK:  Uh-huh.

24       PROSPECTIVE JUROR 46:  Yeah.

25       MR. CLARK:  Okay.  Thank you.

1          UNIDENTIFIED SPEAKER:  All right.  Thank you.

2          UNIDENTIFIED SPEAKER:  I don't think I have anything

3   other than what we have to revisit.

4          THE COURT:  All right.  Let's do (indiscernible).

5          MR. NAIR:  Okay.

6          THE COURT:  All right.  Counsel, here's where we're

7   at.

8          Mr. Wood, how many for cause do we (indiscernible) --

9          DEPUTY CLERK:  So we've stricken ten.  Let me just

10  double check.  Yes.  We've stricken ten.

11         THE COURT:  All right.  Counsel, let me ask you, will

12  there be any other individual voir dire (indiscernible)?

13         MR. CLARK:  Judge, I think we've hit the high point of

14  it and what I think is most important.

15         MR. NAIR:  Can we take a moment --

16         MR. CLARK:  We'll just take a moment.

17         (Simultaneous speech)

18         THE COURT:  All right.  Why don't you take two or

19  three minutes at your seats.

20         MR. CLARK:  Okay.

21         THE COURT:  All right?  We'll come back up in two or

22  three minutes.

23         UNIDENTIFIED SPEAKER:  Okay.

24         THE COURT:  All right?  Let me know if there's

25  anything else on the individual voir dire.

1          UNIDENTIFIED SPEAKER:  Sure.

2          UNIDENTIFIED SPEAKER:  Thank you.

3      (Sidebar concluded at 3:58 p.m.)

4          THE COURT:  Ladies and gentlemen, I've given the

5  lawyers a few minutes just to check their notes to see if

6  there's any other individual questioning that needs to be

7  conducted, so that's what's happening right now.

8      (Pause)

9          THE COURT:  Counsel, you about ready?

10         MR. NAIR:  Yes, Your Honor.

11     (Sidebar commences at 4:06 p.m.)

12         THE COURT:  All right.

13         MR. CLARK:  I just wanted to coordinate and be sure

14  our ten causes were --

15         THE COURT:  All right.  Any additional individual voir

16  dire the Government wants to do.

17         MR. NAIR:  Not individual voir dire of anyone.

18         THE COURT:  Okay.

19         MR. NAIR:  The Court wanted me to bring back, I

20  believe, 18 and 30.  I don't mean up here.

21         THE COURT:  Yeah.

22         MR. NAIR:  Just to revisit them (indiscernible).

23         THE COURT:  All right.  I think as part of that

24  discussion, let me ask both of you, how many challenges for

25  cause do you have, Mr. Nair, in addition to what we've already

1   covered?  I mean new challenges for cause.

2           MR. NAIR:  None.

3           THE COURT:  None?  Okay.  Just 18 and 30?  Okay.

4           MR. CLARK:  (Indiscernible) agree.

5           MR. NAIR:  Yeah.  We agree.

6           MR. CLARK:  Yeah.  Same thing as I have, I think.

7           THE COURT:  Okay.  So it's just 18 and 30 are the only

8   additional --

9           MR. NAIR:  Right.

10          THE COURT:  -- challenges for cause.

11          MR. CLARK:  Right.  Right.

12          MR. NAIR:  I think you asked us to revisit it.

13          MR. CLARK:  Yes.

14          THE COURT:  Uh-huh.  I'm going to grant both.

15          MR. NAIR:  Okay.

16          MR. CLARK:  Okay.

17          THE COURT:  All right.  Are there any others before we

18  start the peremptory strike process?

19          MR. NAIR:  No.  There's no one that came --

20          MR. CLARK:  No.

21          MR. NAIR:  -- that I remember hearing saying

22  (indiscernible).

23          UNIDENTIFIED SPEAKER:  (Indiscernible) 7, 8, 9, 20,

24  11 -- I have 12.  Yes, sir.

25          THE COURT:  All right.  Then what we're going to do is

1  we'll get into the peremptory strike process.  Before we do

2  that, anything else?

3          MR. CLARK:  Just, I guess, one other category.  So if

4  we take out -- so out of the first -- what, so we got 20 --

5          THE COURT:  We have 12 gone.

6          MR. CLARK:  So, Judge, I think it's 10 and 5.  Or you

7  said it was 11 and 6 you're going to give on the peremptories

8  or --

9          THE COURT:  It's ten for the defense --

10          MR. CLARK:  Yeah.

11          THE COURT:  -- six for the Government.

12          MR. CLARK:  Okay.

13          THE COURT:  And then one for each (indiscernible).

14          And so that --

15          MR. CLARK:  So what will that take us down to?  That's

16  what I --

17          DEPUTY CLERK:  So it'll -- that'll do --

18          MR. CLARK:  Yeah.

19          DEPUTY CLERK:  Now that we have 12 --

20          MR. CLARK:  Right.

21          DEPUTY CLERK:  (Indiscernible) first 30.  Because

22  it's --

23          MR. CLARK:  There's ten right in that group.

24          DEPUTY CLERK:  -- 14 overall.

25          MR. CLARK:  Uh-huh.

1    DEPUTY CLERK:  Because you have 12 in the box plus the

2   two alternates.  So that's 14.

3    MR. CLARK:  Uh-huh.

4    DEPUTY CLERK:  Plus 16, because it's 10 and 6 --

5    MR. CLARK:  Uh-huh.

6    DEPUTY CLERK:  -- is 30.

7    MR. CLARK:  Uh-huh.

8    DEPUTY CLERK:  So the first 30.

9    MR. CLARK:  Okay.

10    DEPUTY CLERK:  So there's one, two -- so anything

11   above 41 --

12    MR. CLARK:  Uh-huh.

13    DEPUTY CLERK:  -- from 41 up, that's the top 30.

14    MR. NAIR:  Okay.

15    MR. CLARK:  Including 41, though, right?

16    DEPUTY CLERK:  Including 41.  Yes, sir.

17    MR. CLARK:  Okay.

18    THE COURT:  So 40 -- we will have a jury up to Number

19   41.

20    MR. CLARK:  Right.

21    DEPUTY CLERK:  Yes.

22    THE COURT:  Okay.

23    UNIDENTIFIED SPEAKER:  And then we'll do the

24   alternates.

25    UNIDENTIFIED SPEAKER:  Right.

1          UNIDENTIFIED SPEAKER:  Yes.

2          UNIDENTIFIED SPEAKER:  Thank you.

3          MR. CLARK:  Okay.  All right.

4          THE COURT:  All right.  Anything else?

5          UNIDENTIFIED SPEAKER:  No.

6          THE COURT:  All right.  I'm going to explain to the

7  jury that we're now going to engage in the jury selection

8  process.  Mr. Wood will have the selection sheet for you.

9          MR. CLARK:  All right.

10         THE COURT:  All right?

11         MR. CLARK:  Okay.  He's got the court official -- so

12  what we're going to do, Judge, is --

13         UNIDENTIFIED SPEAKER:  Two one?

14         (Simultaneous speech)

15         DEPUTY CLERK:  Okay.  So this is -- you'll need to

16  take this back with you.

17         UNIDENTIFIED SPEAKER:  You have to get original,

18  right?

19         DEPUTY CLERK:  Yeah.  Yeah.

20      (Sidebar concluded at 4:09 p.m.)

21         THE COURT:  All right.  Ladies and gentlemen, the

22  individual questioning of the prospective jurors has been

23  concluded.  What will begin now is the lawyers will begin

24  selecting the 12 individuals who will serve as members of the

25  jury and two alternates.  And that process is going to start

1   right now.  You will see some sheets of paper being passed back

2   and forth between the lawyers' tables, and that's the lawyers

3   making their selections.  And once that process is concluded,

4   then we will learn who the people are who have been selected.

5   So I will notify you as soon as I know.

6          (Pause)

7          THE COURT:  Counsel?  Counsel, I just thought of

8   something I should share with you, a minor thing.

9          (Sidebar commences at 4:11 p.m.)

10         THE COURT:  While you were making your notes for

11  challenges for cause, we found out that we cannot get a rental

12  car for Number 25 due to some convoluted procedures about

13  lodging.  I don't want to go out on a limb and promise something

14  that doesn't come through.

15         So if anyone -- if either or both of you want to

16  strike him for cause, I would be receptive to that.  Because we

17  don't want a situation where he doesn't show up.

18         MR. NAIR:  Right.

19         MR. CLARK:  All right.

20         MR. NAIR:  I think we're both in agreement.

21         MR. CLARK:  That's fine.

22         THE COURT:  Striking 25 --

23         MR. CLARK:  That's fine.

24         THE COURT:  -- for cause.

25         MR. CLARK:  Right.

1    MR. NAIR:  So that brings Number 42 then, right?

2    MR. CLARK:  Okay.

3    THE COURT:  Yes, sir.

4    MR. NAIR:  Okay.

5    UNIDENTIFIED SPEAKER:  So I'll have to give you an

6  extra --

7    MR. NAIR:  Thanks.

8  (Sidebar concluded at 4:12 p.m.)

9  (Long Pause)

10    THE COURT:  Ladies and gentlemen, the jurors have been

11  selected for service on the jury and two alternates have been

12  selected.  I'm going to direct Mr. Wood now to call those who

13  have been selected to the jury box.

14    Mr. Wood?

15    DEPUTY CLERK:  Juror Number 1, you'll be seated at

16  this chair right here.  When I call your name, please come up.

17  Parvez Faruqi.

18    Juror Number 2, Terese Agee.

19    Juror Number 3, Curtis Fritchman.

20    Juror Number 4, Robert Orlopp.

21    Juror Number 5, Allison Terzyk.

22    Juror Number 6, Huy Khieu.

23    Juror Number 7, Diane Sewards.

24    Juror Number 8, Timothy Kravatz.

25    Juror Number 9, you'll be seated in the second row.

1   Kathryn Petz.

2               Juror Number 10, Roger Knisely.

3               Juror Number 11, Stella Reed.

4               And Juror Number 12, Alison Sauder.

5         (Deputy Clerk confers)

6               Juror Number 13, David Frederick, will sit in this

7   seat here.

8               And Juror Number 14, Mark Cahill, will sit in the

9   second row.

10              THE COURT:  All right.  Counsel, is this the jury you

11  have selected?

12              MR. NAIR:  It is, Your Honor.

13              MR. CLARK:  It is, Judge.

14              THE COURT:  All right.  And are both counsel satisfied

15  with the jury and the jury selection process?

16              MR. CLARK:  Yes, Your Honor.

17              MR. NAIR:  Yes, Your Honor.

18              THE COURT:  All right.  Very good.

19              Ladies and gentlemen, those who did not get selected,

20  we want to thank you for your presence today.  It would not be

21  possible for us to go through the selection process if we did

22  not have a group of people from which the parties could select a

23  jury.  You are now excused.  You do not have to go back

24  downstairs.  Your attendance slips will be mailed out, and you

25  are free to go home.  So, again, I send you out with our thanks

1  and the thanks of the citizens of the United States for your

2  service today in this selection process.

3          IN UNISON:  What about tomorrow?

4          THE COURT:  Mr. Wood, I understand they don't have to

5  report tomorrow.  Is that correct?

6          DEPUTY CLERK:  They do not.

7          THE COURT:  Do not have to report tomorrow.

8          And if you would remain, ladies and gentlemen, just

9  for a few minutes.  We're not going to be long.  Then you'll be

10 able to leave too.

11      (Jury Panel out at 4:57 p.m.)

12      (Voir Dire Ends)

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATION**

I, EILEEN DHONDT, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

EILEEN DHONDT, CET 807
Aequum Legal Transcription

Dated:  February 27, 2023