| | |
|---|---|
| UNITED STATES OF AMERICA, | . Case No. |
| | . 5:18-cr-00181-JFL-1 |
| | . |
| | . |
| Plaintiff, | . U.S. Courthouse |
| | . 601 Market Street |
| v. | . Philadelphia, PA 19106 |
| | . |
| ANGEL LUIS CONCEPCION-ROSARIO, | . December 3, 2018 |
| | . 11:10 a.m. |
| | . |
| Defendant. | |

. . . . . . . . . . . .

CRIMINAL JURY TRIAL - DAY 1
BEFORE HONORABLE JOSEPH F. LEESON, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff                KISHAN NAIR, ESQ.
United States of             UNITED STATES ATTORNEY'S OFFICE
America:                     615 Chestnut Street, Suite 1250
                             Philadelphia, PA 19106


For Defendant                GLENNIS L. CLARK, ESQ.
Angel Luis                   LAW OFFICE OF GLENNIS L. CLARK
Concepcion-Rosario:          1101 Hamilton Street, Suite 351
                             Allentown, PA 18101


Audio Operator:              Laura Buenzle

TRANSCRIBED BY:              Eileen Dhondt, CET-807
                             Aequum Legal Transcription Services
                             6934 East Almeria Road
                             Scottsdale, AZ 85257

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**INDEX**
**December 3, 2018**

**THE COURT:**                                                    **PAGE:**


**WITNESSES:**

**FOR THE PLAINTIFF:**
None

**FOR THE DEFENDANT:**
None

**EXHIBITS**                            **MARKED**            **ADMITTED**
**FOR THE PLAINTIFF:**
None

**FOR THE DEFENDANT:**
None

1                              PROCEEDINGS

2          (Call to the Order of the Court)

3          (Proceedings commence at 11:10 a.m.)

4          MR. CLARK:  Your Honor, we've had some conversations

5   with Mr. Nair this morning along with my client once we had the

6   interpreter here, and he has expressed to me an interest in

7   changing his plea, but I've advised him that changing his

8   plea --

9          THE COURT:  All right.  Pardon me.  Are we on the

10  record?

11         THE CLERK:  Yes.

12         THE COURT:  Okay.  Good.  I'm sorry.  Go ahead.

13         MR. CLARK:  Changing his plea won't give him his

14  desired result.  In other words, he's trying to get a particular

15  sentence.  The Government does not agree with that sentence.

16  And the guidelines do not support that sentence that he wants to

17  receive.  And I explained to him there's certain options he

18  perhaps has through cooperation, but he says he doesn't want

19  to -- he can't cooperate.  So that's where we are, Judge.  I

20  don't want to get you too far down that road.

21         But at this point in time, we've gone over the

22  calculations of approximately where it is.  I have shared that

23  with my client in terms of what I expect the

24  probable -- I -- I'm always wrong about guidelines, but -- the

25  probable guideline range is somewhere around 20 years on a good

1  day.  And so that's where we are with this case.  And I don't

2  think I've misstated it.

3          MR. NAIR:  No.  Not at all.  Your Honor, without a

4  plea and without acceptance, the Government, at least, has the

5  guidelines calculated at 360 -- well, a Level 37 with a criminal

6  history category of 6, because we believe the defendant is a

7  career offender.  So it is 360 to life.

8          The one-point acceptance is off the table because of

9  preparation.  But even with two levels, it allows the defendant

10 to reduce it to -- I'm sorry.  He has -- we believe -- the

11 Government believes it would come down to 292 to 365 months.

12 There was an 851 information filed in this case, so the minimum

13 mandatory is 120 months.  The defense has asked the Government

14 to agree that that would be an appropriate sentence.  I told the

15 defense I cannot seek, nor would my office give me

16 authorization, for that low of a plea considering where the

17 guidelines are.

18         But with a plea, the defendant has the chance, at

19 least, of saving himself -- of seeing the light of day.  If the

20 Court were to sentence him in the guideline range, and the

21 Government is correct about that, and this would be after a jury

22 trial, he's roughly my age.  It's going to be difficult for him

23 to see the light of day again.  So I'll leave --

24         Counsel, if he need -- if you need me to step out

25 or --

1           THE COURT:  Well, here's where we're at, counsel, is

2    the jury's been sitting, waiting for two hours.  I would like to

3    get the case moving.  Mr. Clark, if you need a little more time,

4    I'm willing to give it to you.  But I kind of need an indication

5    from you.  Do you need more time, or are you ready to proceed

6    with the trial?

7           MR. CLARK:  Judge, could I have a little bit more

8    time?  I --

9           THE COURT:  All right.  How much time would you like?

10          MR. CLARK:  Maybe 15 minutes, Judge.

11          THE COURT:  Fifteen minutes?

12          MR. CLARK:  Yeah.

13          THE COURT:  All right.  I'll give you 15 minutes.

14   Then we're going to start with jury selection.

15          MR. CLARK:  All right.

16          MR. NAIR:  Thank you, sir.

17       (Recess is taken from 11:13 a.m. to 11:31 a.m.)

18          DEPUTY CLERK:  All rise.  The United States District

19   Court for the Eastern District of Pennsylvania is now in

20   session.  The Honorable Joseph F. Leeson, Jr. presiding.

21   Criminal action number 18-181, United States of America vs.

22   Concepcion-Rosario.  Please be seated.

23          THE COURT:  All right.  Mr. Wood, would you administer

24   the oath to the interpreter, please.

25          DEPUTY CLERK:  Yes.

1          Ms. Weaver, please stand.  Please raise your right

2    hand.

3        (The Interpreter is Sworn)

4          DEPUTY CLERK:  Thank you.  You may be seated.

5          THE INTERPRETER:  Thank you.

6          THE COURT:  It's Ms. Weaver?

7          THE INTERPRETER:  Yes.  Good morning, Your Honor.

8          THE COURT:  Good morning --

9          THE INTERPRETER:   And --

10          THE COURT:  -- ma'am.  You're an experienced

11   interpreter.  Is that correct?

12          THE INTERPRETER:  Yes, I am, Your Honor.

13          THE COURT:  And you understand the Spanish language

14   and the English language, correct?

15          THE INTERPRETER:  I do.  Yes.

16          THE COURT:  And I understand you're willing to provide

17   interpretation services for us today.  Is that correct?

18          THE INTERPRETER:  Yes, I am.

19          THE COURT:  All right.  From this point forward, I

20   want you to -- I know you've already been translating for the

21   defendant.  Is that correct?

22          THE INTERPRETER:  That's correct.

23          THE COURT:  I want you to continue to translate

24   everything that has been said in the courtroom for the defendant

25   and for the Court.  Can you do that?

1            THE INTERPRETER:  I can.  I will.

2            THE COURT:  All right.  And also, for the record, I

3    think I covered this, everything that's been said on the record

4    so far you did translate for the defendant, correct?

5            THE INTERPRETER:  I did.  Yes.

6            THE COURT:  All right.  Thank you.

7            THE INTERPRETER:  Thank you.

8            THE COURT:  You may be seated.

9            Would you swear in the defendant, please, Mr. Wood.

10           DEPUTY CLERK:  Please raise your right hand.

11      (The Defendant is Sworn)

12           DEPUTY CLERK:  Thank you.  You may be seated.

13           THE COURT:  All right.  A few things for the record,

14    counsel.  Mr. Clark, it's my understanding that the case will go

15    forward, and we will now commence jury selection and trial.  Is

16    that correct?

17           MR. CLARK:  That's correct, Your Honor.

18           THE COURT:  All right.  Just, again, a few things for

19    the record.  I'm going to ask Mr. Nair to repeat the guidelines

20    for the record and also the plea offer, and then I'm going to

21    ask the defendant his understanding of what has been

22    communicated.

23           MR. NAIR:  Sure.  Your Honor, the original plea offer

24    that was -- first of all, following in order of what the Court

25    asked me, the Government believes the offense of -- offense

1  level in this case is a 37 with a criminal history category of a

2  6.  That's based upon the Government's belief that the defendant

3  is a career offender with two prior drug convictions that would

4  fall within the applicable time under the guidelines.  If he

5  were to accept the plea agreement, which has already been

6  revoked but the Government would keep that open for him today

7  and today only, the Government anticipates that his -- with

8  acceptance, his offense level would become a 35, and his

9  guideline range would become 292 to 365 months.  The additional

10 level for timely notice to the Government is not on the table as

11 far as the Government's concerned.  And that part of the plea

12 agreement the Government would have been revoking the extra

13 level.

14        So that would be the ultimate guideline level if the

15 Court would follow it.  It's obviously advisory.  There was an

16 851 motion filed in this case.  So the minimum mandatory that

17 the defendant would face would be 120 months.  However, that

18 would be significantly below the guideline level in the opinion

19 of the Government.

20        If the defendant goes to trial, there is -- and the

21 Court were to give a guideline sentence, then the Government

22 anticipates it could be anywhere from 360 months up to life.

23 With a plea, the defendant would at least have -- if -- with a

24 guideline sentence would at least have the chance of seeing some

25 day -- light of day.

1          THE COURT:  All right.  Thank you.

2          MR. NAIR:  You're welcome.

3          THE COURT:  Mr. Clark, for the record, have you fully

4    explained this to your client?

5          MR. CLARK:  Yes, Your Honor.  Numerous occasions we've

6    had conversations about the offer and also his position -- his

7    possession -- his position with respect to the offer.  And,

8    Judge, you might want to pursue with him when you speak to

9    him -- he suggests to me this morning that he was under the

10   impression that when I told him his guideline range was around

11   120 months that the -- Mr. Nair referred to that he thought that

12   was a binding sentence recommendation on the Government.

13         And I explained to him this morning that isn't -- that

14   was never the circumstance.  In fact, in my practice, I have

15   never gotten a binding sentencing recommendation in the Eastern

16   District of Pennsylvania.  It's always all in the guidelines or

17   some other negotiation about it, never a binding sentencing

18   recommendation.  And so he apparently was under that impression.

19   I've explained to him that it's not the case, that we're always

20   going to be working off the guideline, that Your Honor would be

21   the final arbiter of whatever sentence would be appropriate

22   under the guidelines.

23         And honestly, Judge, I'm concerned with the career

24   offender status.  And at the appropriate time, I'll make an

25   argument about that, but it might not go my way.  So that's

1  something I'm very concerned about in terms of his ultimate

2  disposition.

3          But he's very adamant, though, that -- and he

4  intermixes the sentencing issues with the guilt or innocence

5  phase.  And I'm trying to get him away from the guilt or

6  innocence phase to see what's going to happen with his life in

7  this case, good, bad, or indifferent.  Because unless we win,

8  it's going to be very difficult for him.

9          THE COURT:  All right.  I have a few questions for the

10  defendant.

11          Mr. Concepcion-Rosario, did you understand everything

12  that was said when I was speaking to both of the lawyers

13  earlier?

14          THE DEFENDANT:  (Via the interpreter throughout) Yes.

15          THE COURT:  All right.  And we had a -- an initial

16  conference this morning before the oath was administered to the

17  interpreter and before the oath was administered to you.  You

18  recall that earlier conference?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  And did you understand everything that was

21  said during that conference?

22          THE DEFENDANT:  Yes, I understood when you said it was

23  a fair deal.

24          THE COURT:  I did not make such a comment.  Let me ask

25  you this.  Do you understand the difference in the potential

1 | sentence you might receive if you go to trial and are convicted

2 | versus if you enter a guilty plea now?

3 | THE DEFENDANT: Right now I would accept

4 | responsibility and plead guilty just for my family. Because the

5 | day I appeared before you, I talked to my daughter, and she was

6 | crying and crying because of my grandchild.

7 | THE COURT: All right. Let me repeat the question.

8 | Do you understand the difference in the potential sentence you

9 | might receive if you go to trial and are convicted versus if you

10 | enter a guilty plea now? Do you understand?

11 | THE DEFENDANT: They're not offering me anything right

12 | now.

13 | THE COURT: All right. Mr. Nair, do you wish to offer

14 | any comment at this time in response?

15 | MR. NAIR: Yeah. I have to make something clear, Your

16 | Honor. The Government is offering something. If he were to

17 | plead guilty and waive his appellate rights, the Government

18 | would recommend two levels of acceptance which puts a potential

19 | sentence -- the defendant in a potential sentencing range,

20 | should the Court follow the advisory guidelines, of 292 months

21 | to 365. If the Court -- if the defendant goes to trial and

22 | loses, and the Court were to follow the guidelines, it's then 30

23 | years to life.

24 | And he -- my understanding is he's 48 years old. So

25 | even with earned time good time, he follows the rules of the

1    Bureau of Prison -- and my understanding is there have been

2    issues with him in the past.  But let's assume he can complete

3    that.  The best he's looking at if the Court were to give him a

4    low end guideline range is roughly 31 years, give or take.

5              THE COURT:  All right.

6              MR. NAIR:  And counsel and I have discussed this.  I

7    know the Court -- and I got to make this clear too.  The Court

8    has had no discussions with counsel or myself and is not

9    involved with any negotiations.  This is all between me and

10   counsel to create a record so that the plea offer that was given

11   to him months ago that he rejected and that the Government

12   revoked, the Government is willing to at least allow him to

13   proceed on that same plea agreement that he had months ago

14   except that that one level the Government cannot give him for

15   the amount of preparation that went into getting this trial

16   ready for today.

17             But the plea that's on the table still gives him a

18   chance of seeing the light of day if he were to receive a

19   guideline sentence of 292 months.

20             THE COURT:  All right.  Thank you.  And --

21             MR. NAIR:  Which between counsel and I have calculated

22   that with earned time good time on that, then that starts to

23   bring him down closer to 240 months.

24             THE COURT:  All right.  Mr. Clark, just one question.

25             MR. CLARK:  Yes.

1            THE COURT:  Would you agree I have not been involved

2    in any way, shape, or form in any type of plea discussions with

3    anyone?  Is that correct?

4            MR. CLARK:  I would agree.

5            THE COURT:  All right.

6            MR. CLARK:  In no way, no how have you --

7            THE COURT:  All right.

8            MR. CLARK:  -- been involved in --

9            THE COURT:  Thank you.

10           MR. CLARK:  -- any discussion with us.

11           THE COURT:  All right.  Thank you.

12           MR. CLARK:  Mr. Nair and I have been trying to work

13   quite a bit to --

14           THE COURT:  All right.

15           MR. CLARK:  -- try to work this matter out, Judge.

16           THE COURT:  All right.

17           MR. CLARK:  And that wasn't with any input by the

18   Court.

19           THE COURT:  Thank you.

20           All right.  Now I'm going to have a question for the

21   defendant.  Mr. Concepcion-Rosario, did you understand the

22   statement just made by the Government lawyer, Mr. Nair?

23           THE DEFENDANT:  Yes, I understood that now.

24           THE COURT:  All right.  Have you had enough time to

25   talk with your lawyer?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Is it your decision to go to trial and

3   reject the guilty plea offer?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Are you making this decision voluntarily

6   and of your own free will?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you have any questions?

9          THE DEFENDANT:  No.

10          THE COURT:  All right.  Counsel, anything else I need

11  to address at this point before we go forward?

12          MR. NAIR:  No, not on -- not that I can see, Your

13  Honor.

14          MR. CLARK:  Not from the defense, Your Honor.

15          THE COURT:  All right.  Very good.

16          All right.  Mr. Wood, would you bring the jury up,

17  please -- the jury panel.

18      (Court confers)

19          THE COURT:  Counsel and the litigants, if you would

20  turn around to the other side of the table and face the jury

21  venire, the panel.

22          Counsel, before the jury enters the room, the panel,

23  I'm going to go through just a few preliminary matters.  I've

24  reviewed the -- and this is all for the record, of course.  I

25  reviewed the parties' proposed voir dire questions and have

1  consolidated both sides' questions into one set of questions.

2  Oh.

3      (Court confers)

4      THE COURT: This is a slight inconvenience to you, but

5  I wonder if you could all rotate your chairs and face me,

6  especially the parties.  Please be seated.

7      I've reviewed the parties' proposed voir dire

8  questions and have consolidated them into one set of questions

9  to be posed to the jury.  And I removed duplicated questions

10 where necessary.

11      I've also reviewed and received the parties' joint

12 proposed jury instructions concerning Evidence Rule 404(b),

13 Special Agent Romick's (phonetic) role as an expert witness, and

14 the impeachment of a witness with a prior conviction under Rule

15 609.  And I will accept these proposed instructions and read

16 them to the jury at the appropriate times.

17      I recall from the final pretrial conference that the

18 Government had requested a cautionary instructions concerning

19 Agent Romick's dual roles as expert and fact witness.  However,

20 I didn't see an instruction included in the proposed

21 instructions.  Will the Government be submitting such a proposed

22 instruction?

23      MR. NAIR: Your Honor, the -- that was the only one I

24 could find was the trial instruction that would basically be

25 right at the time after I qualify him but before I ask him to go

1  into his opinion as to what two things were in the intercepted

2  call.  He's not going to be doing a lot of interpreting.  It's

3  going to be basically two to three things: the R standing for

4  Reading once it's translated from Spanish to English; that the

5  200 is a drug amount, most likely heroin; and that based upon

6  his knowledge -- and he doesn't need to be an expert to do this,

7  but based upon his knowledge of the wiretap, that when they

8  refer to he, that's a reference to Carlos Farra (phonetic) who

9  lives with Norma Naparatzi (phonetic).

10         THE COURT:  Okay.  Thank you.

11         MR. NAIR:  You're welcome.

12         THE COURT:  I also received the Government's motion in

13  limine to admit evidence of defendant's prior convictions under

14  Federal Rule of Evidence 609(a)(1) to impeach the defendant's

15  credibility if he chooses to testify.  I also received the

16  defendant's response this morning which was received and

17  reviewed.  The Government is moving to admit to -- evidence to

18  impeach the defendant with evidence of two prior convictions,

19  first a 1999 conviction for possession of contraband while in

20  prison and, second, a 2015 conviction for felony possession with

21  intent to deliver a controlled substance, felony conspiracy and

22  felony third-degree fleeing to elude a police officer.

23         I'm inclined to delay a ruling on the motion until

24  after the defendant testifies or at least until it becomes clear

25  whether he will choose to testify or not testify.  However, I

1  note now that Rule 609(a)(1) permits evidence of a prior felony

2  conviction to be introduced to impeach a defendant who testifies

3  in a criminal case if the probative value of the evidence

4  outweighs its prejudicial effect to the defendant.  This Court

5  has already weighed the risk of prejudice to the defendant

6  associated with the 2015 conviction and determined that the

7  evidence of this conviction is admissible in the Government's

8  case in chief under Rule 404(b).  Therefore, I doubt that using

9  this conviction again to impeach the defendant if he chooses to

10  testify poses a risk of prejudice beyond what I've already

11  considered.  So subject to that preliminary observation, I will

12  defer a ruling until it becomes necessary later.

13         Another matter that was not discussed at the final

14  pretrial conference is note taking by the jurors.  Because the

15  trial is expected to conclude this week, I'm not inclined to

16  allow notetaking.

17         This morning, our chief judge notified us that we will

18  be closed on Wednesday in honor of the passing of President

19  George H.W. Bush.  So we will not be sitting on Wednesday.

20         So at this point, when the panel -- jury panel is

21  questioned, I will be indicating to them that we're looking to

22  conclude on Friday at this point rather than Thursday.  Is that

23  a fair statement?

24         MR. CLARK:  Yes, Your Honor.

25         THE COURT:  All right.

1          MR. NAIR:  Yes, Your Honor.

2          THE COURT:  Any other preliminary matters that we

3    should talk about before the panel is brought in?

4          MR. NAIR:  Not on behalf of the United States, Your

5    Honor.

6          MR. CLARK:  Not for the defense, Judge.

7          THE COURT:  All right.  Well, then the panel will be

8    brought in momentarily.

9          MR. CLARK:  Thank you, Your Honor.  Should we turn

10   around?

11         THE COURT:  Yeah.  Turn around.  Yes.

12      (Pause)

13         THE COURT:  Ms. Weaver, just one other thing for the

14   record.  You are a certified interpreter.  Is that correct?

15   I --

16         THE INTERPRETER:  Yes.  Yes, I am. I was federally

17   certified by the administrative office of the U.S. Courts in

18   1995, and I have been serving this Court since then.

19         THE COURT:  Very good.

20         THE INTERPRETER:  Thank you.

21         THE COURT:  I forgot to mention that and ask you that

22   earlier, and I needed to include that.

23         THE INTERPRETER:  Yes.

24         THE COURT:  Thank you.

25         THE INTERPRETER:  And I forgot to mention.  I beg your

1  pardon, sir.

2         THE COURT:  Okay.  Thank you.

3         THE INTERPRETER:  Thank you.

4      (Pause)

5         DEPUTY CLERK:  Judge, are we ready?

6         THE COURT:  Yes.

7         DEPUTY CLERK:  All rise.

8      (Voir Dire in Criminal Jury Trial Day 1 - Voir Dire

9  Transcript)

10        MR. CLARK:  Can we approach again?

11     (Sidebar commences at 4:59 p.m.)

12        MR. CLARK:  Judge, for the record, I'm satisfied with

13 the jury as we selected it.  I'm satisfied with the procedures

14 that we used to come to these jurors.  My clients wants me to

15 object to the composition of this jury.  (Indiscernible) when

16 the Government exercised some of its peremptories, specifically

17 Juror Number 5, Juror Number 13, which is their right, he's

18 objecting to that, because he wanted them to be on the jury.  I

19 told him the Government gets to strike people as well, you know,

20 and that's just the way it goes.  So I just wanted to put that

21 in the record, because now he's complaining that the jury is not

22 right.

23        THE COURT:  I understand.  It's noted.

24        MR. CLARK:  Okay.

25        THE COURT:  Thank you.

1      (Sidebar concluded at 5:00 p.m.)

2      THE COURT:  Ladies and gentlemen of the jury, I have

3   about two or three minutes of instructions for you, so this

4   won't take long.  And then Mr. Wood will have a handout for you

5   to take home with information about the courthouse in Allentown,

6   where it's located, directions, address, telephone number, so on

7   and so forth, and information about the reimbursement process

8   for expenses.

9      You have been selected as jurors in this case.  We've

10  taken the time to seat a neutral jury, so this case can be

11  decided based only on what goes on in the courtroom and not on

12  outside influences.  You are required to decide this case based

13  solely on the evidence that is presented to you in the

14  courtroom, and that'll be -- of course be in Allentown starting

15  tomorrow morning at 9 a.m.

16     It is my role as the Judge to determine what evidence

17  is admissible and what is not admissible.  It would be a

18  violation of your duties and unfair to the parties if you were

19  to try to obtain information about the case which might be

20  information that is not admissible as evidence.  Therefore, you

21  must carefully listen to all the evidence in the courtroom and

22  evaluate all of it.

23     Do not reach any conclusions until you've heard all

24  the evidence, the arguments of the lawyers, and the Judge's, my,

1  instructions on the law.  Otherwise, you will have an incomplete

2  picture of the case until you have heard all these things.

3          Do not, repeat, do not discuss this case among

4  yourselves or with anyone else.  This is because you might be

5  given information or an opinion that could alter the way in

6  which you view the evidence or the instructions or even how the

7  case should come out.  Such an opinion or conclusion would be

8  based on incomplete or inaccurate information and view of the

9  evidence and, therefore, would be clearly unfair and

10  inappropriate.

11          In addition, you must absolutely not try to gain

12  information from any other source.  The ban, the prohibition on

13  sources of information from outside the courtroom applies to

14  information from all sources, including family, friends, the

15  internet, reference books, newspapers, magazines, television,

16  radio, Blackberry, iPhone, Droid or other smartphone, iPad, or

17  any other electronic devices.  This ban on outside information

18  also includes any personal investigation, including

19  any -- visiting any of the sites we mentioned this afternoon,

20  looking into news accounts, talking to possible witnesses,

21  reenacting the allegations, or anything like that that would

22  jeopardize the fairness and impartiality that you must have as a

23  juror.

24          The effort to exclude misleading outside influences

25  also puts a limit on getting legal information from television

1    entertainment.  This would apply to popular TV shows.  In

2    addition, this would apply to shows such as things like "CSI,"

3    "NCIS" which present the use of scientific procedures to resolve

4    criminal investigations.  These and other similar shows may

5    leave you with an improper preconceived idea about the legal

6    system.

7            As far as this case is concerned, you are not

8    prohibited from watching such shows.  However, there are many

9    reasons why you cannot rely on TV, including the fact that these

10   shows are not subject to the rules of evidence and legal

11   safeguards that apply in the courtroom, and they are works of

12   fiction that present unrealistic -- let me repeat

13   that -- unrealistic situations for dramatic effect.  While they

14   are entertaining, television shows condense, distort, and

15   sometimes even ignore many fundamental procedures and rights

16   that take place in real cases and in real courtrooms.  No matter

17   how convincing they try to be, these shows simply cannot depict

18   the reality of an actual trial or investigation.  Therefore, you

19   must put aside anything you -- anything that you think you know

20   about the legal system based on what you saw on television.

21           Finally, you must not contact anyone about this case

22   other than the Judge and court employees.  This includes sending

23   or receiving email, Twitter, text messages, or similar updates

24   using blogs and chatrooms and use of Facebook, LinkedIn and

25   other social media sites of any kind.  Strictly prohibited.  And

1   if we were to find out that anybody did any of these things,

2   there would be serious consequences for you and for this case,

3   so please, please do not do any of these things and follow my

4   instructions.

5          Lastly, the lawyers and the parties and the witnesses

6   have been instructed not to talk to you.  That's not because

7   they're trying to be rude or anything like that.  It's because

8   I've ordered them not to talk to you.  And that's the way it's

9   supposed to be on all trials.  So if you happen to run into them

10  by accident in an elevator, on the sidewalk, in the hallways,

11  and they don't acknowledge you, it's not that they're being rude

12  or inconsiderate.  They're following my orders.

13         And, likewise, you should not seek to engage them in

14  conversation.  I wouldn't even say good morning or good evening.

15  It's just better you avoid them altogether, because any type of

16  communication could be misconstrued by somebody who's watching

17  it that doesn't understand.  So that's why you're to have no

18  contact with the lawyers, the witnesses, or the parties.

19         That concludes the initial information I have for you

20  today.  I'm now going to ask Mr. Wood to distribute some

21  information about Allentown.  And we are now prepared to recess

22  court.  Counsel, anything else before we recess court for the

23  day?

24         MR. CLARK:  No, Your Honor.

25         MR. NAIR:  No, Your Honor.

1      THE COURT:  All right.  I will see all of you tomorrow

2  morning at 9 a.m. sharp.  We want to get an early start on

3  things today.  Obviously, as you know, we did not today.  We

4  want to get an early start tomorrow, and that'll help us get

5  this case finished and concluded as we have projected during

6  this week.

7      All right.  Mr. Wood, would you declare a recess until

8  tomorrow morning at 9 a.m. in Allentown.

9      DEPUTY CLERK:  All rise.  Court is adjourned.

10     (Proceedings adjourned at 5:06 p.m., recommencing on

11 December 4, 2018)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# CERTIFICATION

I, EILEEN DHONDT, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


EILEEN DHONDT, CET 807
Aequum Legal Transcription


Dated:  February 22, 2023