UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATE OF AMERICA,     . Case No. 5:18-cr-00181-JFL-1

          Plaintiff,         .
                               504 West Hamilton Street
     v.                      . Allentown, PA 18101

ANGEL LUIS CONCEPCION-       .
ROSARIO,                       November 2, 2022
                             . 9:17 a.m.
          Defendant.
                             .

. . . . . . . . . . . . .


                    SENTENCING HEARING
          BEFORE HONORABLE JOSEPH F. LEESON, JR.
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff              MARY A. FUTCHER, ESQ.
UNITED STATES OF           KISHAN NAIR, ESQ.
AMERICA:                   US ATTORNEY'S OFFICE
                           615 Chestnut Street, Suite 1250
                           Philadelphia, PA 19106


For Defendant              SALVATORE C. ADAMO, ESQ.
ANGEL-LUIS CONCEPCION-     1866 Leithsville Road #306
ROSARIO:                   Hellertown, PA 18055



Audio Operator:            Justin Wood

TRANSCRIBED BY:            Eileen Dhondt, CET-807
                           Aequum Legal Transcription Services
                           6934 East Almeria Road
                           Scottsdale, AZ 85257

          Proceedings recorded by electronic sound
       recording, transcript produced by transcription service.

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

**INDEX**
**November 2, 2022**

**THE COURT**                                          **PAGE:**
Sentencing                                                23

**WITNESSES:**

**FOR THE PLAINTIFF:**
None

**FOR THE DEFENDANT:**
None

**EXHIBITS:**
| FOR THE PLAINTIFF: | MARKED | ENTERED |
|---|---|---|
| Exhibit 1 and Exhibit 2 | 8 | 8 |

**FOR THE DEFENDANT:**
November

1                          PROCEEDINGS

2          (Call to the Order of the Court)

3          (Proceedings commence at 9:17 a.m.)

4          DEPUTY CLERK:  All rise.  Hear ye, hear ye, hear ye,

5   all manner or persons having anything to do before the United

6   States District Court for the Eastern District of Pennsylvania

7   which has been in continuous session since November 10th, 1789

8   and which is here holden this day, let them come forward, and

9   they shall be heard.

10          God save the United States and this Honorable Court.

11   Court is now in session.  The matter of USA v. Angel Luis

12   Concepcion-Rosario, criminal action number 18-181.  Please be

13   seated.

14          THE COURT:  Good morning, everyone.  We're here today

15   for sentencing.  The case is ready to proceed, correct?

16          MR. ADAMO:  Yes, Your Honor.

17          THE COURT:  Mr. Zogby, you are both fluent in English

18   and Spanish, correct?

19          INTERPRETER:  I am, Your Honor.

20          THE COURT:  And you are an experienced court

21   interpreter.

22          INTERPRETER:  I am, Your Honor.

23          THE COURT:  And you're willing to provide

24   interpretation services for the defendant and for the Court

25   today, correct?

1          INTERPRETER:  Yes, sir.

2          THE COURT:  Mr. Wood, would you administer the oath to

3   the interpreter?

4      (The Interpreter is Sworn)

5          THE COURT:  Let me acknowledge presence of Attorney

6   Futcher for the Government. Good morning, ma'am.

7          MS. FUTCHER:  Thank you, Your Honor.

8          THE COURT:  Distinguished counsel, Mr. Nair, making a

9   return appearance.  Mr. Romig, good morning.  Mr. Murray, good

10  morning.  And Mr. Adamo for the defense.

11         MR. ADAMO:  Good morning, Your Honor.

12         THE COURT:  And we have Mr. Concepcion-Rosario.  Good

13  morning, sir.

14         THE DEFENDANT:  Good morning.

15         THE COURT:  And Mr. Zogby would you now of course as

16  you've already been doing, continue to interpret everything that

17  is said in the court for the benefit of the defendant and for

18  the Court?

19         INTERPRETER:  Yes.

20         THE COURT:  Mr. Wood, would you administer the oath to

21  the defendant, please?

22     (The Defendant is Sworn)

23         THE COURT:  Mr. Concepcion-Rosario, do you understand

24  you're now under oath and if you answer any of my questions

25  falsely, your answers may later be used against you in another

1   prosecution for perjury for making false statements.  Do you

2   understand?

3          THE DEFENDANT:  I understand.

4          THE COURT:  If I say anything you do not understand, I

5   want you to interrupt me and ask me to explain it, and I'll be

6   happy to do so.  You may consult with your lawyer at any time

7   during the proceedings today, and I will take a break so you can

8   do so privately if you wish.

9          Ms. Futcher, for the record, are there any victims of

10  the offenses present in the courtroom?

11         MS. FUTCHER:  No, Your Honor.

12         THE COURT:  And also for the record has the Government

13  fulfilled its duty to notify any victims of the hearing and the

14  right to attend?

15         MS. FUTCHER:  Yes, Your Honor.

16         THE COURT:  Thank you.

17         On December 7, 2018, a jury found the defendant guilty

18  of possession with intent to distribute a mixture and substance

19  containing at least 40 grams or more of Fentanyl, specifically

20  199.57 grams.

21         I've received and reviewed the presentence report

22  prepared by Brett White (phonetic) on February 22nd, 2019,

23  revised on June 17, 2019, and revised again on March 23rd, 2021.

24         I've also received and reviewed the following from the

25  Government.

1          The sentencing memorandum dated August 23rd, 2022 and

2   from the defense the sentencing memorandum dated October 26th,

3   2022, and a sentencing memorandum dated September 13, 2022 filed

4   by the previous defense attorney of record.

5          Counsel, any other documents or letters for submission

6   to the Court?

7          MR. ADAMO:  No, sir.

8          THE COURT:  Are there any other documents or letters

9   for submission to the Court?

10          MS. FUTCHER:  No, they're not.

11          MR. ADAMO:  No, they're not.

12          THE COURT:  Mr. Adamo, for the record, have you and

13   your client read and discussed the presentence report?

14          MR. ADAMO:  In detail, yes.

15          THE COURT:  And Mr. Concepcion-Rosario, did you review

16   the presentence report with your lawyer?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And did your lawyer answer all of your

19   questions about the report?

20          THE DEFENDANT:  Uh-huh.

21          THE COURT:  Yes?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Are you satisfied with your lawyer's

24   representation of you?

25          THE DEFENDANT:  To this moment.

1    THE COURT:  Would you like to talk to your lawyer

2  before we proceed?

3    THE DEFENDANT:  Not really.

4    THE COURT:  Do you have any questions for your lawyer

5  you would like to ask him before we proceed?

6    THE DEFENDANT:  No, but I'd like to ask you one.

7    THE COURT:  We'll get to that later.  Are you

8  satisfied with your lawyer's representation of you to this point

9  in time?

10    THE DEFENDANT:  Yes.

11    THE COURT:  I understand the defendant has an

12  objection to the presentence report.  Is that correct?

13    MR. ADAMO:  That's correct, Your Honor.  I'll rely on

14  the submissions.

15    THE COURT:  Does the Government wish to respond in any

16  way?

17    MS. FUTCHER:  Your Honor, the Government also would

18  rely on its submissions, but I do have two exhibits to

19  introduce, Your Honor, which establish the defendant status as a

20  career offender, and if I may, Your Honor, we have Government

21  Exhibit 1 which is a certified copy of the defendant's

22  conviction in Puerto Rico for second-degree murder, and I also

23  have Your Honor as Government Exhibit 2 a translation of the

24  certified copy of the conviction and I would asl that both of

25  those be admitted into evidence, and also that defense counsel

1 stipulates to the accuracy of the translation.

2      THE COURT:  And you've seen these exhibits?

3      MR. ADAMO:  I'm aware of them, Your Honor, and I was

4 advised that Ms. Weaver (phonetic) did the interpretations.  She

5 was also -- I've known Ms. Weaver more years I want to count,

6 and she was the individual who did the interpretation when I sat

7 down with my client.  Obviously, I can't discuss what we talked

8 about, but I have no problems whatsoever regarding

9 (indiscernible).

10      THE COURT:  So in the absence of objection, they're

11 admitted.

12      MS. FUTCHER:  Thank you, Your Honor.  Nothing further

13 then.

14      (Plaintiff's Exhibit 1 and 2 marked and admitted)

15      THE COURT:  Having reviewed the submissions from the

16 Government and from the defendant and after considering all of

17 the arguments on the issues set forth in those submissions, I

18 overrule the defendant's objection.

19      I find that the defendant is a career offender

20 pursuant to Section 4B1.1(a) of the sentencing guidelines.

21 Under this section, a defendant is a career offender if the

22 defendant was at least 18 years old at the time the defendant

23 committed the instant offense of conviction.

24      The instant offense of conviction is a felony that is

25 either a crime of violence or a controlled substance offense,

1 and the defendant has at least two prior felony convictions of

2 either a crime of violence or a controlled substance offense.

3 The instant offense is a felony crime of a controlled

4 substance, and the defendant was at least 18 years old at the

5 time of committing the instant offense. The defendant has also

6 -- has at least two prior felony convictions of either a crime

7 of violence or a controlled substance offense.

8 The defendant first contests whether his prior

9 conviction of second-degree murder in Puerto Rico qualifies as a

10 crime of violence. When applying the categorical approach, the

11 defendant's prior conviction of second-degree murder is a crime

12 of violence under Section 4B of the sentencing guidelines

13 because second-degree murder requires a showing of malice

14 aforethought.

15 As the First Circuit explained in United States v.

16 Baez-Martinez (phonetic), second-degree murder under Puerto Rico

17 law requires malice aforethought which is otherwise known as

18 depraved heart, a heightened recklessness that qualifies it as a

19 crime of violence under Section 4B1.2(a).

20 Also as the Third Circuit in United States v. Marrero

21 has held that a depraved heart murder is a crime of violence

22 under Section 4B1.2 and was properly used to designate the

23 defendant a career offender under Section 4B1.1. Any argument

24 based on the Nasere (phonetic) case is unpersuasive.

25 Next, the defendant argues that his prior conviction

1  under Pennsylvania statute Title 35, Section 730-113(a)(30) does

2  not qualify as a controlled substance offense because the

3  statute is too broad and cites to United States v. Glass, 904

4  F.3d 319, a Third Circuit case from 2018 for support.

5       The _Glass_ case does not support the defendant's

6  argument.  In _Glass_, the Third Circuit Court of Appeals held

7  that the same statute is not broader than the guidelines

8  definition of a controlled substance offense.

9       The defendant's prior conviction for possession with

10  intent to deliver a controlled substance qualifies as a

11  controlled substance offense under Section 4B because it is an

12  offense that is punishable by a term of imprisonment that

13  exceeds one year and prohibits the manufacture, import, export,

14  distribution or dispensing of a controlled substance or the

15  possession of a controlled substance with intent to manufacture,

16  import, export, distribute, or dispense.

17       Thus, the presentence report correctly classifies the

18  defendant as a career offender and gives the correct total

19  offense level and corresponding guideline provisions.

20       I therefore adopt and credit the presentence report,

21  the factual findings, and guideline calculations.

22       As detailed in the presentence report, the defendant's

23  total offense level is 34.  His criminal history category is 6,

24  and he is a career offender. This combination produces a

25  guideline range of 262 to 327 months' imprisonment, four to five

1  years of supervised release, and a fine range of $35,000, up to

2  $5 million.  There is a special assessment of $100.

3          Any objections to the calculations?

4          MR. ADAMO:  No, Judge.

5          MS. FUTCHER:  No, Your Honor.  No objections.

6          THE COURT:  I must also consider the relevant factors

7  set out by Congress at Title 18, United States Code, Section

8  3553(a) and ensure that I impose a sentence sufficient but not

9  greater than necessary to comply with the purposes of

10  sentencing.

11          These purposes include the need for the sentence to

12  reflect the seriousness of the crime, to promote respect for the

13  law, and to provide just punishment for the offense.  The

14  sentence should also deter criminal conduct, protect the public

15  from future crime by the defendant, and promote rehabilitation.

16  In addition to the guidelines and policy statements, I am

17  required to consider the nature and circumstances of the

18  offense, the history and characteristics of the defendant, the

19  need to avoid unwarranted sentence disparities among similarly-

20  situated defendants, and the types of sentences available.

21          Mr. Adamo, do you wish to present any argument about

22  the factors of 3553(a) or otherwise make a sentencing

23  recommendation?

24          MR. ADAMO:  Yes, sir.  Just briefly.  My client is a

25  52 year old man who's had an extensive record.  There's no

1  denying that.  The bottom line of the guidelines that is

2  recommended and recommended by the probation officer is 262

3  months.  That's approximately a 22-year sentence. That would

4  make him approximately 74 years old when released.  At that

5  point in time, he obviously would not be a danger to society.

6  As we know, there's not very many people that go around

7  committing crimes in their seventies.

8      I would suggest, Your Honor, that -- and again I'm not

9  giving up the argument that he's not a career offender, but for

10  purposes of this sentencing, I would suggest that the low end of

11  the guidelines is warranted in this case.  Probation recommended

12  the low end of the guideline.  I think in view of his age and

13  the severity of the punishment, that is more than enough to

14  protect society.

15      Thank you, sir.

16      THE COURT:  Ms. Futcher -- oh, by the way, before we

17  get to the Government.  Are there any witnesses in the

18  courtroom?

19      MR. ADAMO:  No, sir.  Obviously, my client wants to

20  make a statement, but that's after the Government.

21      THE COURT:  Why don't we hear from your client now

22  before we hear from the Government?

23      Mr. Concepcion-Rosario, you have the right to make a

24  final statement if you wish to do so.  You're not required, but

25  you may do so if you wish.

1          THE DEFENDANT:  I would like Your Honor -- I would

2     like to remind Your Honor for giving me the chance to say so.

3     There's a lot of uncertainties here, and I'm asking for you to

4     vacate this trial -- this case.  Would you give me an

5     opportunity to review this so I can read it to you?

6          THE COURT:  You're welcome to read anything that you

7     would like and present anything you would like.

8          THE DEFENDANT:  So on October the 10th, I was brought

9     before you for these charges.  The DEA agent Romig under oath

10    that he had intervened in a call to Santiago Correa, Correa

11    Santiago where he was told that the 124 grams of heroin was not

12    (indiscernible).  So then he asked them to bring it over in

13    order to change them. So they started a surveillance and then I

14    came out of thin air and I did list of transactions.  I bought

15    the drugs and then I left.

16         So that DEA agent said that they saw the transaction

17    and the moment that I bought the drugs.  A friend of his called

18    that he has the K-9 unit so that he could stop me.  So the

19    attorney asked -- he asked him -- so why was he weaving in the

20    car.  He says that that was the excuse that they brought up in

21    order to stop me.

22         So the state trooper detains me for the following

23    reasons.  That I was going over the yellow line three times and

24    over the white lines twice.  I denied it.  I don't speak

25    English.  And he asked me for the car's license and the

1  registration.  So I give it to him, and he request that I step

2  out of the vehicle.  He asked me where I was coming from.  I

3  told him that I was coming from a female friend's place and that

4  in the evening we were heading to the casino.

5          So he tells me to step out of the car, that he was

6  just going to give me a warning.  And but because he saw me, and

7  he saw that I was nervous, and that I had probably three drops

8  of sweat coming down my face, he decided to search the car.  And

9  I wasn't aware of anything happened, so I signed off on the

10  warning.  So he tricked me. He wasn't having me sign any

11  warning.  He was having me sign a search consent for my car.

12          And that was the reason why he stopped me; to give me

13  a warning.  So he tricked me.  He tricked me.  And then he sent

14  me over to the other state trooper, and he took off the locks

15  from the car door and the trunk and he opened them.  He got his

16  dog.  He had him go around the trunk and also the inside.

17          So the state trooper takes the dog over there to his

18  patrol car and then he just tells me that I'm being arrested for

19  drugs.  I told them that there were no drugs in my car.  Didn't

20  show me anything.  The other state trooper just arrests me and

21  takes me away.  I was not present at all when they took out any

22  drugs from my car.

23          On the video, you can see a third party. So when we

24  got to the state trooper's station, he shows up just a little

25  while after and they're weighing the shopping bag that I had.

1   They claim that it had 200 grams of heroin.  So the DEA agent,

2   not the state trooper, but the DEA agent shows up but before he

3   arrived the state trooper wipes the cable and carries out two

4   tests.  Negative. Another officer shows up and he's recording.

5   He did two tests, came out negative, so when the DEA agent shows

6   up, well he's asking me things, but I could not understand what

7   he was asking.

8           The supervisor asked for another state trooper to come

9   who can serve as an interpreter.  So at that time the DEA agent,

10  I would say nine, but you know, between the total of all the

11  tests, the camera shows five.  You know, the video will lie and

12  that happened in my presence.

13          So what happened?  Negative, negative, negative.  And

14  the last one he goes outside so when he comes back, it comes out

15  positive for heroin.  The interpreter shows up and he was

16  honest.  A true witness, you know, under oath he says that his

17  supervisor had called him to come back to the station to

18  interpret for a person who couldn't speak English.  But when he

19  said that when he finally got there, everything had finished.

20  And that's correct.

21          He only asked me questions about the DEA agent.  That

22  it was a person that you had concerns about and that you were

23  going to decide in this case, but I was told that I was going to

24  get 10 years if I didn't tell them who this was for and where

25  did I get it from.  Everything at that point was stopped.

1   So what happened?  When we are before the jury, the

2   state trooper, the honest one, changed his tune.  He said that I

3   had told him in English that that was mine.  I mean if I had

4   told them that that was mine, I wouldn't be here today.  I

5   would've been sentenced a long time ago.  When you yourself told

6   me that 10 years was a good deal.  I mean take advantage of drug

7   programs and good time credit, et cetera, et cetera.  Everything

8   at that point stopped.

9       The state trooper, now this is where the contravention

10  comes in.  He said under oath that I was weaving on the road,

11  that I went over the yellow line three times and over the white

12  line twice.  Never said like the DEA agent said that he had

13  called me to stop me.  They said no, I mean, I had gone over the

14  yellow line three times and the white one twice.

15      You know, just to conclude this, you know, just to

16  give it a quick finish.  When the jury, and that's my worry at

17  this point, when they ask you for the recording that the DEA had

18  provided to you, I mean you said that you were going to make a

19  decision on this and then that my attorney had actually asked to

20  dismiss the case -- dismiss the case which never happened.

21      Because the -- I mean it bothered the prosecutor that

22  he wasn't able to ask me the questions he wanted to ask me.  I

23  know it bothered him.  And just to finish this, there was a

24  whole squad of officers just circling Correa's home. So anyway,

25  they don't have a video.  Because, you know, anybody that has a

1  cell phone can take a video, and this investigation was already

2  being accomplished beforehand.  Because you know they had a call

3  with Santiago Correa was 124 grams -- they intervened on the

4  call from Santiago for 124 grams.

5         So it wasn't really a squad because there was only two

6  witnesses. These were officers here from Allentown.  You know,

7  they're just contradicting each other.  One of them says that

8  Correa Santiago goes out with a bag, goes to the car, steps out

9  of the car and then goes to his car, and then the other one says

10  no, he actually ran home.

11         So in respect to the October 10th, one of the DEA

12  agents testified that he saw me going through that transaction

13  with Correa.  I mean could not have seen anything because, you

14  know, apparently the hood of the car was up.  Because if I were

15  an officer and if I already had -- and I'm doing this

16  investigation of something that was going to go on, the first

17  thing that I would do is to take a video or just arrest both of

18  them.  You get two for one and then it's all done.

19         I've got nothing else to say.

20         THE COURT:  Thank you, Mr. Concepcion-Rosario.  Mr.

21  Adamo, anything else on behalf of the defense?

22         MR. ADAMO:  No, sir.

23         THE COURT:  Let's turn to the Government.  Ms.

24  Futcher, do you wish to advance any arguments about the factors

25  in 3553(a) or otherwise make a sentencing recommendation?

1      MS. FUTCHER:  Yes, Your Honor.  Thank you.

2           Your Honor, first in response to some of the arguments

3   the defendant has just made that the defendant was picked up --

4   there was an ongoing Title 3 wiretap at the time the defendant

5   was actually heard picking up the drugs that were later found in

6   his car. And, Your Honor, there was approximately 199.57 grams

7   of heroin that contained Fentanyl that was found concealed

8   actually which I submit to the Court is very interesting.

9   Concealed in the engine of his car in the air filter of the car.

10  And I submit to Your Honor that that's a reason why the

11  defendant may have consented to the search.  He did consent to

12  the search of the car.  But regardless of whether the defendant

13  consented or not or regardless of whether the trooper did

14  observe the defendant crossing the yellow lines, how many times

15  he did that; the yellow line; the white line.  The bottom line

16  is, Your Honor, that there was probable cause for the search of

17  the defendant's car regardless of those observations by the PA

18  state trooper.  And when the car search was conducted, as I said

19  the defendant was found with 199.57 grams of heroin containing

20  Fentanyl that interestingly, Your Honor, was concealed as I said

21  under the hood of his car in the air filter compartment.  Some

22  place I would state Your Honor the defendant would've thought it

23  would be very unlikely that law enforcement would find it at

24  that location.

25           Your Honor, the one thing that struck me sitting here

1  listening to the defendant's statement to the Court, the one

2  thing we didn't hear.  We've heard a lot of challenges, but the

3  one thing we didn't hear was any remorse for the conduct that he

4  engaged in.  There was never one instance where the defendant

5  said I was basically caught red-handed on a wiretap and with

6  199.57 grams of heroin containing Fentanyl.  As Your Honor know,

7  it is one of the most dangerous drugs, if not the most dangerous

8  drug that we can have because all of the Fentanyl deaths that

9  are occurring to people throughout the country.  Never once was

10 there any kind of acknowledgement that the defendant apologized

11 for anything that he did, or even that he acknowledged his

12 criminal conduct.  Instead, he blames it on everybody else.  He

13 explains that he didn't really do it.  He's not responsible.

14 And Your Honor I submit that that is the real problem that lies

15 here.

16        Because if Your Honor looks at the defendant's

17 criminal history, it's just absolutely overwhelming with

18 violence.  And as Your Honor heard there was a stipulation as to

19 the translation of the certified criminal conviction for second-

20 degree murder, Your Honor.  Second-degree murder that occurred

21 during the course of I believe of a robbery of a credit union.

22 And by the time the defendant engaged in this behavior, I

23 believe he was 22 years old.  I'm not sure exactly, and I would

24 just ask Your Honor -- I rely upon the very comprehensive and

25 thorough sentencing memorandum that former Assistant US Attorney

1  Kishan Nair, who handled this case, that he submitted to the

2  Court.  Everything is laid out in there about the defendant's

3  prior criminal history.

4          Just to highlight for Your Honor.  When you read

5  through this criminal history, it's possession of guns that

6  started when the defendant was 21 years old, and it's guns that

7  include sawed-off shotguns, that include machine guns.  It is

8  conduct that includes numerous -- strike that, several

9  robberies, one of which involved the death of an individual who

10  was present in the credit union.  When you read through that, it

11  sounds like a poor individual who happened to be in the wrong

12  place at the wrong time, and he ended up dead.

13          When you go through that, the defendant served prison

14  time for that, but he just gets out and is repeated crime after

15  crime after crime, involving robberies and even subsequent

16  robberies, guns, then involved in drugs.  He was actually -- I

17  think he had just been out for seven months or on supervised

18  released for seven months on a prior drug conviction when he

19  committed this one, so it's just repeated criminal conduct and

20  very serious and violent criminal conduct by this defendant when

21  he's not in prison.

22          And when you combine his criminal history with the

23  fact that what Your Honor heard today, I submit to -- we submit

24  to Your Honor that what you're hearing is from a person who is

25  just a -- and the guideline recognizes as a career criminal, an

1  incorrigible career criminal that the only way society is safe

2  from this defendant is when he's in custody.  Any time the

3  defendant has been out of custody, he's been committing crimes.

4          So for those reasons, Your Honor, the Government is

5  requesting that Your Honor sentence the defendant at the high

6  end of the guideline range, at 327 months, and the Government

7  does submit to Your Honor as I stated the only time that society

8  is safe from this defendant is when he's not on the street.

9          And I would submit to Your Honor I know defense

10  counsel said that he will be in his seventies when he gets out

11  if he's sentenced at the low end of the guideline range, but I

12  submit to Your Honor that based on this defendant's criminal

13  history, 70 or not, when the defendant gets out of prison, he's

14  going to be committing crimes again.

15          So I submit that we request Your Honor that you

16  sentence the defendant as I said at the very high end of the

17  guideline range, and if I could have just one moment to confer

18  with my colleague.  Thank you.

19          Nothing further to add, Your Honor.  Thank you very

20  much.

21          THE COURT:  Thank you.  Mr. Concepcion-Rosario, do you

22  have something to say?

23          THE DEFENDANT:  Well, I'd like to clear something

24  regarding what she said about that murder, the second-degree

25  murder.

1           THE COURT:  How much time do you need?

2           THE DEFENDANT:  Two minutes.

3           THE COURT:  Two minutes.  Go ahead.

4           THE DEFENDANT:  That was in 1992, December.  Your

5    Honor, we went to rob a cooperative on Roosevelt Road (phonetic)

6    in Fajardo.  So when we did the robbery, we went there before

7    changing or searching cars.  So what happens?  So when we go and

8    switch cars, I mean, we're talking about -- it's a dead end

9    street. So this is where (indiscernible) and but we're in that

10   street here coming from this direction on a dead-end street.  So

11   when we step out, I mean, a Nissan shows up -- so there's two

12   officers there.  I mean they didn't say a word.  They just

13   started shooting.  So we had no other choice.  I mean at least I

14   had no other choice.  We also took off running.

15          So the driver of this car that we were running

16   switched cars with him, he gets a bullet that strikes him in the

17   chest.  We all started running, but we were all captured.

18   Unfortunately, our companion did bleed to death.  So that's when

19   we were then charged with the murder -- his murder because we

20   were part of the robbery.  And then we actually admitted to our

21   guilt, and we all received 18 years.  I mean in all of these

22   cases, all these charges that I've had where she says is one

23   after the one, I've always taken responsibility, and if there

24   had been any victims involved, I've always apologized.  Because

25   I'm a human being.  I am not a murderer.  That's all I have to

1  say.  Thank you.

2          THE COURT:  I'm prepared to pronounce and impose

3  sentence.

4          Pursuant to the Sentencing Reform Act of 1984 and

5  after assessing the particular facts of this case in light of

6  Section 3553(a) factors, it's the judgment of this Court that

7  the defendant is sentenced to a term of imprisonment of 327

8  months.

9          As to the nature and circumstances of the offense, the

10  DEA and local police conducted an investigation into a large

11  scale drug trafficking organization. During this investigation,

12  they intercepted a call indicating that the defendant was going

13  to receive a large quantity of drugs from another person.

14          The next day, surveillance agents observed this

15  exchange.  The defendant's vehicle was therefore stopped and

16  agents seized a bag containing 199.57 grams of Fentanyl. This is

17  a very dangerous drug.

18          As to the history and characteristics of the

19  defendant, growing up, the defendant resided with his late

20  maternal grandmother in a high-crime residential housing

21  development in Puerto Rico.  According to the defendant, his

22  grandmother did a great job raising him and there were no major

23  problems in the home.

24          Also, the defendant reports having no physical or

25  mental health conditions or a need for drug treatment. The

1   defendant has a significant criminal history dating back to

2   1992. This history includes four armed bank robberies, the

3   illegal possession of firearms, including a sawed-off shotgun, a

4   machine gun and various handguns, murder in the second-degree

5   that occurred during one of the armed robberies, possession of

6   drugs in prison and drug trafficking.

7         The defendant repeatedly violated his supervision and

8   has spent the majority of the past 30 years in prison. His

9   lengthy federal and state prison sentences did not deter him,

10   and within seven months of his release from prison, he went back

11   to being a drug dealer and committed the offenses for which he

12   is here today.

13         I've considered the need to avoid unwarranted sentence

14   disparities among similarly-situated defendants. I've also

15   considered the types of sentences available.

16         The sentence, which is within the guideline range, is

17   sufficient but not greater than necessary to reflect the

18   seriousness of the crime, to promote respect for the law, and to

19   provide just punishment for the offenses, to deter criminal

20   conduct and to protect the public from future crime by the

21   defendant. Accordingly, any request for a variance is denied.

22         The defendant shall pay a fine in the amount of $2,700

23   which shall be due immediately. The Court finds that the

24   defendant does not have the ability to pay a fine within the

25   guideline range, but does have the ability to pay this lesser

1  amount over the length of time of his sentence.  The interest on

2  the fine is waived.

3         It is recommended that the defendant participate in

4  the Bureau of Prisons Inmate Financial Responsibility Program

5  and provide a minimum payment of $25 per quarter towards the

6  fine.

7         The defendant shall notify United States Attorney for

8  this district within 30 days of any change of mailing address or

9  residence that occurs while any portion of the fine remains

10  unpaid.

11         It is ordered that the defendant shall pay to the

12  United States a special assessment of $100, which shall be due

13  immediately.

14         Upon release from imprisonment, the defendant shall be

15  placed on supervised release for a term of five years, which is

16  within the guideline range.  Within 72 hours of release from the

17  custody of the Bureau of Prisons, the defendant shall report to

18  the US Probation Office in the district to which he is released.

19         While on supervised released, the defendant is subject

20  to the following standard conditions.

21         First, the defendant shall not commit another federal,

22  state or local crime, shall be prohibited from possessing a

23  firearm or other dangerous device, shall not possess an illegal

24  controlled substance, shall submit to the collection of a DNA

25  sample, and shall comply with the other standards and conditions

1   that have been adopted by this Court.

2          Second, the defendant must submit to one drug test

3   within 15 days of commencement of supervised release and at

4   least two tests thereafter as determined by the probation

5   officer.

6          In addition, the defendant shall comply with the

7   following special conditions.

8          First, the defendant shall participate in a program at

9   the direction of the probation officer aimed at obtaining a GED,

10  learning of a vocation, or improving the defendant's literacy,

11  education level or employment skills in order to develop or

12  improve skills needed to obtain and maintain gainful employment.

13  The defendant shall remain in any recommended program until

14  completed or until such time as the defendant is released from

15  attendance by the probation officer.

16         Second, the defendant shall provide the US Probation

17  Office with full disclosure of his financial records to include

18  yearly income tax returns upon the request of the US Probation

19  Office.  The defendant shall cooperate with the probation

20  officer in the investigation of his financial dealings and shall

21  provide truthful monthly statements of his income.

22         Third, the defendant is prohibited from incurring any

23  new credit charges or opening conditional lines of credit

24  without the approval of the probation officer unless the

25  defendant is in compliance with a payment schedule for any fine

1   obligation.  The defendant shall not encumber or liquidate

2   interest in any assets unless it is in the direct service of the

3   fine obligation or otherwise has the express approval of the

4   court.  In the event the fine is not paid before the

5   commencement of supervision, the defendant shall satisfy the

6   amount due in monthly installments of not less than $100 to

7   commence 30 days after release from confinement.

8          Mr. Concepcion-Rosario, any notice of appeal must be

9   filed within 14 days of the entry of judgment, or within 14 days

10  of the filing of a notice of appeal by the Government.  If

11  requested, the clerk will prepare and file a notice of appeal on

12  your behalf.  If you cannot afford to pay the costs of an appeal

13  or for appellate counsel, you have the right to apply for leave

14  to appeal in forma pauperis.  If approved, counsel will be

15  appointed for you and you will not be required to pay any costs.

16         The defendant is remanded to the custody of the United

17  States Marshals.  Is there anything else to come before the

18  Court on this matter before we adjourn?

19         MS. FUTCHER:  Nothing from the Government, Your Honor.

20         MR. ADAMO:  I just want to note, Your Honor, that I'll

21  be filing a notice of appeal on his behalf.  I'm CJA appointed.

22  I'll take care of that.

23         THE COURT:  Very good.  Mr. Wood, would you adjourn

24  Court, please?

25         DEPUTY CLERK:  All rise.  Court is adjourned.

1    (Proceedings concluded at 10:05 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATION**

I, EILEEN DHONDT, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


_Eileen Dhondt_

EILEEN DHONDT, CET 807
Aequum Legal Transcription


Dated: February 22, 2023